# No. 24-_____

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

————————

In re SVB FINANCIAL GROUP,
*Debtor*.

————————

SVB FINANCIAL GROUP and OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF SVB FINANCIAL GROUP,
*Appellants*,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Silicon
Valley Bank and Silicon Valley Bridge Bank, N.A.,
*Appellee*.

————————

On Certification for Direct Appeal Under 28 U.S.C. § 158(d)(2)
from the United States Bankruptcy Court
for the Southern District of New York, No. 23-10367 (MG)

————————

**PETITION BY DEBTOR-APPELLANT SVB FINANCIAL GROUP
FOR AUTHORIZATION OF DIRECT APPEAL UNDER
28 U.S.C § 158(d)(2)**

————————

Diane L. McGimsey
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, CA 90067
(310) 712-6600

Robert A. Sacks
James L. Bromley
Adam S. Paris
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000

*Counsel for Debtor-Appellant SVB Financial Group*

October 30, 2024

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Debtor-Appellant SVB Financial Group states that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................... 1

FACTS NECESSARY TO UNDERSTAND THE QUESTIONS PRESENTED ............................................................................ 4

QUESTIONS PRESENTED AND RELIEF REQUESTED ..................... 8

REASONS TO AUTHORIZE A DIRECT APPEAL ................................ 9

I.    THE ORDER INVOLVES QUESTIONS OF LAW AS TO WHICH THERE IS *INDISPUTABLY* NO CONTROLLING DECISION UNDER SECTION 158(d)(2)(A)(i). ........................... 10

    A.    There Is No Controlling Decision on the Second or Third Question. ..................................................... 11

    B.    There Is No Controlling Decision on the First Question. ................................................................. 14

II.   THE ORDER INVOLVES QUESTIONS OF LAW REQUIRING RESOLUTION OF CONFLICTING DECISIONS UNDER SECTION 158(d)(2)(A)(ii). ....................... 18

III.  THE APPEAL INVOLVES A MATTER OF PUBLIC IMPORTANCE UNDER SECTION 158(d)(2)(A)(i). ..................... 24

CONCLUSION ......................................................................... 27

CERTIFICATE OF COMPLIANCE ............................................. 29

CERTIFICATE OF SERVICE .................................................... 30

ADDENDUM ........................................................................... 31

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Belmonte,*
 551 B.R. 723 (Bankr. E.D.N.Y. 2016) .................................................. 23

*Berg* v. *SSA,*
 900 F.3d 864 (7th Cir. 2018) ............................................................... 25

*Bernstein* v. *IDT Corp.,*
 76 B.R. 275 (S.D.N.Y. 1987) ............................................................... 20

*CFCU Cmty. Credit Union* v. *Hayward,*
 552 F.3d 253 (2d Cir. 2009) ............................................................... 17

*In re Chateaugay Corp.,*
 94 F.3d 772 (2d Cir. 1996) ................................................................. 11

*In re Cont'l Airlines,*
 134 F.3d 536 (3d Cir. 1998) ............................................................... 22

*In re Corp. Res. Servs., Inc.,*
 564 B.R. 196 (Bankr. S.D.N.Y. 2017) ................................................ 23

*In re Crane,*
 742 F.3d 702 (7th Cir. 2013) .............................................................. 24

*Daewoo Int'l (Am.) Corp. Creditor Tr.* v. *SSTS Am. Corp.,*
 2003 WL 21355214 (S.D.N.Y. June 11, 2003) ........................ 19, 20, 22

*In re Davidovich,*
 901 F.2d 1533 (10th Cir. 1990) ..................................................... 21, 22

*Deutsche Bank Nat'l Tr. Co.* v. *Tucker,*
 621 F.3d 460 (6th Cir. 2010) .............................................................. 24

*In re Dorand,*
  95 F.4th 1355 (11th Cir. 2024) ......................................................... 25

*DPWN Holdings (USA), Inc.* v. *United Air Lines, Inc.,*
747 F.3d 145 (2d Cir. 2014) ................................................................. 26

*In re Essar Steel Minnesota LLC,*
2020 WL 3574743 (D. Del. July 1, 2020) ...................................... 25, 26

*Hardt* v. *Reliance Standard Life Ins. Co.,*
560 U.S. 242 (2010) ............................................................................ 16

*In re Iridium Operating LLC,*
285 B.R. 822 (S.D.N.Y. 2002) ...................................................... 23, 24

*In re M. Silverman Laces, Inc.,*
404 B.R. 345 (Bankr. S.D.N.Y. 2009) ................................................ 21

*In re Malinowski,*
156 F.3d 131 (2d Cir. 1998) ................................................................ 12

*In re Maxus Energy Corp.,*
49 F.4th 223 (3d Cir. 2022) ............................................................ 9, 10

*In re Myers,*
362 F.3d 667 (10th Cir. 2004) ............................................................ 23

*In re N. Am. Energy Conservation, Inc.,*
2000 WL 1514614 (S.D.N.Y. Oct. 12, 2000) ...................................... 23

*In re Orexigen Therapeutics, Inc.,*
990 F.3d 748 (3d Cir. 2021) ............................................................... 25

*In re Panjian,*
785 F.3d 1161 (7th Cir. 2015) ............................................................ 25

*Weber* v. *U.S. Trustee,*
484 F.3d 154 (2d Cir. 2007) ...................................................... *passim*

## Statutes

11 U.S.C. § 101(5) .................................................................... 2, 14, 15

11 U.S.C. § 553 ............................................................................. 2, 16

11 U.S.C. § 1141.............................................................................. 2, 7, 16

28 U.S.C. § 158(d) ............................................................... *passim*

28 U.S.C. § 1292(b) ..................................................................... 16

## Other Authorities

Fed. R. Bankr. P. 8006 ................................................................... 9

H.R. Rep. No. 109-31 (2005)............................................... 17, 18

Collier on Bankruptcy (16th ed. 2024) ......................... 21, 25, 27

## INTRODUCTION

This appeal concerns a creditor's ability to avoid the bankruptcy claims process by characterizing claims for over $1.9 billion that it purports to have against the debtor as "defensive" setoff rights. Here, the Federal Deposit Insurance Corporation, as receiver for Silicon Valley Bank ("FDIC-R1") withheld approximately $1.9 billion owed to Debtor SVB Financial Group ("Debtor") based on contingent, unliquidated claims that it allegedly has against Debtor. Although (1) those purported claims were known to FDIC-R1 and could have been asserted well before the claims bar date set by the bankruptcy court (Glenn, C.J.) ("Bankruptcy Court"), and (2) FDIC-R1 appeared and participated in Debtor's chapter 11 proceeding, FDIC-R1 tactically chose not to file a proof of claim in the bankruptcy case. Instead, FDIC-R1 argued that it was exempt from the bankruptcy claims process and styled its claims as "defensive" setoff rights by agreeing to limit its maximum recovery to the approximately $1.9 billion it withheld from Debtor.

In confirming Debtor's chapter 11 plan, the Bankruptcy Court concluded that despite FDIC-R1's failure to file a proof of claim before the bar date, and notwithstanding the discharge provisions of the

Bankruptcy Code, FDIC-R1 retained the ability to assert "defensive" setoffs against Debtor post-bankruptcy. By reaching this conclusion, the Bankruptcy Court's order ("<u>Order</u>") passes upon at least three important questions of law that remain unsettled by the Supreme Court or this Court:

1. "Whether a defensive setoff right is a claim under 11 U.S.C. § 101(5)";

2. "Whether a creditor waives its [known] defensive setoff rights by failing to file a proof of claim"; and

3. "Whether a creditor's setoff rights under 11 U.S.C. § 553 can be discharged by 11 U.S.C. § 1141."

(Addendum ("<u>A</u>") 195-99.)

On September 30, 2024, following Debtor's timely appeal, the district court (Clarke, J.) ("<u>District Court</u>") certified the Order for this Court's direct view under 12 U.S.C. § 158(d)(2)(A)(i), concluding that "the matter raises unsettled questions of law that warrant [a] direct appeal." (A192-99.) The Bankruptcy Court also "noted the unsettled legal issues and interpretative splits among courts with respect to matters that are material to the decision." (A191.) Debtor now petitions that this Court accept the direct appeal for three reasons.

*First*, there are no controlling decisions from either the Supreme Court or this Court on the three issues identified above. This absence of binding precedent renders a direct appeal appropriate under section 158(d)(2)(A)(i).

*Second*, given the lack of controlling decisions, lower courts in this Circuit have reached contradictory conclusions on the three legal questions. The presence of an intra-circuit split further warrants a direct appeal under section 158(d)(2)(A)(ii).

*Third*, the treatment of setoff rights in bankruptcy implicates the Bankruptcy Code's priority scheme, the equal treatment of creditors, and the "fresh start" promised to debtors post-bankruptcy. These are fundamental bankruptcy principles that transcend the facts and parties of this case, which FDIC-R1 has sought to displace by invoking federal non-bankruptcy law. This appeal therefore "involves a matter of public importance" and calls for this Court's direct review under section 158(d)(2)(A)(i).

Because each of the foregoing reasons satisfies section 158(d)(2)(A)'s requirements, this Court should authorize a direct appeal from the Order.

3

## FACTS NECESSARY TO UNDERSTAND
## THE QUESTIONS PRESENTED

Debtor was the corporate parent of Silicon Valley Bank (SVB). (A50.) On March 10, 2023, the California Department of Financial Protection and Innovation closed SVB and appointed FDIC-R1 as receiver for SVB. (A30.) On March 12, 2023, the Treasury Secretary invoked the systemic risk exception to protect all insured and uninsured depositors of SVB. (*Id.*) Therefore, on the following day, FDIC-R1 transferred all deposits and substantially all assets of SVB to the newly created Silicon Valley Bridge Bank, N.A. ("Bridge Bank"). (A69.) The transferred deposits included Debtor's accounts at SVB, which had a combined balance of approximately $2.1 billion. (A30.)

Like other SVB depositors, Debtor had full access to its funds at Bridge Bank beginning in the morning of March 13. (*Id.*) Between March 13 and 16, Debtor withdrew approximately $180 million from those accounts. (A135.) However, without notice to Debtor, on or about March 15, FDIC-R1 purported to recall the account liability from Bridge Bank to prevent Debtor from withdrawing funds from its accounts. (A30.)

4

On March 17, 2023 (the "Petition Date"), Debtor filed for bankruptcy protection under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). (A31.) In Debtor's chapter 11 proceeding, the Bankruptcy Court entered an order (the "Bar Date Order") establishing September 14, 2023 as the deadline for any governmental unit to file a proof of claim against Debtor (the "Bar Date"). (A2.)

The Bar Date Order required "all persons and entities … that assert a claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor which arose on or prior to the Petition Date … [to] file a proof of such claim." (*Id.*) It also specified that if a claimant failed to timely file a proof of claim, that claimant "shall be forever barred, estopped[,] and enjoined from asserting the applicable claim … against the Debtor or property of the estate." (A5.)

Prior to the Bar Date, FDIC-R1 was aware of the subject matter of the claims on which it intends to assert defensive setoff rights, and it could have filed a proof of claim based on the subject matter of those rights. (A33.) Nevertheless, FDIC-R1 decided not to file a claim by the Bar Date. (*Id.*)

5

On July 8, 2024, FDIC-R1, along with the Federal Deposit Insurance Corporation, as receiver for Bridge Bank ("FDIC-R2," and together with FDIC-R1, "FDIC-Rs"), objected to Debtor's chapter 11 plan of reorganization (the "Plan"). FDIC-Rs contended, among other things, that although FDIC-R1 failed to file a proof of claim before the Bar Date, the Plan cannot discharge its defensive setoff claims against Debtor because "section 553 … preserves FDIC-R1's defensive setoff rights" post-confirmation. (Bankr. Dkt. 1268 at 7.)

Debtor responded to FDIC-Rs' objection, arguing primarily that (1) the Bar Date Order enjoins FDIC-R1 from asserting claims against Debtor, even if styled as "defensive" setoff claims; (2) section 553 does not preserve FDIC-R1's purported setoff claims from discharge because FDIC-R1's claims fall within the exclusion under section 553(a)(3); and (3) FDIC-R1 has waived its setoff claims by failing to file a proof of claim or to seek stay relief. (Bankr. Dkt. 1306.) The Official Committee of Unsecured Creditors (the "Committee") and the Ad Hoc Group of Senior Noteholders joined in Debtor's response. (Bankr. Dkt. 1309, 1310.) In addition to endorsing Debtor's arguments, the Committee contended that section 553's setoff provision does not override section 1141, which

6

provides that "the confirmation of the Plan will discharge the Debtor 'from any debt that arose before the date of such confirmation.'" (Bankr. Dkt. 1309 at 21.)

The Bankruptcy Court entered an order confirming the Plan on August 2, 2024 (the "Confirmation Order") (Bankr. Dkt. 1379). Contemporaneously with the Confirmation Order, the Bankruptcy Court issued the Order sustaining FDIC-Rs' objection. The Order concludes, as relevant here, that (1) because "FDIC-R1's purported setoff right is defensive," it "does not affirmatively implicate the Debtor's estate" and is therefore "substantively different from a 'claim'" (A65-66); (2) "filing a proof of claim is not required for a creditor to preserve its defensive right of setoff" (A75); and (3) "FDIC-R1's preserved defensive setoff rights cannot be discharged" under 11 U.S.C. § 1141 (A78).

On August 9, 2024, Debtor timely appealed from the Order (A79) and, on August 21, moved the Bankruptcy Court to certify a direct appeal under 28 U.S.C. § 158(d)(2) (A121). Because the Bankruptcy Court did not act on the certification motion before its jurisdiction transferred to the District Court, Debtor refiled the motion in the District Court on September 11. (*Id.*)

On September 20, 2024, the Bankruptcy Court issued an order stating that it no longer had jurisdiction over the matter but underscoring that, in the Order, it "noted the unsettled legal issues and interpretative splits among courts with respect to matters that are material to the decision." (A191.)

On September 30, 2024, the District Court certified the Order for direct appeal because "the matter raises unsettled questions of law that warrant [a] direct appeal" under 28 U.S.C. § 158(d)(2)(A)(i). (A192.) Having found that one of section 158(d)(2)(A)'s factors is met, the District Court did not address the remaining factors. (A195.)

Debtor now petitions that this Court accept the direct appeal.

## QUESTIONS PRESENTED AND RELIEF REQUESTED

Debtor petitions that the Court authorize a direct appeal from the Order under 28 U.S.C. § 158(d)(2). If the Court authorizes the direct appeal, Debtor will request that the Court reverse the Order and hold that the Bankruptcy Court erred by sustaining FDIC-Rs' objection to the discharge under the Plan of the claims that FDIC-R1 seeks to preserve as defensive setoff rights.

8

## REASONS TO AUTHORIZE A DIRECT APPEAL

Congress empowered this Court to directly review a bankruptcy court's order if (1) the court where the matter is pending certifies the order for direct appeal and (2) this Court authorizes the appeal. 28 U.S.C. § 158(d)(2); Fed. R. Bankr. P. 8006(b)-(g).

For a bankruptcy or district court, section 158(d)(2)(A) requires certification of an order for direct appeal if any one of the following factors is present:

> (1) the order "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States";
>
> (2) the order "involves a matter of public importance";
>
> (3) the order "involves a question of law requiring resolution of conflicting decisions"; or
>
> (4) an immediate appeal "may materially advance the progress of the case."

28 U.S.C. § 158(d)(2)(A)(i)-(iii).

In determining whether to accept the direct appeal, this Court considers section 158(d)(2)(A)'s factors. *See Weber* v. *U.S. Trustee*, 484 F.3d 154, 157, 161 (2d Cir. 2007). The Court is not limited to the questions certified by the district court and "ha[s] jurisdiction to review the entire order subject to [the] appeal." *In re Maxus Energy Corp.*, 49

9

F.4th 223, 228 (3d Cir. 2022). Although there are "broad varieties of cases [that] may be eligible for direct appeal," this Court "will be most likely to exercise [its] discretion to permit a direct appeal where there is uncertainty in the bankruptcy courts (either due to the absence of a controlling legal decision or because conflicting decisions have created confusion)." *Weber*, 484 F.3d at 161.

Debtor's appeal meets this standard. The District Court certified the Order under section 158(d)(2)(A)(i) for the "absence of a controlling legal decision" on legal issues implicated by the appeal. *Id.* The Bankruptcy Court also noted the unsettled legal issues and split of authority inherent in the Order. (A191.) Section 158(d)(2)(A)(i) and other factors unaddressed by the District Court further support this Court's authorization of a direct appeal.

## I. THE ORDER INVOLVES QUESTIONS OF LAW AS TO WHICH THERE IS *INDISPUTABLY* NO CONTROLLING DECISION UNDER SECTION 158(d)(2)(A)(i).

The Court should authorize a direct appeal from the Order because there are no controlling decisions on any of the three legal questions identified by Debtor. There is no dispute that neither the Supreme Court nor this Court has yet to resolve any of the three questions, which is

10

sufficient to satisfy section 158(d)(2)(A)(i). Instead, FDIC-Rs argued below that the three questions do not warrant a direct appeal because the first question is "non-dispositive" and the other two are not "pure legal questions." (A165, A177.) The District Court rejected FDIC-Rs' latter argument and certified the Order because the second and third questions "raise[] unsettled questions of law that warrant [a] direct appeal" under section 158(d)(2)(A)(i). (A192.)

This Court should authorize a direct appeal for the same reasons.

## A. There Is No Controlling Decision on the Second or Third Question.

As to the second question, Debtor argued in Bankruptcy Court that FDIC-R1's decision to not file a proof of claim before the Bar Date amounts to a waiver of its defensive setoff rights. The District Court and Bankruptcy Court both agreed that there is no controlling decision on this issue. (A191, A196-97.) In fact, in *In re Chateaugay Corp.*, this Court recognized that other circuits had adopted conflicting positions on the question, but it declined to "decide which of these positions is correct" because the government-claimant in that case did file a proof of claim and the proof of claim "was sufficiently specific to preserve [the setoff] right." 94 F.3d 772, 777 (2d Cir. 1996). Whether a claimant must

11

preserve its defensive setoff rights by filing a proof of claim therefore remains unsettled.

With respect to the third question, this Court has yet to address whether a discharge under section 1141 of the Bankruptcy Code prevents a claimant from asserting a setoff right under section 553 post-confirmation. In the proceeding below, the Bankruptcy Court determined that because it had "already concluded that the FDIC-R1 is asserting setoff defensively and that it did not need to file a proof of claim to preserve its rights," FDIC-R1's "preserved defensive setoff rights cannot be discharged" by section 1141 of the Bankruptcy Code. (A77-78.)

Although this Court has explained that "set-off claims are subject to the automatic stay of 11 U.S.C. § 362 and are substantively limited by the Bankruptcy Code," this Court has not addressed whether section 1141 imposes such substantive limitations on section 553. *See In re Malinowski*, 156 F.3d 131, 133 (2d Cir. 1998). As the District Court stated in its certification order, "lower courts would benefit from clarity on the interaction between these two provisions." (A198.)

FDIC-Rs did not dispute that there are no controlling decisions on the second and third questions. FDIC-Rs argued instead that resolving

12

the two issues would improperly "involve[] a mixed question of fact and law." (A164.) However, for section 158(d)(2)(A), the relevant inquiry is not whether the issue is mixed, but whether an appellate court will be "called upon to resolve a question of law *not heavily dependent* on the particular facts of a case," because section 158(d)(2) was not intended to "facilitate direct appeal of '*fact-intensive* issues.'" *Weber*, 484 F.3d at 158 (emphasis added).

The District Court correctly concluded that the second and third questions are fundamentally *legal* questions "no[t] heavily dependent" on the facts of this case. (A196-99.) Although the District Court acknowledged that consideration of relevant facts may be necessary to resolve the second question, it pointed out that those facts (identified by FDIC-Rs) "are not in dispute." (A196.) And to the extent the Order discussed the undisputed fact that FDIC-R1 "gave notice to" Debtor "of its intent to assert defensive set-off rights," the District Court explained that "the Bankruptcy Court did so in order to address the existence of potentially conflicting case law in this Circuit." (A196-97.) Resolving the second and third legal questions simply does not implicate fact-intensive issues where "percolation through the district court would cast more

13

light." *Weber*, 484 F.3d at 161. Indeed, the parties here stipulated to a set of facts in advance of the confirmation hearing (A30-36), and the record relevant to all three legal questions involved no evidence or testimony at all.

### B. There Is No Controlling Decision on the First Question.

The Bar Date Order requires "all persons and entities … that assert a claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor which arose on or prior to the Petition Date … [to] file a proof of such claim." (A2.) If a claimant fails to timely file a proof of claim, the Bar Date Order provides that claimant "shall be forever barred, estopped[,] and enjoined from asserting the applicable claim … against the Debtor or property of the estate." (A5.)

Debtor argued in the Bankruptcy Court that "defensive setoff rights are 'claims' under … 11 U.S.C. § 101(5)," and pursuant to the Bar Date Order, "FDIC-R1 lost its ability to assert such claims when the claim deadline passed." (A102.) The Bankruptcy Court rejected Debtor's argument, concluding that "FDIC-R1's purported setoff right is defensive and does not affirmatively implicate the Debtor's estate." (A103.) In

14

reaching this conclusion, the Bankruptcy Court reasoned that "a defensive setoff is substantively different from a 'claim.'" (A102.)

Neither the Supreme Court nor this Court has addressed whether defensive setoff rights are "claims" under 11 U.S.C. § 101(5). The Bankruptcy Court agreed that this question is "unsettled." (A191.) As the District Court noted, "FDIC-R[s] d[id] not argue to the contrary." (A195.) Their only response was that this question is inappropriate for certification under section 158(d)(2)(A)(i) because it is not "controlling" or "dispositive." (A164-65.) For three reasons, FDIC-Rs' argument is meritless.

**First**, even if the "dispositive" requirement existed (and it does not), Debtor would satisfy that requirement. The only difference between treating FDIC-R1's claims as "defensive" rather than "affirmative" is that in the former case, FDIC-R1 has agreed to cap its recovery to the amount of Debtor's claims against it. A "defensive" claim still diminishes Debtor's estate—and impairs the rights of other creditors—by that capped amount. And if a defensive setoff right constitutes a "claim" under 11 U.S.C. § 101(5), the Bar Date Order itself would "forever bar[], estop[,] and enjoin[]" FDIC-Rs from asserting a setoff right against Debtor after

15

the Bar Date. (A5.) This ground for extinguishing FDIC-R1's purported setoff rights is separate and independent from Debtor's other arguments, including that FDIC-R1 has waived its defensive setoff rights, and that the discharge provision under 11 U.S.C. § 1141 extinguishes any setoff rights preserved under 11 U.S.C. § 553.

***Second***, section 158(d)(2)(A)(i)'s text states that a challenged order is appropriate for direct appeal as long as it "*involves a question of law* as to which there is *no controlling decision* of the court of appeals for the circuit or of the Supreme Court of the United States." The statute says nothing to suggest that the *question of law* must be "controlling" or "dispositive." And Congress knows how to impose a dispositive requirement when it wants to. *Cf. Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010). For example, to certify an interlocutory appeal under 28 U.S.C. § 1292(b), a district court must determine that the "order involves a *controlling question of law* as to which there is substantial ground for difference of opinion." Section 158(d)(2)(A)(i), by contrast, only requires that there be "*no controlling decision of the court of appeals or the Supreme Court*" and clearly does not require that the issue of law be dispositive.

16

*Third*, caselaw and legislative history undermine FDIC-Rs'

misreading. Contrary to FDIC-Rs' suggestion, the Court in *Weber* did not

consider—let alone decide—whether direct appeals were appropriate

under section 158(d)(2)(A)(i) only if they raised dispositive questions of

law. Instead, the Court there declined to hear a direct appeal because it

"d[id] not perceive a conflict of such a nature that creates uncertainty in

the bankruptcy courts" under section 158(d)(2)(A)(ii) and its direct

review "would [not] lead to a more rapid resolution of the case" under

section 158(d)(2)(A)(iii). *Weber*, 484 F.3d at 161; *see also CFCU Cmty.*

*Credit Union* v. *Hayward*, 552 F.3d 253, 267 n.13 (2d Cir. 2009)

(summarizing the holding of *Weber*). And when *Weber* discussed

section 158(d)(2)(A)(i) in *dicta*, the Court noted that "[u]nlike § 1292(b),"

section 158(d)(2)(A) "expressly provides that the lower court may certify

that a decision is susceptible of direct appeal *solely because there is no*

*governing legal precedent*." 484 F.3d at 159 n.4 (emphasis added). There

is simply no mention of the supposed "dispositive" requirement.

Legislative history is also of no help to FDIC-Rs. The House Report

cited in *Weber*, which accompanied the passage of what is now

section 158(d)(2), states broadly that the provision was "intended to be

used to settle unresolved questions of law where there is a need to establish clear binding precedent at the court of appeals level." H.R. Rep. No. 109-31, at 148 (2005). Again, the purported "dispositive" requirement is nowhere to be found.

Because each of the three questions of law is indisputably unsettled, the Court should authorize a direct appeal under section 158(d)(2)(A)(i).

## II. THE ORDER INVOLVES QUESTIONS OF LAW REQUIRING RESOLUTION OF CONFLICTING DECISIONS UNDER SECTION 158(d)(2)(A)(ii).

An order is also appropriate for direct appeal if it "involves a question of law requiring resolution of conflicting decisions." 28 U.S.C. § 158(d)(2)(A)(ii). Here, beyond the lack of controlling precedent, each of the three questions of law meets this standard.

*First*, courts within this Circuit disagree over whether a creditor's failure to file a proof of claim is fatal to its setoff right post-confirmation. As the Bankruptcy Court pointed out, there are cases "in this district expressly stat[ing] that a defensive right of setoff can be preserved in the absence of a proof of claim." (A73-74.) But at least one court has, to the contrary, dismissed a creditor's "affirmative defense of setoff as a matter

18

of law" because the creditor did not "timely fil[e] a proof of claim and assert[] the set-off in the reorganization proceedings." *Daewoo Int'l (Am.) Corp. Creditor Tr.* v. *SSTS Am. Corp.*, 2003 WL 21355214, at *5 (S.D.N.Y. June 11, 2003) (emphasis added).

FDIC-Rs attempted to distinguish *Daewoo* from this case and other authorities because FDIC-Rs objected to the Plan prior to confirmation, whereas the claimant in *Daewoo* did not. (A169-71.) Whether the creditor objected to the plan was a factor that the *Daewoo* court considered only in rejecting the claimant's *recoupment* right, not in rejecting its *setoff* right. With respect to the claimant's recoupment defense, the court in *Daewoo* explained that "recoupment is not a 'claim' within the meaning of the Bankruptcy Code and this right is, as a general matter, unaffected by the debtor's discharge." 2003 WL 21355214, at *5. But, in that case, "because [the claimant] was provided with *sufficient notice to object to the plan's prohibition on recoupment* and because *it did not do so in a timely fashion* before the Bankruptcy Court," the court did not "allow it to do so" post-confirmation. *Id.* (emphasis added).

The court denied the creditor's *setoff* claim for different (and more fundamental) reasons. The court first observed that "where there is a

specific provision in the confirmation order prohibiting setoff claims, courts have indicated that the right to setoff may not survive the confirmation plan." *Id.* at *4. The court then noted that "the Third Circuit [in *In re Continental*] has taken the position that even a general discharge under § 1141 takes precedence over § 553 where, as here, the debtor had no notice of the setoff claim prior to confirmation of the plan of reorganization by the bankruptcy court." *Id.* at *5. The court in *Daewoo* ultimately "agree[d] with the Third Circuit's reasoning" and dismissed the creditor's setoff defense because allowing the creditor to assert a setoff defense post-confirmation "without timely filing a proof of claim and asserting the set-off in the reorganization proceedings[] has a probability of disrupting the plan of reorganization and can conceivably undermine the objectives and structure of the Bankruptcy Code." *Id.* (alterations omitted). *Daewoo* therefore stands for the proposition that a creditor is required to file a proof of claim pre-confirmation to preserve its *setoff* right—a conclusion that conflicts with the Order and other decisions within the Second Circuit. *See, e.g.*, *Bernstein* v. *IDT Corp.*, 76 B.R. 275, 281 (S.D.N.Y. 1987).

FDIC-Rs urged that *Daewoo* should be narrowly interpreted to only require the filing of a proof of claim by those creditors "who failed to provide the debtor with any notice of intent to assert their setoff rights." (A197.)  Even on this narrow reading, *Daewoo* still conflicts with other decisions in this Circuit concluding—without qualification—that "filing a proof of claim is not a prerequisite to asserting an otherwise valid setoff."  *In re M. Silverman Laces, Inc.*, 404 B.R. 345, 365 (Bankr. S.D.N.Y. 2009).  Regardless of FDIC-Rs' framing, there is an intra-circuit split on *whether* (and *to what extent*) a creditor waives its defensive setoff rights by failing to file a proof of claim.  Because these "conflicting decisions have created confusion" and "uncertainty," *Weber*, 484 F.3d at 161, this Court should permit a direct appeal to provide the much-needed clarification.

**Second**, whether section 553's setoff provision takes precedence over section 1141's discharge "has divided the courts."  5 Collier on Bankruptcy ¶ 553.08 (16th ed. 2024) ("Collier").  On the one hand, the Tenth Circuit has held that "the right to assert a setoff against a mutual, prepetition debt owed the bankrupt estate survives even the Bankruptcy Court's discharge of the bankrupt's debts."  *In re Davidovich*, 901 F.2d

1533, 1539 (10th Cir. 1990). On the other hand, the Third Circuit has concluded that a right of setoff is extinguished post-confirmation *unless* the right was "duly exercised in the bankruptcy court before the plan of reorganization is confirmed." *In re Cont'l Airlines*, 134 F.3d 536, 542 (3d Cir. 1998). As discussed above, *Daewoo* adopts the Third Circuit's view, *Daewoo*, 2003 WL 21355214, at *4-5, whereas the Bankruptcy Court concluded that "FDIC-R1's preserved defensive setoff rights cannot be discharged" by virtue of section 1141 (A78). These attempts to harmonize sections 1141 and 553 therefore present another conflict within this Circuit.

**Finally**, although the Bankruptcy Court concluded that "FDIC-R1's purported setoff right is defensive and does not affirmatively implicate the Debtor's estate" (A66), it also recognized that "some courts disagree with this approach and hold that there is no distinction between asserting a setoff as a claim and asserting setoff as a defense" (*id.*; *see also* A195.) In both instances, a creditor is asserting a right to recover against the debtor, and in the case of a setoff, the creditor is capping its recovery at the amount of the debtor's claim against the creditor. And in asserting a claim as a setoff, the creditor is improving the priority of its

claim vis-à-vis other creditors of the same class by "elevat[ing] an otherwise unsecured claim … to secured claim status." *In re Corp. Res. Servs., Inc.*, 564 B.R. 196, 198 (Bankr. S.D.N.Y. 2017); *see also In re Myers*, 362 F.3d 667, 672 & n.5 (10th Cir. 2004) (same).

Multiple courts in this Circuit have thus concluded that a defensive setoff is a claim against the bankruptcy estate. *See, e.g.*, *In re Iridium Operating LLC*, 285 B.R. 822, 833 (S.D.N.Y. 2002) ("Regardless of whether a setoff is labeled an 'affirmative defense' or a 'counterclaim,' a setoff is a claim against the bankruptcy estate." (alterations omitted)); *In re N. Am. Energy Conservation, Inc.*, 2000 WL 1514614, at *2 (S.D.N.Y. Oct. 12, 2000) ("[B]y pleading setoffs in the form of 'affirmative defenses,' [a claimant] has in fact asserted a claim against [the debtor]'s bankruptcy estate."); *In re Belmonte*, 551 B.R. 723, 730 (Bankr. E.D.N.Y. 2016) ("[A] claim for setoff is tantamount to filing a claim against the bankruptcy estate—a claim of setoff is essentially a request to recover from the estate itself.").

Because these decisions conflict with the Bankruptcy Court's conclusion that "FDIC-R1's purported setoff right is defensive and does not affirmatively implicate the Debtor's estate" (A66), a direct appeal is

23

appropriate under section 158(d)(2)(A)(ii), *see In re Crane*, 742 F.3d 702, 705 & n.1 (7th Cir. 2013) (granting a direct appeal when the challenged decision conflicted with other bankruptcy court decisions in the Circuit); *Deutsche Bank Nat'l Tr. Co.* v. *Tucker*, 621 F.3d 460, 461 (6th Cir. 2010) (same).

This Court should therefore authorize a direct appeal under section 158(d)(2)(A)(ii) because the Order implicates at least three questions of law requiring resolution of conflicting intra-circuit decisions.

## III. THE APPEAL INVOLVES A MATTER OF PUBLIC IMPORTANCE UNDER SECTION 158(d)(2)(A)(i).

A direct appeal is also appropriate because this case involves "a matter of public importance." 28 U.S.C. § 158(d)(2)(A)(i).

***First***, courts recognize that a "setoff claim takes on particular importance in the context of bankruptcy, as it, in effect, elevates an unsecured claim to secured status to the extent that the debtor has a mutual, pre-petition claim against the party asserting setoff." *Iridium*, 285 B.R. at 834 (internal quotation marks omitted). Through this appeal, Debtor seeks to clarify *when* a creditor can exercise its setoff right, thereby elevating its prepetition unsecured claim to secured status, and *when* a court should preclude the creditor from availing itself of this

24

elevation. These issues "transcend the litigants" in this case, 1 Collier ¶ 5.06[4][b], since the propriety of setoff has been "a thorn in the side" of numerous bankruptcy cases, *In re Panjian*, 785 F.3d 1161, 1163 (7th Cir. 2015) (granting a direct appeal under section 158(d)(2)(A)(i)'s public importance factor where the issue at bar "has been a thorn in the side of many Chapter 13 cases involving secured creditors"); *see, e.g.*, *Berg* v. *SSA*, 900 F.3d 864, 865-66 (7th Cir. 2018) (granting a direct appeal from, and ultimately affirming, a bankruptcy court's partial disallowance of an agency's setoff claim where it "improved its position … during the ninety-day preference period"); *In re Orexigen Therapeutics, Inc.*, 990 F.3d 748, 752 (3d Cir. 2021) (analyzing on appeal the "mutuality" requirement for setoffs under section 553); *In re Dorand*, 95 F.4th 1355, 1365 (11th Cir. 2024) (concluding on a direct appeal that Morgan Stanley did not have a setoff right under section 553 based on a state court judgment against its retirement account holder); 5 Collier ¶ 553.08 (collecting conflicting cases on the effect of confirmation and discharge on setoff rights).

**Second**, this case also involves a matter of public importance because "the issue on appeal may aid in upholding fundamental

bankruptcy protections." *In re Essar Steel Minnesota LLC*, 2020 WL 3574743, at \*6 (D. Del. July 1, 2020) (agreeing with appellant that the public importance factor was met because allowing the bankruptcy court's order to stand may undermine the Bankruptcy Code's discharge provisions), *after direct appeal authorized*, 47 F.4th 193 (3d Cir. 2022). The discharge of pre-confirmation debt "serves the bankruptcy policy of providing debtors with a 'fresh start' to permit their continued operation free of pre-bankruptcy debts." *DPWN Holdings (USA), Inc.* v. *United Air Lines, Inc.*, 747 F.3d 145, 150 (2d Cir. 2014). FDIC-Rs argued that "defensive" setoff rights survive the discharge under section 524 and 1141, whether or not they filed a proof of claim. The Order ruled in favor of FDIC-Rs on this issue. (A76-78.) This appeal thus concerns a fundamental feature of bankruptcy protection—bankruptcy discharge— and the scope of its purported exceptions.

**Finally**, answering the questions presented by this appeal may involve addressing the intersection between the Bankruptcy Code and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, the latter of which FDIC-Rs have repeatedly invoked as a basis for sustaining their objection. (A29, A92.) This further counsels in favor of

certification, as courts have found that the public importance factor is satisfied when the appeal requires harmonizing different federal statutory schemes. *See* 1 Collier ¶ 5.06[4][b] ("Such things as … the applicability of nonbankruptcy law to matters arising in a bankruptcy case … come immediately to mind as matters that might be considered as being of public importance.").

Therefore, a direct appeal is also appropriate under section 158(d)(2)(A)(i) because this appeal involves a matter of public importance.

## CONCLUSION

For these reasons, this Court should authorize a direct appeal from the Order under 28 U.S.C. § 158(d)(2).

Respectfully submitted,

/s/ Robert A. Sacks
Robert A. Sacks
James L. Bromley
Adam S. Paris
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
sacksr@sullcrom.com
bromleyj@sullcrom.com
parisa@sullcrom.com

Diane L. McGimsey
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, CA 90067
(310) 712-6600
mcgimseyd@sullcrom.com

*Counsel for Debtor-Appellant*
*SVB Financial Group*

October 30, 2024

## CERTIFICATE OF COMPLIANCE

I certify that:

1. This petition complies with the type-volume limitation of Fed. R. App. P. 5(c) because it contains 5,193 words, excluding all items exempted by Fed. R. App. P. 5(b)(1)(E) and 32(f).

2. This petition complies with the requirements of Fed. R. App. P. 5(c), 32(a), and 32(c)(2) because it has been prepared in a proportionally spaced typeface using Microsoft Word Century Schoolbook 14-point font.

October 30, 2024

/s/ Robert A. Sacks
*Counsel for Debtor-Appellant*
*SVB Financial Group*

## CERTIFICATE OF SERVICE

I certify that:

1. On October 30, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Second Circuit via ECF in accordance with Local Rules 15.1 and 25.1.

2. On October 30, 2024, I caused the foregoing to be served on counsel for FDIC-Rs by e-mail and Certified Mail at the following addresses:

   Kurt F. Gwynne
   Casey D. Laffey
   REED SMITH LLP
   599 Lexington Avenue
   New York, NY 10022
   kgwynne@reedsmith.com
   claffey@reedsmith.com

   Derek J. Baker
   REED SMITH LLP
   Three Logan Square
   1717 Arch Street, Suite 3100
   Philadelphia, PA 19103
   dbaker@reedsmith.com

   Keith M. Aurzada
   REED SMITH LLP
   2850 N. Harwood Street, Suite 1500
   Dallas, TX 75201
   kaurzada@reedsmith.com

October 30, 2024

/s/ Robert A. Sacks

*Counsel for Debtor-Appellant*
*SVB Financial Group*

30

# ADDENDUM

1. *Order Establishing Deadlines for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* (June 29, 2023) (the "<u>Bar Date Order</u>") ......................................................................... A1

2. *Joint Pretrial Order* (July 19, 2024) ................................................. A28

3. *Memorandum Opinion and Order Sustaining the Objection of the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A. to the Second Amended Chapter 11 Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (August 2, 2024) (the "<u>Order</u>") ................. A46

4. *Notice of Appeal and Statement of Election* (August 9, 2024) ......... A79

5. *SVB Financial Group's Motion to Certify Direct Appeal to the United States Court of Appeals for the Second Circuit Under 28 U.S.C. § 158(d)(2)* (September 11, 2024) ...................................... A120

6. *Order Deferring for Decision by the District Court Debtor's Motion to Certify Direct Appeal to the United States Court of Appeals for the Second Circuit Under 28 U.S.C. § 158(d)(2)* (September 20, 2024) ................................................................... A189

7. *Opinion and Order Certifying the Bankruptcy Court's Order for Direct Appeal Under 28 U.S.C. § 158(d)(2)(A)(i)* (September 30, 2024) ........................................................................... A192

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
:
In re                                                            :          Chapter 11
:
SVB FINANCIAL GROUP,[1]                                          :          Case No. 23-10367 (MG)
:
                                        Debtor.                  :
:
---------------------------------------------------------------- x

## ORDER ESTABLISHING DEADLINES FOR FILING PROOFS OF CLAIM AND APPROVING FORM AND MANNER OF NOTICE THEREOF

Upon the motion (the "Motion")[2] of SVB Financial Group, as debtor and debtor-in-possession (the "Debtor"), for entry of an order (this "Order") establishing deadlines for filing proofs of claim and approving the form and manner of notice thereof; this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided; and any objections (if any) to the Motion having been withdrawn or overruled on the merits; and a hearing having been held to consider the relief requested in the Motion; and upon the record of the hearing and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor, its estate, its creditors and all other parties-in-interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

---

[1]    The last four digits of SVB Financial Group's tax identification number are 2278.

[2]    Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

IT IS HEREBY ORDERED THAT:

1.        The Motion is GRANTED as set forth herein.

2.        The General Bar Date, Amended Schedule Bar Date, and Governmental Bar Date, the Bar Date Notice Package, and the manner of providing notice of the Bar Dates and filing of proofs of claim as proposed in the Motion are approved.  The Debtor is hereby authorized to serve the Bar Date Notice Package as set forth in this Order.

3.        Except as otherwise provided herein, all persons and entities (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) that assert a claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor which arose on or prior to the Petition Date, *including* claims pursuant to section 503(b)(9) of the Bankruptcy Code (each, a "503(b)(9) Claim"), shall file a proof of such claim so that it is actually received by Kroll Restructuring Administration LLC (the "Notice and Claims Agent") on or before **August 11, 2023 at 4:00 p.m. (Eastern Time)** (the "General Bar Date").

4.        Notwithstanding any other provision hereof, proofs of claim filed by governmental units (as defined in section 101(27) of the Bankruptcy Code) must be filed so as to be actually received by the Claims and Noticing Agent on or before **September 14, 2023 at 4:00 p.m., Eastern Time** (the first business day following the date that is 180 days after the date of the orders for relief filed by the Debtor).

5.        The following procedures for the filing of proofs of claim shall apply:

   a.   Proofs of claim must be submitted on the Proof of Claim Form attached hereto as Exhibit 2 or otherwise conform substantially to Official Bankruptcy Form No. 410;

   b.   Proofs of claim must be filed (a) electronically through the website of the Debtor's Court-approved claims and noticing agent, Kroll, using the interface available on such website located at https://restructuring.ra.kroll.com/svbfg/EPOC-Index or (b) by hand delivery or mailing the original proof of claim form either by U.S.

A2

Postal Service mail or overnight delivery on or before the applicable Bar Date to Kroll Restructuring Administration LLC at the applicable mailing address: (i) if by first class mail, SVB Financial Group Claims Processing Center, c/o Kroll Restructuring Administration LLC, Grand Central Station, PO Box 4850, New York, NY 10163-4850, or (ii) if by overnight courier or hand delivery, to SVB Financial Group Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232.

c.    Proofs of claim shall be deemed filed only when actually <u>received</u> by the Claims and Noticing Agent on or before the applicable Bar Date.

d.    Proofs of claim must (i) be signed by the claimant or by an authorized agent of the claimant; (ii) include supporting documentation (or, if such documentation is voluminous, a summary) or an explanation as to why such documentation is not available; (iii) be written in the English language; and (iv) be denominated in United States currency.

e.    In addition to the requirements set forth in (d) above, any proof of claim asserting a 503(b)(9) Claim must also: (i) include the value of the goods delivered to and received by the Debtor in the 20 days prior to the Petition Date; (ii) attach any documentation identifying the particular invoices for which the 503(b)(9) Claim is being asserted; and (iii) set forth whether any portion of the 503(b)(9) Claim was satisfied by payments made by the Debtor pursuant to any order of this Court authorizing the Debtor to pay prepetition claims.

6.    The following persons or entities, whose claims otherwise would be subject to a Bar Date pursuant to this Order, need not file proofs of claim on or prior to any Bar Date:

a.    any person or entity that has already filed a proof of claim against the Debtor with the Clerk of the Bankruptcy Court for the Southern District of New York or with Kroll Restructuring Administration LLC ("<u>Kroll</u>"), the Debtor's claims and noticing agent, in a form substantially similar to Official Bankruptcy Form No. 410 adopted by the Court;

b.    any person or entity whose claim is listed on the Schedules, provided that: (i) such claim is not scheduled as "disputed," "contingent" or "unliquidated" and (ii) the claimant does not disagree with the amount, nature and priority of the claim as set forth in the Schedules;

c.    any person or entity whose claim has been allowed by order of this Court;

A3

d.   any person or entity whose claim has been paid in full by the Debtor;

e.   any holder of a claim that for which a specific deadline has previously been fixed by order of this Court;

f.   any of the non-debtor subsidiaries of the Debtor having a claim against the Debtor (which, for the avoidance of doubt, does not include the former Silicon Valley Bank or any of its subsidiaries, any entity asserting claims on behalf of the former Silicon Valley Bank or any of its subsidiaries, or any entity that has acquired or succeeded to claims of the former Silicon Valley Bank or any of its subsidiaries, including the Federal Deposit Insurance Corporation);

g.   any person or entity whose claim is allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative expense (other than a claim arising under section 503(b)(9) of the Bankruptcy Code); and

h.   any individual holder of a Debt Claim on account of any note, bond, or debenture issued by the Debtor pursuant to an Indenture with respect to such Debt Claim; *provided* that the indenture trustee under the applicable Indenture may file (and may amend and/or supplement) a single Master Proof of Claim with respect to all Debt Claims owed under the relevant Indenture; *provided*, *further*, that any proof of claim nonetheless filed by an individual holder of a Debt Claim will be treated as duplicative of any Master Proof of Claim filed by the applicable indenture trustee unless such individual holder's proof of claim is on account of something other than a Debt Claim arising under the applicable Indenture.

7.      Any person or entity that holds a claim that arises from the rejection of an executory contract or unexpired lease must file a proof of claim based on such rejection on or before the later of (i) the General Bar Date and (ii) the date that is 30 days after the effective date of rejection for such executory contract or unexpired lease (the "Rejection Bar Date").  For the avoidance of doubt, any counterparty to a rejected executory contract or unexpired lease that seeks to assert a claim against the Debtor may include any prepetition arrearages or charges with respect to such rejected executory contract or lease in its proof of claim filed no later than the Rejection Bar Date.

8.     Holders of equity security interests in the Debtor need not file proofs of interest with respect to the ownership of such equity interests; provided, however, that if any such holder asserts a claim against the Debtor (including a claim relating to an equity interest or the purchase or sale of such equity interest), a proof of such claim must be filed, and actually received by Kroll, on or prior to the applicable Bar Date pursuant to the procedures set forth in this Order.

9.     If the Debtor amends or supplements the Schedules subsequent to the date hereof, the Debtor shall give notice of any amendment or supplement to the holders of claims affected thereby, and such holders of claims shall file a proof of claim on or before **the later of**: **(a) the General Bar Date and (b) 4:00 p.m., Eastern Time, on the date that is 30 days after the date that notice of the applicable amendment or supplement to the Schedules is served on such entity** (the "Amended Schedule Bar Date").  Any such holders of claims shall be given notice of such deadline.

10.     Nothing in this Order shall prejudice any right of the Debtor or any other party-in-interest to dispute or assert offsets or defenses to any claim included in the Schedules.

11.     Pursuant to Bankruptcy Rule 3003(c)(2), all holders of claims that fail to comply with this Order by timely filing a proof of claim in appropriate form, if required, shall be forever barred, estopped and enjoined from asserting the applicable claim (including any such claim asserting administrative expense status under section 503(b)(9) of the Bankruptcy Code) against the Debtor or property of the estate and shall not be treated as a creditor with respect to such claim for purposes of voting on or distribution under any plan of reorganization filed in this chapter 11 case.

A5

12.    A copy of the notice substantially in the form attached hereto as <u>Exhibit 1</u>

(the "<u>Bar Date Notice</u>") hereby is approved and shall be deemed adequate and sufficient if

served by first-class mail at least 35 days prior to the General Bar Date on:

      a.   counsel to the U.S. Trustee;

      b.   counsel for the Committee;

      c.   all persons or entities that have requested notice in this chapter 11 case;

      d.   all persons or entities that have previously filed a proof of claim in this chapter 11 case;

      e.   all known creditors and potential holders of claims as of the date of the Bar Date Order, including those listed in the Schedules as holding potential claims against the Debtor;

      f.   all parties to executory contracts and unexpired leases of the Debtor;

      g.   all parties to pending litigation with the Debtor;

      h.   the Internal Revenue Service and all known applicable taxing authorities and other governmental units;

      i.   all other parties on the Master Service List, as defined in the *Order Establishing Case Management Procedures*, and

      j.   such additional persons and entities as deemed appropriate by the Debtor.

13.    With regard to those holders of claims listed on the Schedules, the Debtor

shall mail or electronically serve (if consented to by the claimant) one or more proof of claim

forms (as appropriate) substantially similar to the Proof of Claim Form, indicating on such form

how the Debtor has scheduled such claim in the Schedules (including the amount of the claim

and whether the claim has been scheduled as contingent, unliquidated or disputed).

14.    Pursuant to Bankruptcy Rule 2002(*l*), the Debtor shall publish notice of

the Bar Dates, in substantially the form attached hereto as <u>Exhibit 3</u> (the "<u>Publication Notice</u>"),

in *USA Today (national edition)* and the *San Francisco Chronicle* once as soon as practicable

following entry of the Bar Date Order, but in any event at least 28 days prior to the General Bar

Date, which publication is hereby approved and shall be deemed good, adequate and sufficient

publication notice of the Bar Dates.  The Debtor, in its sole discretion, may publish the

Publication Notice in other newspapers, trade journals or similar publications as the Debtor deem

appropriate.

15.    The Debtor and Kroll are authorized and empowered to execute and

deliver such documents, and to take and perform all actions necessary to implement and

effectuate the relief granted in this Order.

16.    The entry of this Order is without prejudice to the right of the Debtor to

seek a further order of this Court fixing a date by which holders of claims or interests not subject

to the Bar Dates established herein must file such proofs of claim or interest or be barred from

doing so.

17.    The requirements set forth in Local Rule 9013-1(b) are satisfied.

18.    This Court shall retain jurisdiction with respect to any matters, claims,

rights or disputes arising from or related to the Motion or the implementation of this Order.

**IT IS SO ORDERED.**

Dated:  June 29, 2023
         New York, New York


         _____/s/ Martin Glenn_____
                 MARTIN GLENN
         Chief United States Bankruptcy Judge

A7

# **EXHIBIT 1**

## **Form of Bar Date Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  | x |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| SVB FINANCIAL GROUP,[1] | : | Case No. 23-10367 (MG) |
|  | : |  |
| Debtor. | : |  |
|  | : |  |
|  | x |  |

**NOTICE OF DEADLINES REQUIRING FILING OF PROOFS OF CLAIM**
**ON OR BEFORE AUGUST 11, 2023**

**TO ALL PERSONS AND ENTITIES WITH CLAIMS AGAINST**
**SVB FINANCIAL GROUP:**

On  [June] __, 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [D.I. ___ ] (the "Bar Date Order") in the chapter 11 case of SVB Financial Group, as debtor and debtor-in-possession (the "Debtor"), establishing **August 11, 2023 at 4:00 p.m., Eastern Time** (the "General Bar Date") as the general deadline for each person or entity (including individuals, partnerships, corporations, joint ventures and trusts) to file a proof of claim against the Debtor.

The General Bar Date, the other deadlines established by the Bar Date Order, and the procedures set forth below for filing proofs of claim apply to all claims against the Debtor that arose prior to **March 17, 2023**, the date on which the Debtor commenced this chapter 11 case, except for those holders of claims listed in Section 4 below that are specifically excluded from the filing requirements established by the Bar Date Order.  Governmental units have until **September 14, 2023**, the first business day following the date that is 180 days after the order for relief, to file proofs of claim.

1.    **WHO MUST FILE A PROOF OF CLAIM**

You MUST file a proof of claim to vote on a chapter 11 plan or to share in distributions from the Debtor's bankruptcy estate if you have a claim that arose prior to **March 17, 2023** (the "Petition Date"), and it is not one of the types of claim described in Section 4 below.  Claims based on acts or omissions of the Debtor that occurred before the Petition Date must be filed on or prior to the General Bar Date (or, if applicable, one of the other deadlines described below), even if such claims are not now fixed, liquidated or certain or did not mature or become fixed, liquidated or certain before the Petition Date.

---

[1]        The last four digits of SVB Financial Group's tax identification number are 2278.

The Bar Date Order establishes the following bar dates for filing proofs of claim in this chapter 11 case (collectively, the "Bar Dates"):

a.  **General Bar Date**.  Except as otherwise described in this Notice, all persons and entities that hold a claim against the Debtor that arose prior to the Petition Date shall file a proof of claim as described in this Notice by **August 11, 2023 at 4:00 p.m., Eastern Time**.  For the avoidance of doubt, the General Bar Date applies to all 503(b)(9) Claims.

b.  **Amended Schedule Bar Date**.  If the Debtor amends or supplements its schedules of assets and liabilities and statements of financial affairs filed in this chapter 11 case (the "Schedules"), any claimant affected by such amendment or supplement must file a proof of claim or make any amendments to a previously filed proof of claim on or before the date that is **the later of (i) the General Bar Date and (ii) 4:00 p.m., Eastern Time, on the date that is 30 days after the date that notice of the applicable amendment or supplement to the Schedules is served on the claimant** (the "Amended Schedule Bar Date").

c.  **Governmental Bar Date**.  All governmental units (as defined in section 101(27) of the Bankruptcy Code (as defined below)) holding claims against the Debtor that arose or are deemed to have arisen prior to the Petition Date must file proofs of claim by **September 14, 2023 at 4:00 p.m., Eastern Time** (the "Governmental Bar Date").

d.  **Rejection Bar Date**.  Any person or entity that holds a claim that arises from the rejection of an executory contract or unexpired lease must file a proof of claim based on such rejection on or before the later of (i) the General Bar Date and (ii) the date that is 30 days after the effective date of rejection for such executory contract or unexpired lease (the "Rejection Bar Date").  For the avoidance of doubt, any counterparty to a rejected executory contract or unexpired lease that seeks to assert a claim against the Debtor may include any prepetition arrearages or charges with respect to such rejected executory contract or lease in its proof of claim filed no later than the Rejection Bar Date.

Section 101(5) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") provides that the word "claim" means:  (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

## 2.     WHAT TO FILE

The Debtor is enclosing a proof of claim form for use in this chapter 11 case.  You may also use another proof of claim form that conforms substantially to Official Bankruptcy Form No. 410.  If your claim is scheduled by the Debtor, the attached proof of claim form also sets forth: (a) the amount of your claim as scheduled by the Debtor; (b) whether your claim is

A10

scheduled as disputed, contingent or unliquidated; and (c) whether your claim is scheduled as a secured claim, an unsecured priority claim, or an unsecured nonpriority claim.  You will receive a different proof of claim form for each claim scheduled in your name by the Debtor.  You may utilize the claim form(s) provided by the Debtor to file your claim.  Additional proof of claim forms may be obtained at https://restructuring.ra.kroll.com/svbfg/EPOC-Index or http://www.uscourts.gov/forms/bankruptcy-forms.

In addition to the requirements set forth in the immediately preceding paragraph, any proof of claim asserting a 503(b)(9) Claim must also:  (i) include the value of the goods delivered to and received by the Debtor in the 20 days prior to the Petition Date; (ii) attach any documentation identifying the particular invoices for which the 503(b)(9) Claim is being asserted; and (iii) set forth whether any portion of the 503(b)(9) Claim was satisfied by payments made by the Debtor pursuant to any order of the Court authorizing the Debtor to pay prepetition claims.

All proof of claim forms **must be signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.  Your signature may be digitally signed if your claim is filed electronically.  Each proof of claim form must be written in English and be denominated in United States currency.  You should attach to your completed proof of claim form any documents on which the claim is based (or, if such documents are voluminous, attach a summary) or an explanation as to why the documents are not available.

Your proof of claim form must not contain complete social security numbers or taxpayer identification numbers (only the last four digits), a complete birth date (only the year), the name of a minor (only the minor's initials) or a financial account number (only the last four digits of such financial account).

## 3.    WHEN AND WHERE TO FILE

Except has provided for herein, all proofs of claim must be filed so as to be actually received at one of the following addresses **on or before the applicable Bar Date**:

**IF DELIVERED BY FIRST CLASS MAIL:**

SVB Financial Group Claims Processing Center
c/o Kroll Restructuring Administration LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**IF DELIVERED BY HAND OR OVERNIGHT DELIVERY:**

SVB Financial Group Claims Processing Center
c/o Kroll Restructuring Administration LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**IF ELECTRONICALLY:**

The website established by Kroll Restructuring Administration LLC ("Kroll"), using the interface available on such website located at https://restructuring.ra.kroll.com/svbfg/EPOC-Index (the "Electronic Filing System").

Proofs of claim will be deemed filed only when **received** at the address listed above or filed electronically on or before the applicable Bar Date. Proofs of claim may NOT be delivered by facsimile, telecopy or electronic mail transmission.

**4.    WHO NEED NOT FILE A PROOF OF CLAIM**

You do not need to file a proof of claim on or prior to the applicable Bar Date described in this Notice if you are:

a.    Any entity that already has filed a signed proof of claim against the Debtor with the Clerk of the Bankruptcy Court for the Southern District of New York or with Kroll, the Debtor's claims and noticing agent, in a form substantially similar to Official Bankruptcy Form No. 410;

b.    Any person or entity whose claim is listed on the Schedules, provided that: (i) such claim is not scheduled as "disputed," "contingent" or "unliquidated," and (ii) the claimant does not disagree with the amount, nature and priority of the claim as set forth in the Schedules;

c.    Any person or entity whose claim has been allowed by order of the Court;

d.    Any person or entity whose claim has been paid in full by the Debtor;

e.    A holder of a claim for which a different deadline previously has been fixed by order of the Court;

f.    Any of the non-debtor subsidiaries of the Debtor having a claim against the Debtor (which, for the avoidance of doubt, does not include the former Silicon Valley Bank or any of its subsidiaries, any entity asserting claims on behalf of the former Silicon Valley Bank or any of its subsidiaries, or any entity that has acquired or succeeded to claims of the former Silicon Valley Bank or any of its subsidiaries, including the Federal Deposit Insurance Corporation);

g.    Any person or entity whose claim is allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative expense (other than a claim arising under section 503(b)(9) of the Bankruptcy Code); and

h.    any individual holder of a Debt Claim on account of any note, bond, or debenture issued by the Debtor pursuant to an Indenture with respect to such Debt Claim; *provided* that the indenture trustee under the applicable Indenture may file (and may amend and/or supplement) a single Master Proof of Claim with respect to all Debt Claims owed under the relevant Indenture; *provided*, *further*, that any proof of claim

A12

nonetheless filed by an individual holder of a Debt Claim will be treated as duplicative of any Master Proof of Claim filed by the applicable indenture trustee unless such individual holder's proof of claim is on account of something other than a Debt Claim arising under the applicable Indenture.

If you are a holder of an equity interest in the Debtor, you need not file a proof of interest with respect to the ownership of such equity interest at this time.  However, if you assert a claim against the Debtor, including a claim relating to such equity interest or the purchase or sale of such interest, a proof of such claim must be filed on or prior to the applicable Bar Date pursuant to the procedures set forth in this Notice.

This Notice is being sent to many persons and entities that have had some relationship with or have done business with the Debtor but may not have an unpaid claim against the Debtor. The fact that you have received this Notice does not mean that you have a claim or that the Debtor or the Court believe that you have a claim against the Debtor.

## 5.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

If you have a claim arising out of the rejection of an executory contract or unexpired lease, you must file a proof of claim based on such rejection on or before the later of (i) the General Bar Date and (ii) the date that is 30 days after the effective date of rejection for such executory contract or unexpired lease.  For the avoidance of doubt, any counterparty to a rejected executory contract or unexpired lease that seeks to assert a claim against the Debtor may include any prepetition arrearages or charges with respect to such rejected executory contract or lease in its proof of claim filed no later than the Rejection Bar Date.

## 6.    CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE

ANY HOLDER OF A CLAIM THAT IS NOT EXEMPTED FROM THE REQUIREMENTS OF THE BAR DATE ORDER, AS SET FORTH IN SECTION 4 ABOVE, AND THAT FAILS TO TIMELY FILE A PROOF OF CLAIM IN THE APPROPRIATE FORM BY THE APPLICABLE BAR DATE AS DESCRIBED IN THIS NOTICE, SHALL BE FOREVER BARRED, ESTOPPED AND ENJOINED FROM:  (A) ASSERTING THE APPLICABLE CLAIM AGAINST THE DEBTOR OR ITS ESTATE OR PROPERTY, OR (B) VOTING ON OR RECEIVING ANY DISTRIBUTION UNDER ANY PLAN OF REORGANIZATION IN THIS CHAPTER 11 CASE, EXCEPT, IN EACH CASE, TO THE EXTENT SUCH CLAIM IS IDENTIFIED IN THE SCHEDULES AS AN UNDISPUTED, NONCONTINGENT AND LIQUIDATED CLAIM HELD BY SUCH ENTITY.

## 7.    THE DEBTOR'S SCHEDULES AND ACCESS THERETO

You may be listed as the holder of a claim against the Debtor in the Debtor's Schedules. To determine if and how you are listed on the Schedules, please refer to the descriptions set forth on the enclosed proof of claim form(s) regarding the nature, amount and status of your claim(s). If you received payments postpetition from the Debtor (as authorized by the Court) on account of your claim, the information on the enclosed proof of claim form will reflect the net remaining amount of your claims.

5

A13

If you rely on the Debtor's Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules. However, you may rely on the enclosed form, which lists your claim as scheduled and specifies whether the claim is disputed, contingent or unliquidated. If you agree with the nature, amount and status of your claim as listed in the Debtor's Schedules, and if your claim is not described in the Schedules as "disputed," "contingent" or "unliquidated," you need not file a proof of claim. Otherwise, or if you decide to file a proof of claim, you must do so before the applicable Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Debtor's Schedules, the Bar Date Order and other information and documents regarding the Debtor's chapter 11 case are available for a fee from the Court's website at https://ecf.nysb.uscourts.gov. A login and password to the Court's Public Access to Court Electronic Records ("PACER") system are required to access this information and can be obtained through the PACER Service Center at www.pacer.gov.

Copies of the Schedules, the Bar Date Order and other information and documents regarding this chapter 11 case may be examined between the hours of 9:00 a.m. and 4:30 p.m., Monday through Friday at the Office of the Clerk of the Bankruptcy Court, One Bowling Green, Room 534, New York, NY 10004-1408; and are also available free of charge from the website of the Debtor's claims and noticing agent at https://restructuring.ra.kroll.com/svbfg/Home-DocketInfo, or by written request to the Debtor's claims and noticing agent at the address listed above in Section 3 of this Notice or by calling Kroll at (833) 570-5297 (Toll Free) or (646) 440-4782 (International).

**A HOLDER OF A POSSIBLE CLAIM AGAINST THE DEBTOR SHOULD CONSULT AN ATTORNEY REGARDING ANY MATTERS NOT ADDRESSED BY THIS NOTICE, SUCH AS WHETHER THE HOLDER SHOULD FILE A PROOF OF CLAIM.**

**THIS NOTICE DOES NOT RELATE TO ANY PROCESS REGARDING POSSIBLE CLAIMS AGAINST THE FORMER SILICON VALLEY BANK OR ANY OF ITS SUBSIDIARIES. DEPOSITORS AND OTHER CREDITORS OF THE FORMER SILICON VALLEY BANK DO NOT HAVE CLAIMS AGAINST SVB FINANCIAL GROUP AS A RESULT OF SUCH DEPOSITS OR OTHER CLAIMS AND ARE NOT REQUIRED TO FILE A PROOF OF CLAIM IN THIS CHAPTER 11 CASE. SUCH PERSONS OR ENTITIES SHOULD CONTACT THE FEDERAL DEPOSIT INSURANCE CORPORATION FOR INFORMATION REGARDING THE RECEIVERSHIP OF SILICON VALLEY BANK.**

**BY ORDER OF THE COURT**

A14

Case: 24-2882, 10/30/2024, DktEntry: 1.1, Page 52 of 236

Dated: June __, 2023
New York, New York

SULLIVAN & CROMWELL LLP
James L. Bromley
Andrew G. Dietderich
Christian P. Jensen
125 Broad Street
New York, New York  10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588
Email:        bromleyj@sullcrom.com
              dietdericha@sullcrom.com
              jensenc@sullcrom.com

*Counsel to the Debtor*

A15

# **EXHIBIT 2**

## **Proof of Claim Form**

**United States Bankruptcy Court, Southern District of New York**

**Fill in this information to identify the case (Select only one Debtor per claim form):**

**Debtor:** SVB Financial Group

**Case Number:** 23-10367

## Modified Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☐ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| Name | Name |
| Number    Street | Number    Street |
| City          State          ZIP Code | City          State          ZIP Code |
| Contact phone | Contact phone |
| Contact email | Contact email |

**4. Does this claim amend one already filed?**

☐ No
☐ Yes.   Claim number on court claims registry (if known)_____    Filed on _____ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☐ No
☐ Yes. Who made the earlier filing?

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

❑ No

❑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____

**7. How much is the claim?**    $_____. **Does this amount include interest or other charges?**

❑ No

❑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

❑ No

❑ Yes. The claim is secured by a lien on property.

**Nature of property:**

❑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

❑ Motor vehicle

❑ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____

**Amount of the claim that is secured:**    $_____

**Amount of the claim that is unsecured:**    $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed) _____%

❑ Fixed

❑ Variable

**10. Is this claim based on a lease?**

❑ No

❑ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

**11. Is this claim subject to a right of setoff?**

❑ No

❑ Yes. Identify the property: _____

**Proof of Claim**

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

❑ No

❑ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ❑ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ❑ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ❑ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ❑ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ❑ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ❑ Other. Specify subsection of 11 U.S.C. § 507(a)(    ) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

❑ No

❑ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.**    $_____

---

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

❑ I am the creditor.

❑ I am the creditor's attorney or authorized agent.

❑ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

❑ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  _____
                  MM / DD  / YYYY

_____
Signature

**Name of the person who is completing and signing this claim:**

Name        _____
            First name          Middle name          Last name

Title       _____

Company     _____
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     _____
            Number       Street

            _____
            City                         State       ZIP Code

Contact phone  _____    Email  _____

A19

# Instructions for Proof of Claim

United States Bankruptcy Court                                                      12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date the case was filed.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A** *Proof of Claim* **form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://restructuring.ra.kroll.com/SVBFG.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. § 503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

If by first class mail:
SVB Financial Group Claims Processing Center
c/o Kroll Restructuring Administration LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

If by overnight courier or hand delivery:
SVB Financial Group Claims Processing Center
c/o Kroll Restructuring Administration LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also file your claim electronically at**
https://restructuring.ra.kroll.com/SVBFG/EPOC-Index

---

### Do not file these instructions with your form

A21

## EXHIBIT 3

## Form of Publication Notice

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— x
                                                :
In re                                           :        Chapter 11
                                                :
                                                :        Case No. 23-10367 (MG)
SVB FINANCIAL GROUP,[1]                          :
                                                :
            Debtor.                             :
                                                :
———————————————————— x

<u>**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM**</u>

**GENERAL BAR DATE IS AUGUST 11, 2023 AT 4:00 P.M. EASTERN TIME**

PLEASE TAKE NOTICE OF THE FOLLOWING:

On [June] __, 2023, the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") entered an order [D.I. ___ ] (the "<u>Bar Date Order</u>") in the chapter 11 case of SVB Financial Group, as debtor and debtor-in-possession (the "<u>Debtor</u>"), establishing **August 11, 2023 at 4:00 p.m., Eastern Time** (the "<u>General Bar Date</u>") as the general deadline for the filing of proofs of claim, and establishing certain other deadlines for filing proofs of claim, in the chapter 11 case of the Debtor. Among other exceptions described below, the General Bar Date does not apply to claims of any governmental unit.

**1.      WHO MUST FILE A PROOF OF CLAIM**

You MUST file a proof of claim to vote on a chapter 11 plan or to share in distributions from the Debtor's bankruptcy estate if you have a claim that arose prior to **March 17, 2023** (the "<u>Petition Date</u>"), and it is not one of the types of claim described in Section 4 below. Claims based on acts or omissions of the Debtor that occurred before the Petition Date must be filed on or prior to the General Bar Date (or, if applicable, one of the other deadlines described below), even if such claims are not now fixed, liquidated or certain or did not mature or become fixed, liquidated or certain before the Petition Date.

The Bar Date Order establishes the following bar dates for filing proofs of claim in this chapter 11 case (collectively, the "<u>Bar Dates</u>"):

a.  **General Bar Date**.  Except as otherwise described in this Notice, all persons and entities that hold a claim against the Debtor that arose prior to the Petition Date shall file a proof of claim as described in this Notice by **August 11, 2023 at 4:00 p.m., Eastern Time**.  For the avoidance of doubt, the General Bar Date applies to all 503(b)(9) Claims.

———————————————
[1]        The last four digits of SVB Financial Group's tax identification number are 2278.

b. **Amended Schedule Bar Date**.  If the Debtor amends or supplements its schedules of assets and liabilities and statements of financial affairs filed in this chapter 11 case (the "Schedules"), any claimant affected by such amendment or supplement must file a proof of claim or make any amendments to a previously filed proof of claim on or before the date that is **the later of (i) the General Bar Date and (ii) 4:00 p.m., Eastern Time, on the date that is 30 days after the date that notice of the applicable amendment or supplement to the Schedules is served on the claimant** (the "Amended Schedule Bar Date").

c. **Governmental Bar Date**.  All governmental units (as defined in section 101(27) of the Bankruptcy Code (as defined below)) holding claims against the Debtor that arose or are deemed to have arisen prior to the Petition Date must file proofs of claim by **September 14, 2023 at 4:00 p.m., Eastern Time** (the "Governmental Bar Date").

d. **Rejection Bar Date**.  Any person or entity that holds a claim that arises from the rejection of an executory contract or unexpired lease must file a proof of claim based on such rejection on or before the later of (i) the General Bar Date and (ii) the date that is 30 days after the effective date of rejection for such executory contract or unexpired lease (the "Rejection Bar Date").  For the avoidance of doubt, any counterparty to a rejected executory contract or unexpired lease that seeks to assert a claim against the Debtor may include any prepetition arrearages or charges with respect to such rejected executory contract or lease in its proof of claim filed no later than the Rejection Bar Date.

## 2.    WHAT TO FILE

Claims should be filed on the proof of claim form provided by the Debtor or one that conforms substantially to Official Bankruptcy Form No. 410.  Proof of claim forms may be obtained free of charge at https://restructuring.ra.kroll.com/svbfg/EPOC-Index or http://www.uscourts.gov/forms/bankruptcy-forms.

All proof of claim forms **must be signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.  Each proof of claim form must be written in English and be denominated in United States currency.  You should attach to your completed proof of claim form any documents on which the claim is based (or, if such documents are voluminous, attach a summary) or an explanation as to why the documents are not available.

In addition to the requirements set forth in the immediately preceding paragraph, any proof of claim asserting a 503(b)(9) Claim must also:  (i) include the value of the goods delivered to and received by the Debtor in the 20 days prior to the Petition Date; (ii) attach any documentation identifying the particular invoices for which the 503(b)(9) Claim is being asserted; and (iii) set forth whether any portion of the 503(b)(9) Claim was satisfied by payments made by the Debtor pursuant to any order of the Court authorizing the Debtor to pay prepetition claims.

Your proof of claim form must not contain complete social security numbers or taxpayer identification numbers (only the last four digits), a complete birth date (only the year), the name

A24

of a minor (only the minor's initials) or a financial account number (only the last four digits of such financial account).

**3.      WHEN AND WHERE TO FILE**

All proofs of claim must be filed by first-class mail, hand delivery or overnight courier, so as to be actually received at one of the following addresses **on or before the applicable Bar Date**:

**IF DELIVERED BY FIRST CLASS MAIL:**

>   SVB Financial Group Claims Processing Center
>   c/o Kroll Restructuring Administration LLC
>   Grand Central Station, PO Box 4850
>   New York, NY 10163-4850

**IF DELIVERED BY HAND OR OVERNIGHT DELIVERY:**

>   SVB Financial Group Claims Processing Center
>   c/o Kroll Restructuring Administration LLC
>   850 Third Avenue, Suite 412
>   Brooklyn, NY 11232

**IF ELECTRONICALLY:**

>   The website established by Kroll Restructuring Administration LLC ("Kroll"), using the interface available on such website located at https://restructuring.ra.kroll.com/svbfg/EPOC-Index (the "Electronic Filing System").

Proofs of claim will be deemed filed only when **received** at the address listed above or filed electronically on or before the applicable Bar Date.  Proofs of claim may NOT be delivered by facsimile, telecopy or electronic mail transmission.

**4.      WHO NEED NOT FILE A PROOF OF CLAIM**

The Bar Date Order further provides that certain entities, whose claims otherwise would be subject to the Bar Dates, need not file proofs of claim.  To review a copy of the Bar Date Order, please visit https://restructuring.ra.kroll.com/svbfg/Home-DocketInfo.

**5.      EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you have a claim arising out of the rejection of an executory contract or unexpired lease, you must file a proof of claim based on such rejection on or before the later of (i) the General Bar Date and (ii) the date that is 30 days after the effective date of rejection for such executory contract or unexpired lease.  For the avoidance of doubt, any counterparty to a rejected executory contract or unexpired lease that seeks to assert a claim against the Debtor may include any prepetition arrearages or charges with respect to such rejected executory contract or lease in its proof of claim filed no later than the Rejection Bar Date.

A25

6.      **CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

ANY HOLDER OF A CLAIM THAT IS REQUIRED TO FILE A PROOF OF CLAIM, AND THAT FAILS TO TIMELY FILE A PROOF OF CLAIM IN THE APPROPRIATE FORM BY THE APPLICABLE BAR DATE AS DESCRIBED IN THIS NOTICE, SHALL BE FOREVER BARRED, ESTOPPED AND ENJOINED FROM:  (A) ASSERTING THE APPLICABLE CLAIM AGAINST THE DEBTOR OR ITS ESTATE OR PROPERTY, OR (B) VOTING ON OR RECEIVING ANY DISTRIBUTION UNDER ANY PLAN OF REORGANIZATION IN THIS CHAPTER 11 CASE, EXCEPT, IN EACH CASE, TO THE EXTENT SUCH CLAIM IS IDENTIFIED IN THE SCHEDULES AS AN UNDISPUTED, NONCONTINGENT AND LIQUIDATED CLAIM HELD BY SUCH ENTITY.

7.      **THE DEBTOR'S SCHEDULES AND ADDITIONAL INFORMATION**

You may be listed as the holder of a claim against the Debtor in the Debtor's Schedules. Copies of the Debtor's Schedules, the Bar Date Order and other information and documents regarding the Debtor's chapter 11 case are available for a fee from the Court's website at https://ecf.nysb.uscourts.gov, and are available free of charge at https://restructuring.ra.kroll.com/svbfg/Home-DocketInfo, or by written request to the Debtor's claims and noticing agent at the address listed above in Section 3 of this Notice.

If you rely on the Debtor's Schedules, it is your responsibility to determine that any claim is accurately listed in the Schedules.

**A HOLDER OF A POSSIBLE CLAIM AGAINST THE DEBTOR SHOULD CONSULT AN ATTORNEY REGARDING ANY MATTERS NOT COVERED BY THIS NOTICE, SUCH AS WHETHER THE HOLDER SHOULD FILE A PROOF OF CLAIM.**

**THIS NOTICE DOES NOT RELATE TO ANY PROCESS REGARDING POSSIBLE CLAIMS AGAINST THE FORMER SILICON VALLEY BANK OR ANY OF ITS SUBSIDIARIES.  DEPOSITORS AND OTHER CREDITORS OF THE FORMER SILICON VALLEY BANK DO NOT HAVE CLAIMS AGAINST SVB FINANCIAL GROUP AS A RESULT OF SUCH DEPOSITS OR OTHER CLAIMS AND ARE NOT REQUIRED TO FILE A PROOF OF CLAIM IN THIS CHAPTER 11 CASE.  SUCH PERSONS OR ENTITIES SHOULD CONTACT THE FEDERAL DEPOSIT INSURANCE CORPORATION FOR INFORMATION REGARDING THE RECEIVERSHIP OF SILICON VALLEY BANK.**

**BY ORDER OF THE COURT**

A26

Case: 24-2882, 10/30/2024, DktEntry: 1.1, Page 64 of 236

Dated: July __, 2023
New York, New York

SULLIVAN & CROMWELL LLP
James L. Bromley
Andrew G. Dietderich
Christian P. Jensen
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000
Facsimile:      (212) 558-3588
Email:          bromleyj@sullcrom.com
                dietdericha@sullcrom.com
                jensenc@sullcrom.com

*Counsel to the Debtor*

A27

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
────────────────────────────────x
In re                            :
                                 :    Chapter 11
                                 :
SVB FINANCIAL GROUP, et al.,¹    :    Case No. 23-10367 (MG)
                                 :
                    Debtor.      :    Joint Pretrial Order
                                 :
────────────────────────────────x
```

The parties having conferred among themselves and with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order herein.

## I.    NATURE OF THE CASE

<u>Debtor</u>:  SVB Financial Group (the "Debtor") seeks an Order overruling the FDIC-Rs' Objection to Plan Confirmation.  FDIC-Rs' Objection is foreclosed by the Bar Date Order entered by the Court on June 29, 2023, which "forever bar[s], estop[s], and enjoin[s]" FDIC-Rs from asserting any prepetition claims against the Debtor following the September 14, 2023 Bar Date.  It is also foreclosed by their failure to seek any relief from the automatic stay to preserve and assert what they refer to as a defensive right of setoff.  Moreover, the FDIC-Rs lack standing to bring the now-moot Objection.  FDIC-Rs are thus estopped by their own conduct and litigation strategy from asserting this Objection.  Finally, even if the Objection were not barred and even if the FDIC-Rs did not lack standing, their Objection fails on its merits because the Plan does not purport to release or prejudice any third-party claims properly owned by the FDIC-Rs.

<u>FDIC-Rs</u>:  The Federal Deposit Insurance Corporation, in its capacity as Receiver for Silicon Valley Bank ("FDIC-R1") and Silicon Valley Bridge Bank, N.A. ("FDIC-R2" and together with FDIC-R1, the "FDIC-Rs") seek an order denying confirmation of the Debtor's chapter 11 plan (as filed and as may be modified or amended, the "Plan") because the Debtor cannot satisfy its burden of proof under 11 U.S.C. § 1129(a)(1)-(3).  Briefly, the FDIC-Rs seek such relief for the following reasons:

a.  The proposed Plan improperly seeks to extinguish FDIC-R1's defensive setoff rights.

b.  The Plan improperly seeks to release claims against non-debtor third parties that are owned by the FDIC-Rs, as successor in interest to Silicon Valley Bank ("SVB") and Silicon Valley Bridge Bank, N.A. ("Bridge Bank") under 12 U.S.C. § 1821(d)(2)(A)(i).

---

¹    The last four digits of SVB Financial Group's tax identification number are 2278.

<span style="color:red">A28</span>

    c.   The Plan improperly seeks to release, and enjoin the assertion of, FDIC-R1's *ownership interest* in property, including without limitation, tax refunds.

    d.   The Plan assumes that this Court *has*—and may retain—jurisdiction over the Debtor's claims filed against the FDIC-Rs (which are Retained Causes of Action) in violation of 12 U.S.C. § 1821(d)(6)(A).

    e.   The Plan purports to affect FDIC-R1's (and SVB's former officers' and directors') claims against insurers or rights under D&O Insurance Policies or bonds.

    f.   The Plan authorizes the Debtor (or its successors) to resolve any ambiguity in the effectuating provisions of the Plan.

    g.   The Plan improperly waives the 14-day stay under Bankruptcy Rule 3020(e).

## II.   BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY JUDGE MAY ENTER FINAL ORDERS OR JUDGMENT

Debtor:  The Court has jurisdiction to decide whether to confirm the Plan, and the FDIC-Rs concede this jurisdiction is "core" jurisdiction.  28 U.S.C. § 157(b)(1) grants the Court authority to "hear and determine all cases under title 11 and all core proceedings arising under title 11," and explicitly enumerates "matters concerning the . . . determination of claims against the estate" as an example of a "core" proceeding.  Because setoff is a "claim against the bankruptcy estate," such claims are within the core jurisdiction of the Bankruptcy Court.  To maintain such a right of setoff, FDIC-R1 was required, among other things, to seek relief from the automatic stay and file a claim prior to the bar date.  FIRREA does not preempt the Court's authority because the Debtor is not, and never was, a depository institution, and the District Court's withdrawal of the reference with respect to the Debtor's efforts to recover its former deposit monies held at SVB did not deprive the Court of jurisdiction to adjudicate core bankruptcy matters. The Debtor consents to the Court's entry of final orders and/or judgment in this matter.

FDIC-Rs:  The Court has jurisdiction to decide whether to confirm the Plan, and such jurisdiction is "core" jurisdiction; *however,* the Bankruptcy Court lacks subject matter jurisdiction over the Debtor's claims against the FDIC-Rs (the "Claims") and any affirmative defenses thereto, including without limitation, FDIC-R1's defensive setoff rights.  The Northern District of California has exclusive subject matter jurisdiction of such Claims and defensive setoff rights under 12 U.S.C. § 1821(d)(6)(A).  This Court also lacks subject matter jurisdiction to enter an order affecting those Claims and defensive setoff rights under section 1821(j) of title 12.  The District Court for the Southern District of New York withdrew the reference of the Debtor's claims against FDIC-Rs (including challenges to defensive setoff rights).  The FDIC-Rs do not consent to this Court's entry of any orders affecting the Claims and FDIC-Rs' defensive setoff rights.

A29

## III.    STIPULATED FACTS

1.    On February 24, 2023, SVBFG publicly disclosed in a Form 10-K the dividends that FDIC-R1 now identifies in its FDIC-R1 Disclosure Statement Response (as defined below) as giving rise to an alleged defensive right of setoff.

2.    On the morning of March 10, 2023, the California Department of Financial Protection and Innovation closed SVB and appointed FDIC-R1 as receiver for SVB.

3.    As of the opening of business on March 13, 2023, following the Treasury Secretary's declaration of a systemic risk exception on March 12, 2023, the Debtor had deposit accounts at Bridge Bank with a combined balance of approximately $2.1 billion.  Between March 13-16, 2023, the Debtor withdrew funds from those accounts.  On or about March 15, 2023, FDIC-R1 purported to recall the account liability from Bridge Bank to prevent the Debtor from withdrawing funds from its deposit accounts and sought Bridge Bank's reversal of the wire withdrawals that the Debtor had previously initiated from that account.  The Debtor disputes that the FDIC-R1 had the legal right to recall the account liability and that FDIC-R1s actions were limited solely to recalling the account liability.   At that time, FDIC-R1 (a) had not asserted any claims for which it now seeks defensive setoff, (b) had not identified to the Debtor a factual basis for any claims for which it now seeks defensive setoff and (c) did not notify the Debtor of any factual basis for any claims on which it now alleges a right of defensive setoff.

4.    On March 16, 2023, pursuant to the FDIC-R1's request, the unredacted minutes of SVBFG and SVB board and committee meetings, without board packets (identified on Attachment A), were uploaded to the FDIC-R1's Sharepoint site in accordance with the email exchange reflected on Attachment B.

5.    On Friday, March 17, 2023 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (this "Court").

6.    On March 20, 2023, FDIC-R1 filed an *Objection to Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing, But Not Directing, the Debtor to (A) Continue to Use its Cash Management System, Including Existing Bank Accounts, (B) Pay or Honor Certain Prepetition Obligations Related Thereto and (C) Maintain Existing Business Forms, (II) Authorizing Investment Activities and (III) Temporarily Waiving the Requirements of Section 345(b) and (IV) Granting Related Relief.*

7.    At a hearing in this proceeding on April 26, 2023, FDIC-R1 stated: "[T]here are obviously potential rights of setoff that the receivership has against its parent for various claims. We are in the process of formalizing those, and we'll be in a position, hopefully, to respond more specifically to Mr. Bromley and to counsel for the committee, who we had an initial conversation with about two weeks ago, as well, on a similar topic . . . We understand Mr. Bromley's request in terms of providing him information. We are in the process of gathering that to provide it to Mr. Bromley, and hopefully in addition to providing him the basic information about the account, we can also provide Mr. Bromley some better information about what claims that the receiver has against the holding company and how those claims, and the claims that the debtor may have against the receivership, should be otherwise adjudicated, either, as Your Honor noted, in this forum or some other forum, in the appropriate forum, if there can't be some resolution in a short-term process. So I wanted to simply highlight that for Your Honor." (Ex. JX 1.)

A31

8.      On May 3, 2023, FDIC-R1 filed its *Statement of The Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank, Pursuant to the Court's Direction at the April 26, 2023 Hearing* (the "Statement Regarding Setoff Rights," Ex. DXI) [Bankr. Dkt. No. 145].

9.      On May 8, 2023, FDIC-R1 filed a motion in this proceeding seeking an order from this Court establishing an escrow account to hold tax refunds until the Debtor and FDIC-R1 could agree on the appropriate allocation of the tax refunds based on ownership under a tax allocation agreement between SVB and the Debtor.

10.     On June 28, 2023, FDIC-R1 sent a letter notifying former officers and directors of SVB of claims "in an amount of at least $1.8 billion" based on their alleged breaches of fiduciary duty that allegedly damaged SVB and caused losses to the deposit insurance fund.  The FDIC-R1 letter identifies the subject matter with respect to alleged breaches of fiduciary duty and mismanagement concerning SVB's held-to-maturity and available-for-sale securities portfolios for which FDIC-R1 asserts it has rights of defensive setoff.

11.     On June 29, 2023, the Court entered the Order Establishing Deadlines for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof [Bankr. Dkt. No. 373].

12.     On July 9, 2023, the Debtor filed a complaint (the "Adversary Complaint") in this Court, thereby commencing Adv. No. 23-01137 (MG) (the "Adversary Proceeding"), styled *SVB Financial Group v. Federal Deposit Insurance Corporation, in its corporate capacity* ("FDIC-C"), *and Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A.*

13.     On July 10, 2023, the Debtor filed proofs of claim against each of FDIC-Rs.  (Exs. DXC, DXD.)

A32

14.     On August 11, 2023, FDIC-R1 filed the *Motion of the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank, for an Order Dismissing All Counts Against Such Receiver Under Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure* [Adv. 23-01137 Dkt. No. 27] in the Adversary Proceeding.  That motion is fully briefed and *sub judice* before District Judge Cronan.

15.     On September 6, 2023, FDIC-R1 filed the *Reply of [FDIC-R1] in Support of its Motion to Dismiss All Counts Against Such Receiver Under Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure* [Adv. 23-01137 Dkt. No. 70] (the "Reply Memo," Ex. DXK).

16.     FDIC-R1 was aware of the September 14, 2023 deadline for governmental units to file claims ("Bar Date").

17.     Prior to the Bar Date, FDIC-R1 was aware of the subject matter for which it claims defensive setoff rights, and prior to the Bar Date, FDIC-R1 could have filed a proof of claim that asserted claims based on the subject matter of those rights.  FDIC-R1 states, however, that the claims were and remain under investigation.

18.     Prior to the Bar Date, FDIC-R1 made the determination not to file a claim in this proceeding based on the subject matter for which it claims to have defensive rights of setoff.

19.     By an Opinion and Order dated December 13, 2023 (the "Opinion and Order," Ex. DXB), the United States District Court for the Southern District of New York withdrew the reference of the Adversary Complaint, which is now pending in the District Court as Civil Action No. 23-7218 (JPC) (the "S.D.N.Y. Action") [S.D.N.Y. Action; Dkt. No. 34].

20.     On December 18, 2023, FDIC-R1's motion to dismiss and related briefings in the Adversary Proceeding were re-refiled in the S.D.N.Y. Action. [S.D.N.Y. Action; Dkt. No. 35].

A33

The matter is stayed pending further developments in litigation in the Northern District of California, including Case No. 5:24-cv-01321-BLF.

21.    On January 5, 2024, FDIC-R1 sent the Debtor a Notice of Disallowance of Claim regarding the Debtor's deposit claim.  The Notice of Disallowance of Claim stated only that the deposit claim was "not proven to the satisfaction of the receiver due to the receiver's defenses," but does not specifically identify those defenses, including any alleged right of setoff. (Ex. PX 10.)

22.    On January 5, 2024, FDIC-R2 sent the Debtor a Notice of Disallowance of Claim regarding the Debtor's deposit claim, stating that it was not a liability of Bridge Bank. All other claims were "denied as speculative, unsupportable, or otherwise not proven to the satisfaction of the receiver." (Ex. PX 11.)

23.    On January 26, 2024, the Debtor filed the Debtor's Plan of Reorganization under Chapter 11 of the Bankruptcy Code.

24.    On February 7, 2024, the Debtor filed its Disclosure Statement for Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code.

25.    On March 5, 2024, the Debtor filed a Complaint against FDIC-Rs in the United States District Court for the Northern District of California (the "N.D. Cal. Complaint," Ex. DXE), thereby commencing Case No. 5:24-cv-01321, styled *SVB Financial Group v. Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A.* (the "N.D. Cal. Action").

26.    On May 2, 2024, the FDIC-R1 filed its *Statement of the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank Regarding its Defensive Setoff Rights Against SVB Financial Group* (the "Setoff Statement") in the N.D. Cal. Action [N.D. Cal. Dkt. No. 29] (Ex. DXU).

A34

27.     On May 2, 2024, FDIC-R1 filed its *Notice of Filing of Statement of the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank Regarding its Defensive Setoff Rights Against SVB Financial Group* [Bankr. Dkt. No. 1081] (the "Notice of Filing") (Ex. DXM), which described the matters for which FDIC-R alleges defensive setoff rights and the alleged magnitude thereof.  On May 3, 2024, the United States District Court for the Northern District of California, issued an *Order Striking Statement Regarding FDIC-R1's Defensive Setoff Rights* [N.D. Cal. Dkt. No. 30] (Ex. DXT), which was attached to the FDIC-R1's May 2, 2024 Notice of Filing.

28.     On May 3, 2024, the Debtor filed its First Amended Plan of Reorganization and Revised Disclosure Statement.

29.     On May 9, 2024, FDIC-R1 filed a document in this proceeding at Docket No. 1111 (Ex. DXN) entitled *Response of the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank to Debtor's Disclosure Statement for Debtor's First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Cod*e ("FDIC-R1 Disclosure Statement Response").

30.     The FDIC-R1 Disclosure Statement Response identifies the matters for which FDIC-R1 asserts it has rights of defensive setoff against the Debtor and the magnitude of such setoffs.

31.     FDIC-R1 has not asserted any claims for any of the matters identified in the FDIC-R1 Disclosure Statement Response in this or any other proceeding as of July 2, 2024.

32.     On May 10, 2024, FDIC-R1 and FDIC-R2 filed the *FDIC-R1 and FDIC-R2's Notice of Motion and Motion to Dismiss* [N.D. Cal. Dkt. No. 33] in the United States District Court

A35

for the Northern District of California, in Case No. 5:24-cv-01321-BLF.  That motion to dismiss is not yet fully briefed and remains pending before the District Court.

33.     FDIC-Rs have not yet filed answers in the Adversary Proceeding pending before Judge Cronan or in the Civil Action pending in the Northern District of California.

34.     On May 30, 2024, the Debtor filed a Revised Plan of Reorganization under Chapter 11 of the Bankruptcy Code (as may be further amended or revised, the "Plan").

35.     On June 6, 2024, FDIC-Rs and the Debtor filed the *Joint Case Management Statement and Rule 26(f) Report* [N.D. Cal. Dkt. No. 39] (the "Joint Case Management Statement") (Ex. DXP) in which FDIC-R1 described the subject matter of FDIC-R1's alleged defensive setoff rights.

36.     Except to the extent (if any) provided in the FDIC-R1 Disclosure Statement Response (and the Joint Case Management Statement), FDIC-R1 has not provided the Debtor with the factual basis for any setoff rights for the subject matter set forth in the FDIC-R1 Disclosure Statement Response.

IV.    **PARTIES' CONTENTIONS**

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:

A.    Debtor's Contentions

1.    The Plan complies with the applicable provisions of Title 11, as required by 11 U.S.C. § 1129.

2.    The Debtor has satisfied its burden of providing that the plan is confirmable under 11 U.S.C. § 1129.

3.    The FDIC-Rs' lack standing to object to the Plan.

4.    The FDIC-Rs' objection to the Plan is moot.

5.    The Bar Date Order estops and enjoins FDIC-R1's purported setoff claims.

6.    FDIC-R1 has waived its right to assert purported setoff claims.

9

7.      The Court has jurisdiction to adjudicate the FDIC-R1's purported setoff claims against the Debtor under 28 U.S.C. § 157(b).

8.      The decision whether to allow FDIC-R1 to retain any purported rights of setoff is within the discretion of the Bankruptcy Court.

9.      Principles of justice and equity dictate that FDIC-R1 not be permitted to retain any right of setoff.

10.     The FDIC-R1's objection to the Plan is invalid because the FDIC-R1 intentionally did not file a proof of claim in order to avoid this Court's jurisdiction.

11.     Proceedings under 12 U.S.C. § 1821(d)(5)(A)(i) are limited to claims against a depository institution.

12.     12 U.S.C. § 1821(d)(6)(A) does not give the Northern District of California or the District of Columbia exclusive jurisdiction to adjudicate the FDIC-R1's purported unliquidated setoff claims against the Debtor.

13.     Section 1821(d)(6)(A) of Title 12 is a jurisdictional provision.

14.     The Northern District of California's jurisdiction over the Debtor's claim for review of its protective deposit claim made in the FDIC-R1's administrative proceeding does not give the Northern District of California exclusive jurisdiction to adjudicate the FDIC-R1's purported unliquidated setoff claims or defenses.

15.     The FDIC-R1 does not have or has waived any setoff rights because the FDIC-R1 failed to seek or obtain relief from the automatic stay in the sixteen months this case has been pending.

16.     The extinguishment of FDIC-R1's purported setoff rights would not restrain or affect FDIC-R1's powers under 12 U.S.C. § 1821(d)(2)(A) or § 1821(j) because FDIC-R1 was able to assert its setoff rights in this proceeding but elected not to.

17.     The Southern District of New York withdrew the reference to the Court of jurisdiction over the Debtor's claims asserted in the Adversary Proceeding. Yet this withdrawal did not, either by its terms or operation, deprive the Court of matters within its core jurisdiction which includes the power to set bar dates for claims against the Debtor's estate. By refusing to act to protect its rights, the FDIC-R1 is estopped by its own litigation conduct from asserting "defensive setoff" against the Debtor.

18.     FDIC-R1 cannot exercise any setoff rights because it has failed to provide adequate notice of its purported setoff rights.

A37

B.  <u>FDIC-Rs' Contentions</u>

1.      The Plan is not confirmable because the Plan does not comply with the applicable provisions of" Title 11, as required by 11 U.S.C. § 1129(a)(1).

2.      The Plan is not confirmable because the Debtor does not comply with the applicable provisions of Title 11, as required by 11 U.S.C. § 1129(a)(2).

3.      The Plan is not confirmable because the Plan has not been proposed in good faith or is forbidden by law under 11 U.S.C. § 1129(a)(3).

4.      The Debtor cannot satisfy its burden of proving that the plan is confirmable under 11 U.S.C. §§ 1129(a)(1)-(3).

5.      Section 1821(d)(2)(A)(i) of Title 12 provided FDIC-R1 with "all rights, titles, powers and privileges of [SVB], and of any stockholder, member, accountholder, depositor, officer or director of [SVB] with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i).

6.      As a matter of law, FDIC-R1 succeeded to SVB's claims, causes of action, and rights against the Debtor, including common law and contractual rights of setoff.

7.      The Debtor cannot extinguish FDIC-R1's defensive setoff rights because FDIC-R1's defensive setoff rights are currently pending before two District Courts (in litigation commenced by the Debtor), one of which (the Northern District of California) has exclusive jurisdiction of the Claims and FDIC-Rs' defensive setoff rights under 12 U.S.C. § 1821(d)(6)(A).

8.      Section 1821(d)(6)(A) of Title 12 is a jurisdictional provision.

9.      Section 1821(j) of Title 12 is a jurisdictional provision.

10.     The FDIC-Rs' decisions to disallow the Claims are non-reviewable under 12 U.S.C. § 1821(d)(5)(E).

11.     The Northern District of California (in the N.D. Cal. Action) is the *only* forum in which FDIC-R1's defensive setoff rights can be adjudicated under section 1821(d)(6)(A).

12.     The Northern District of California's jurisdiction of the Claims necessarily includes jurisdiction over FDIC-R1's setoff defenses.

13.     The Bar Date Order does not (and could not) impair FDIC-R1's setoff rights.

14.     The Bankruptcy Court lacked the subject matter jurisdiction to impair FDIC-R1's defensive setoff rights by the Bar Date Order.

15.    The Debtor cannot extinguish FDIC-R1's defensive setoff rights because, even if the setoff rights were not before the Northern District of California (and the SDNY), section 553 of the Bankruptcy Code preserves FDIC-R1's setoff rights notwithstanding any other provision of Title 11.

16.    Section 1821(j) of Title 12 broadly and unequivocally prohibits any court from restraining or affecting FDIC-R1's exercise of its powers or functions.

17.    The Court cannot release or extinguish FDIC-R1's defensive setoff rights because to do so would unequivocally restrain or affect the FDIC-R1's powers under 12 U.S.C. § 1821(d)(2)(A).

18.    A bankruptcy plan cannot extinguish a right of setoff where the bankruptcy court has no jurisdiction over the Debtor's claim that is subject to the right of defensive setoff.

19.    The Southern District of New York has withdrawn the reference to this Court of jurisdiction over the Debtor's claims asserted in the Adversary Proceeding, thereby withdrawing this Court's jurisdiction over FDIC-R1's defensive setoff rights.

20.    To the extent that "bankruptcy" jurisdiction is relevant, the Debtor also asserted that the Northern District of California has such jurisdiction under 28 U.S.C. § 1334. *See* N.D. Cal. Compl. ¶ 34 (Ex. DXE).

21.    A debtor's discharge in bankruptcy does not bar a creditor from asserting its right to defensive setoff.

22.    Notwithstanding any discharge of the Debtor or its debts, FDIC-R1 is entitled to assert its defensive setoff rights.

23.    To the extent any pre-confirmation notice of FDIC-R1's defensive setoff rights is required (and none is required), FDIC-R1 provided notice of its defensive setoff rights throughout the Debtor's bankruptcy case.

24.    FDIC-R1's objection to confirmation of the Plan (although not required) preserves FDIC-R1's defensive setoff rights.

25.    FDIC-R1 was not required to file a proof of claim to preserve its defensive setoff rights.

26.    The rule allowing set-off, both before and after bankruptcy, is not one that courts are free to ignore when they think application would be unjust.

27.    It would be inappropriate to litigate FDIC-R1's *defensive* setoff rights in this Court because, at all times, this Court lacked subject matter jurisdiction to determine those defensive setoff rights (which did not implicate the Bankruptcy Court's claims allowance process). *See* 12 U.S.C. §§ 1821(d)(13)(D) and 1821(d)(6)(A).

A39

28. When the Adversary Proceeding was filed (and when it was transferred to the Southern District of New York), "no court" had jurisdiction to determine FDIC-R1's defensive setoff rights outside of the FDIC-R1's mandatory claims process because FDIC-R1 had not yet issued a determination on the Debtor's administrative claim. *See* 12 U.S.C. § 1821(d)(13)(D).

29. No party's consent can create subject matter jurisdiction that is lacking under section 1821(d)(13)(D).

30. This Court was, and is, an unavailable forum due to its lack of subject matter jurisdiction over FDIC-R1's *defensive* setoff rights.

31. The Plan cannot release claims against the non-debtor third parties that belong to SVB'S receivership estate (*i.e.,* FDIC-R1) without the consent of FDIC-R1.

32. The Plan cannot release claims against the non-debtor third parties that belong to Bridge Bank's receivership estate (*i.e.,* FDIC-R2) without the consent of FDIC-R2.

33. The FDIC-R1, not the Debtor, owns the claims of SVB in its receivership and the Debtor's claims with respect to SVB and its assets.

34. Section 1821(d)(2)(A)(i) of Title 12 provides that, as a matter of law, FDIC-R1 succeeds to all rights, titles, powers, and privileges of SVB and of any stockholder, member, accountholder, depositor, officer, or director of SVB with respect to SVB and its assets.

35. FDIC-R1 now has sole title and right to SVB's causes of action (including, without limitation, claims against SVB's directors and officers) and claims of the Debtor (as shareholder of SVB) with respect to SVB and its assets (including certain claims against the Debtor's own directors and officers).

36. Similarly, FDIC-R2, not the Debtor, owns the claims of Bridge Bank in its receivership and the Debtor's claims (if any) with respect to Bridge Bank and its assets.

37. The nonconsensual release under the Plan of FDIC-Rs' claims against non-debtor third parties violates Titles 12 and 11 of the U.S. Code.

38. Releasing and enjoining FDIC-Rs' claims against non-debtor third parties violates the broad and unequivocal prohibition in section 1821(j) of Title 12 of orders restraining or affecting FDIC-Rs' exercise of their respective powers or functions.

39. The nonconsensual release of FDIC-Rs' claims also is not authorized under Title 11.

A40

40.    The Plan cannot release or enjoin FDIC-R1's ownership interests, whether under that certain Amended Tax Allocation Agreement, bonds, insurance policies, or otherwise.

41.    The Bankruptcy Court, not the Debtor, should interpret any ambiguity in the Plan.

42.    The Bankruptcy Court should interpret any ambiguity in the Plan according to principles of contract construction.

43.    The Plan's retention of jurisdiction provision cannot retain or create jurisdiction that does not exist, including with respect to claims filed against the FDIC-Rs.

44.    The Plan cannot strip SVB's directors or officers of benefits under the D&O Insurance Policies or affect FDIC-Rs' rights on account of insurance policies or bonds.

45.    The Court does not have the power to rewrite contracts.

46.    The bankruptcy discharge also does not impair FDIC-R1's right to recovery under any insurance policy or bond.

47.    There is no cause to waive the fourteen-day stay under Bankruptcy Rule 3020(e), which stay is designed to provide sufficient time for a party to request a stay pending appeal of an order confirming a plan under chapter 11 of the Code before the plan is implemented and an appeal may become moot.

## V.    ISSUES TO BE TRIED

Each of the issues set forth above under the "Debtor's Contentions" and "FDIC-Rs' Contentions" are to be tried.

## VI.    JOINT EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| JX 1 | April 26, 2023 Bankruptcy Hearing Transcript [Bank. Dkt. No. 215] |
| JX 2 | *Statement of the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank, Pursuant to the Court's Direction at the April 26, 2023 Hearing* [Bankr. Dkt. No. 145] |
| JX 3 | *Notice of Filing of Statement of the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank Regarding its Defensive Setoff Rights Against SVB Financial Group* [Bankr. Dkt. No. 1081] |

## VII.  DEBTOR'S EXHIBITS

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| PX 1 | March 16, 2023 Emails between R. Tetrick (FDIC) and L. Mayorga (FDIC) re: SVBFG Accounts |
| PX 2 | March 17, 2023 Emails between R. Tetrick (FDIC) and L. Mayorga (FDIC) re: SVBFG Accounts (1) |
| PX 3 | March 17, 2023 Emails between R. Tetrick (FDIC) and L. Mayorga (FDIC) re: SVBFG Accounts (2) |
| PX 4 | March 17-18, 2023 Emails between J. Thomas (FDIC) and P. Cox (SVB) re: Hold on SVBFG Accounts |
| PX 5 | March 18, 2023 Letter from J. Bromley (S&C) to K. Gwynne (Reed Smith) and S. Qusba (Simpson Thacher) re: Violations of the Automatic Stay by Bridge Bank and FDIC-R |
| PX 6 | March 19, 2023 Letter from K. Gwynne (Reed Smith) to J. Bromley (S&C) re: Violations of the Automatic Stay by Bridge Bank and FDIC-R |
| PX 7 | March 19, 2023 Letter from S. Qusba (Simpson Thacher) to J. Bromley (S&C) re: Violations of the Automatic Stay by Bridge Bank and FDIC-R |
| PX 8 | April 3, 2023 Notice to Bridge Bank Depositors of Deposit Transfer to First Citizens |
| PX 9 | June 26, 2023 Letter from R. Sacks to FDIC-C re: SVBFG's Claim for Deposits [Adversary Proceeding Dkt. 53-12] |
| PX 10 | January 5, 2024 FDIC-R1 Notice of Disallowance of Claim [NDCA Action Dkt. 1-2] |
| PX 11 | January 5, 2024 FDIC-R2 Notice of Disallowance of Claim [NDCA Action Dkt. 1-3] |
| PX 12 | June 24, 2024 Letter from K. Gwynne (Reed Smith) to S&C re: FDIC-R1 Objections to Subpoena Document Requests |
| PX 13 | *The Debtor's Consolidated Memorandum of Law in Opposition to the Motions to Dismiss of the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and as Receiver for Silicon Valley Bridge Bank, N.A.* [Adv. 23-01137 Dkt. No. 51] |

A42

## VIII.  FDIC-RS' EXHIBITS

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| DXA | *Complaint* filed by the Debtor in the case styled *SVB Financial Group v. Federal Deposit Insurance Corporation, in its corporate capacity, and Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A.*, Adv. Case No. 23-01137 (MG) [Dkt. No. 1] |
| DXB | *Opinion and Order* of District Judge Cronan dated December 13, 2023, Case No. 23-7218 (JPC) [S.D.N.Y. Dkt. No. 34] |
| DXC | Claims filed by the Debtor against FDIC-R1 in the FIRREA claims process [N.D. Cal. Dkt. No. 1-8] |
| DXD | Claims filed by the Debtor against FDIC-R2 in the FIRREA claims process [N.D. Cal. Dkt. No. 1-9] |
| DXE | *Complaint* filed by the Debtor in the case styled *SVB Financial Group v. Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A.*, Case No. 5:24-cv-01321 (BLF) [N.D. Cal. Dkt. 1] |
| DXF | *Transcript of 3/21/23* Hearing in SVBFG's Bankruptcy Case |
| DXG | *Transcript of 5/17/23 Hearing* in SVBFG's Bankruptcy Case |
| DXH | *Omitted* |
| DXI | *Omitted* |
| DXJ | *Memorandum of Law of [FDIC-R1] in Support of its Motion to Dismiss All Counts Against Such Receiver Under Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure* [Adv. 23-01137 Dkt. No. 28] |
| DXK | *Reply of [FDIC-R1] in Support of its Motion to Dismiss All Counts Against Such Receiver Under Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure* [Adv. 23-01137 Dkt. No. 70] |
| DXL | *Transcript of 10/19/23 Hearing* in S.D.N.Y. Action |
| DXM | *Omitted* |
| DXN | *Response of the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank to Debtor's Disclosure Statement for Debtor's First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Bankr. Dkt. No. 1111] |
| DXO | *Amended Tax Allocation Agreement* [Bankr. Dkt. No. 167-1] |
| DXP | *Joint Case Management Statement and Rule 26(f) Report* [N.D. Cal. Dkt. No. 39] |
| DXQ | Plaintiff SVB Financial Group's Initial Requests for Production of Documents to Defendant Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank [N.D. Cal.] |
| DXR | SVB's *Deposit Agreement and Disclosure Statement – Business Accounts* [N.D. Cal. Dkt. No. 33-3] |
| DXS | Deposit Account Agreements [N.D. Cal. Dkt. No. 33-2] |

A43

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| DXT | *Order Striking Statement Regarding FDIC-R1's Defensive Setoff Rights* [N.D. Cal. Dkt. No. 30] |
| DXU | *Statement of the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank Regarding its Defensive Setoff Rights Against SVB Financial Group* [N.D. Cal. Dkt. No. 29] |
| DXV | Docket for Case No. 5:24-cv-01321 (BLF) [N.D. Cal. Action] |
| DXW | Docket for Case No. 23-7218 (JPC) [S.D.N.Y. Action] |
| DXX | Wire Recall Cancellations [FDIC-R_SVB2004_00500-00508] |
| DXY | 3/20/23 email from KFG of Reed Smith to counsel for BNY (Cleary Gottlieb) with copies to James Bromley (S&C) and Sandy Qusba (Simpson Thacher) |
| DXZ | *Complaint* filed by Debtor in the case styled *SVB Financial Group and Silicon Valley Bank v. Federal Insurance Company and Berkley Regional Insurance Company*, Case No. 5:23-cv-00095-BO-RN [E.D.N.C. Dkt. No. 1-3] |
| DXAA | *Summary of and Schedules of Assets and Liabilities for Non-Individuals* filed on May 22, 2023 [Bankr. Dkt. No. 261] |

The parties shall have the right to use any exhibit listed on the opposing party's list as if such document were listed on both parties' exhibit lists.

No exhibit not listed by plaintiff or defendant may be used at trial except (a) for cross-examination purposes or (b) if good cause for its exclusion from the pretrial order is shown. Each side shall list all exhibits it intends to offer on its case in chief. The list shall include a description of each exhibit. All exhibits shall be pre-marked with each exhibit bearing a unique number or letter (numbers for plaintiff and letters for defendant), with the prefix PX for plaintiff's exhibits and Ex. DX for defendant's exhibits. Two copies of each exhibit shall be delivered to chambers with the proposed pretrial conference order.

## IX.    STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

Without stipulating to relevance and hearsay (or hearsay within hearsay) with respect to statements of parties other than FDIC-Rs or the Debtor, the Debtor and FDIC-Rs stipulate to the authenticity and admissibility of Exhibits JX1-JX3, PX1-PX12 and DXA-DXAA.

Any objections not set forth herein will be considered waived absent good cause shown.

[The parties shall set forth any stipulations with respect to the authenticity and admissibility of exhibits and indicate all objections to exhibits and the grounds therefor.]

A44

## X.      PLAINTIFF'S WITNESS LIST

The Debtor does not intend to call any witnesses or present any testimony at trial with respect to the FDIC-Rs' objection.


## XI.     FDIC-RS' WITNESS LIST

The FDIC-Rs do not intend to call any witnesses or present any testimony at trial in support of their objection.


Dated:  July 17, 2024                 Respectfully submitted,




                                      /s/ Robert A. Sacks
                                      **SULLIVAN & CROMWELL LLP**

                                      Counsel to the Debtor



                                      /s/ Kurt F. Gwynne
                                      **REED SMITH LLP**

                                      Counsel to the Federal Deposit Insurance Corporation, as
                                      receiver for Silicon Valley Bank and Silicon Valley Bridge
                                      Bank, N.A.



**IT IS SO ORDERED.**

Dated:  July 19, 2024
        New York, New York


                                      _____/s/ Martin Glenn_____
                                      MARTIN GLENN
                                      Chief United States Bankruptcy Judge

A45

Case: 24-2882, 10/30/2024, DktEntry: 1.1, Page 83 of 236

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
In re:                                                              **FOR PUBLICATION**

      SVB FINANCIAL GROUP,                            Chapter 11

                             Case No. 23-10367 (MG)

                     Debtor.
------------------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER SUSTAINING**
**THE OBJECTION OF THE FEDERAL DEPOSIT INSURANCE**
**CORPORATION, AS RECEIVER FOR SILICON VALLEY BANK AND**
**SILICON VALLEY BRIDGE BANK, N.A. TO THE SECOND AMENDED CHAPTER 11**
**PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

*A P P E A R A N C E S :*

SULLIVAN & CROMWELL
*Counsel to the Debtor*
125 Broad Street
New York, New York 10004
By:    James L. Bromley, Esq.
        Andrew G. Dietderich, Esq.
        Adam S. Paris, Esq.
        Christian Jensen, Esq.

1888 Century Park East
Suite 2100
Los Angeles, California 90067
By:    Diane L. McGimsey, Esq.
        Robert A. Sacks, Esq.

AKIN GUMP STRAUSS HAUER & FELD LLP
*Counsel to the Official Committee of Unsecured Creditors*
One Bryant Park
New York, New York 10036
By:    Ira S. Dizengoff, Esq.
        David M. Zensky, Esq.
        Joseph L. Sorkin, Esq.
        Brad M. Kahn, Esq.
        Katherine Porter, Esq.

2001 K Street NW
Washington, D.C. 2006
By:    James R. Savin, Esq.

REED SMITH LLP
*Counsel to the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank and as Receiver for Silicon Valley Bridge Bank, N.A.*
599 Lexington Avenue
New York, New York 10022
By:    Kurt F. Gwynne, Esq.
       Casey D. Laffey, Esq.

Three Logan Square
1717 Arch Street
Suite 3100
Philadelphia, Pennsylvania 19103
By:    Derek J. Baker, Esq.

2850 N. Harwood Street
Suite 1500
Dallas, Texas 75201
By:    Keith M. Aurzada, Esq.

DAVIS POLK & WARDWELL LLP
*Counsel to the Ad Hoc Group of Senior Noteholders*
450 Lexington Avenue
New York, New York 10017
By:    Marshall S. Huebner, Esq.
       Elliot Moskowitz, Esq.
       Angela M. Libby, Esq.
       Aryeh Ethan Falk, Esq.
       Abraham Bane, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the objection (the "FDIC Objection," ECF Doc. # 1268) of

the Federal Deposit Insurance Corporation as receiver for Silicon Valley Bank (in such capacity,

the "FDIC-R1") and Silicon Valley Bridge Bank, N.A. (in such capacity, the "FDIC-R2," and

together with FDIC-R1, the "FDIC") to confirmation of the *Second Amended Plan of*

*Reorganization Under Chapter 11 of the Bankruptcy Code* (ECF Doc. # 1332 and, together with

2

the plan supplement (the "Plan Supplement," ECF Doc. ## 1246, 1290, 1304), the "Plan") of

SVB Financial Group (the "Debtor" or "SVBFG").[1]  The Plan represents the eighth iteration of

the Debtor's proposed Plan.  (*See* ECF Doc. # 826 (first iteration); ECF Doc. # 1086 (second

iteration); ECF Doc. # 1143 (third iteration); ECF Doc. # 1175 (fourth iteration); ECF Doc. #

1178 (fifth iteration); ECF Doc # 1276 (sixth iteration); ECF Doc. # 1303 (seventh iteration);

ECF Doc. # 1332 (eighth iteration).)

       The FDIC Objection raises, among other things, objections concerning the impact of the

Plan on the FDIC's purported defensive rights of setoff (the "FDIC Setoff Objection," and all

other objections asserted therein, the "FDIC Non-Setoff Objections"), which are pending before

the District Courts of the Southern District of New York and the Northern District of California.[2]

       On July 18, 2024, the Debtor filed a memorandum of law (the "Confirmation Brief and

Omnibus Reply," ECF Doc. # 1307) in support of confirmation and in response to objections

filed to confirmation, including the FDIC Non-Setoff Objections.  That same day, the Debtor

filed a separate reply memorandum (the "Debtor Reply," ECF Doc. # 1306) that focused solely

on the FDIC Setoff Objection.

---

[1]     Defined terms used herein but not otherwise defined shall have the meaning ascribed to them in the *Disclosure Statement for Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement," ECF Doc. # 1179) or as further modified in the Plan.

[2]     In total, five objections were filed to the Plan: (i) the limited objection of creditor Shirley Jane Leung ("Leung" and her objection, the "Leung Limited Objection," ECF Doc. # 1267); (ii) the FDIC Objection; (iii) the objection of Hildene Collateral Management Company, LLC ("Hildene" and its objection, the "Hildene Objection," ECF Doc. # 1269); (iv) the objection of the U.S. Trustee (the "UST" and its objection, the "UST Objection," ECF Doc. # 1288); and (v) the objection of ACE American Insurance Company, ACE Property & Casualty Insurance Company, Federal Insurance Company, Great Northern Insurance Company, Vigilant Insurance Company, and each of their respective U.S.-based affiliates and predecessors (collectively, the "Chubb Companies" and their objection, the "Chubb Objection," ECF Doc. # 1291).  Other than the FDIC Setoff Objection and the Hildene Objection, the Debtor resolved all objections to confirmation.  The Court has separately overruled the Hildene Objection in the Confirmation Order.

A48

In conjunction with the Confirmation Brief and Omnibus Reply, the Debtor also filed the

declaration of William C. Kosturos, Chief Restructuring Officer of SVB (the "Kosturos

Declaration," ECF Doc. # 1308) in support of confirmation.  Annexed to the Kosturos

Declaration is (i) a copy of the BP Trust I Indenture as Exhibit A and (ii) a copy of the BP Trust

II Indenture as Exhibit B.

In addition, on July 18, 2024, each of the Official Committee of Unsecured Creditors (the

"Committee" and its statement, the "UCC Statement," ECF Doc. # 1309) and an ad hoc group of

holders or investment advisors or managers acting on behalf of holders of certain Senior Notes

(the "Ad Hoc Noteholder Group" and its reply, the "Ad Hoc Noteholder Group Reply," ECF

Doc. # 1310) filed statements in support of confirmation.[3]

On July 19, 2024, the Court entered a joint pretrial order (the "Joint Pretrial Order," ECF

Doc. # 1319), which sets forth, among other things, certain stipulated facts between the Debtor

and the FDIC.  The Court held a hearing on confirmation of the Plan on July 24, 2024 (the

"Confirmation Hearing").  At the Confirmation Hearing, the Debtor and the FDIC notified the

Court that the FDIC Non-Setoff Objections were resolved.  (*See* July 24, 2024 Hr'g Tr. at 69:7–8

(notifying the Court that the Debtor "reached an agreement" with the FDIC on the FDIC Non-

Setoff Objections).)  Accordingly, this Opinion addresses the remainder of the FDIC Objection,

which is comprised of the FDIC Setoff Objection.

At the Confirmation Hearing, the Court directed the FDIC-R1 to "file one or more

declarations with supporting exhibits that show precisely what the flow of funds or paper account

records reflect the transfer of the 1.9 billion dollars from one entity to another."  (*See* July 24,

2024 Hr'g Tr. at 143:17–20.)  In accordance with the foregoing, the FDIC-R1 filed the *Second*

---

[3]    The Ad Hoc Noteholder Group Reply also responds to the Hildene Objection, which has been overruled as
set forth in the Confirmation Order.

A49

*Amended Declaration of Luis Mayorga Pursuant to Court's Direction at the July 24, 2024,*
*Confirmation Hearing* (the "Mayorga Declaration," ECF Doc. # 1351) on July 28, 2024.  One
day later, the Debtor filed the *Declaration of Robert A. Sacks* (the "Sacks Declaration," ECF
Doc. # 1353) in response to the Mayorga Declaration.

For the reasons discussed, the Court **SUSTAINS** the FDIC Objection.

## I.    BACKGROUND

### A.  Relevant Events Preceding the Debtor's Chapter 11 Filing

Prior to March 10, 2023, the Debtor owned and operated Silicon Valley Bank ("SVB"), a
California-chartered bank, through which the Debtor offered commercial and private banking
products and services.  (Disclosure Statement, Art. II(A).)  On March 10, 2023, the California
Department of Financial Protection and Innovation closed SVB and appointed FDIC-R1 as
receiver for SVB.  (Joint Pretrial Order at 3.)

On March 13, 2023, following the Treasury Secretary's declaration of a systemic risk
exception on March 12, 2023, the Debtor had deposit accounts at Silicon Valley Bridge Bank,
N.A. ("Bridge Bank") with a combined balance of approximately $2.1 billion as of the opening
of business.  (*Id.*)  Between March 13–16, 2023, the Debtor withdrew funds from those accounts.
(*Id.*)

On or about March 15, 2023, FDIC-R1 purported to recall the account liability from
Bridge Bank to prevent the Debtor from withdrawing funds from its deposit accounts and sought
Bridge Bank's reversal of the wire withdrawals that the Debtor had previously initiated from that
account.  (*Id.*)

A50

**B. Relevant Case History**

1. The Chapter 11 Case

On March 17, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief

(the "Petition," ECF Doc. # 1) under chapter 11 of the Bankruptcy Code. (Disclosure Statement,

Art. I.) On March 28, 2023, the UST appointed the Committee. (*Id.*, Art. III(C).)

In addition to the Committee, two ad hoc groups have also formed: (i) an ad hoc group of

certain holders, or investment advisors managing or acting on behalf of holders of certain Senior

Notes and Preferred Stock issued by the Debtor (the "Ad Hoc Group of Senior Noteholders")

and (ii) an ad hoc group of holders, or investment advisors, sub-advisors, or managers of holders,

of certain Senior Notes and preferred stock issued by the Debtor (the "Ad Hoc Cross-Holder

Group"). (*Id.*, Art. III(D), (E).)

On June 29, 2023, the Court entered an order approving the Debtor's motion to establish

deadlines for filing of proofs of claim (the "Bar Date Order," ECF Doc. # 373), which

established September 14, 2023 at 4:00 p.m. (EST) as the deadline for governmental units to file

proofs of claim against the Debtor (the "Government Bar Date"). (Bar Date Order ¶ 4.)

The FDIC acknowledges that it did not file proofs of claim in this bankruptcy case and

"[has] not invoked this Court's claims allowance process" notwithstanding the FDIC-R1's

awareness of the Government Bar Date and the "subject matter for which it claims defensive

setoff rights." (FDIC Objection ¶ 10; Joint Pretrial Order at 6 ("FDIC-R1 was aware of the

September 14, 2023 deadline for governmental units to file claims . . . .").) The FDIC-R1 does

not dispute that it "could have filed a proof of claim based on the subject matter of those rights,"

but did not. (*Id.*) Such claims, it states, "were and remain under investigation." (*Id.*) In other

words, the FDIC-R1 made a determination, prior to the Government Bar Date, to not file a claim

6

in this proceeding based on the subject matter for which it claims to have defensive setoff rights. (*Id.*)

### 2. The Adversary Proceeding and the Withdrawal of the Reference

On July 9, 2023, the Debtor commenced adversary proceeding no. 23-01137 (MG) (the "Adversary Proceeding" and related complaint, the "Adversary Complaint") against the FDIC in its corporate capacity, FDIC-R1, and FDIC-R2. (FDIC Objection ¶ 6; Joint Pretrial Order at 5.) Count II of the Adversary Complaint asserts a claim for turnover pursuant to section 542 of the Bankruptcy Code against the FDIC for the turnover of the "Deposit Account" that the Debtor asserts had a balance of $1,933,805,708.13 as of the Petition Date (the "Deposit Claim"). (FDIC Objection ¶ 6.) Relatedly, count IV of the Adversary Complaint seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and asks the Court to determine the rights of FDIC-R1 with respect to setting off against the Deposit Claim. (*Id.*)

On December 13, 2023, the U.S. District Court for the Southern District of New York withdrew the reference of the Adversary Complaint, which is pending in District Court as Civil Action No. 23-7218 (JPC) (the "S.D.N.Y. Action"). (*Id.* ¶ 7.) The S.D.N.Y. Action remains pending in District Court but is currently stayed pending further developments in the litigation in the Northern District of California. (Joint Pretrial Order at 6–7.)

### 3. The Debtor's Asserted Claims in the FIRREA Process

Pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), the FDIC established July 10, 2023, as the claims bar date (the "FDIC Bar Date"). (FDIC Objection ¶ 9.) On the FDIC Bar Date, the Debtor filed three claims against each of FDIC-R1 and FDIC-R2: (i) a $1.93 billion claim on account of the Deposit Claim; (ii) a second claim in an unidentified amount for deferred compensation plan participants (the "Deferred

A52

Compensation Claim"); and a (iii) third claim in a contingent and unliquidated amount for alleged actions or omissions of the FDIC (such as allegedly selling the assets of SVB for less than their value) (the "Damages Claim" and together with the Deposit Claim and the Deferred Compensation Claim, the "Claims"). (*Id.*; *see also* Joint Pretrial Order at 5.) The FDIC notes that the Deposit Claim and the Damages Claim are based on the same allegations as the Adversary Complaint that is now before the District Court. (FDIC Objection ¶ 9.)

On January 5, 2024, FDIC-R1 disallowed the Deposit Claim because it was "not proven to the satisfaction of the receiver due to the receiver's defenses," and FDIC-R2 denied the claim because it was not a liability of Bridge Bank. (*Id.* ¶ 11.) Notably, the *Notice of Disallowance of Claim* concerning the Deposit Claim did not specifically identify those defenses, including any alleged right of setoff. (Joint Pretrial Order at 7.) All other Claims were "denied as speculative, unsupportable, or otherwise not proven to the satisfaction of the receiver." (FDIC Objection ¶ 11.)

4.    The Pending Action in the Northern District of California

On March 5, 2024, the Debtor commenced an action against the FDIC in the U.S. District Court for the Northern District of California (the "N.D. Cal. Action" and the complaint, the "N.D. Cal. Complaint"). (*Id.* ¶ 12.) The N.D. Cal. Complaint asserts 11 counts against the FDIC with respect to the Deposit Claim and raises identical issues to those in the S.D.N.Y. Action. (*Id.* ¶¶ 13–14.)

**C.  The Chapter 11 Plan**

On May 30, 2024, the Court entered an order (the "Disclosure Statement Order," ECF Doc. # 1172) approving the Disclosure Statement, which was filed in connection with the fifth iteration of the Plan (ECF Doc. # 1178), the solicitation version of the Plan.

8

On July 9, 2024, the Debtor filed the sixth iteration of the Plan (ECF Doc. # 1276). That version of the Plan reflected (i) modifications disclosed in the *Notice of Agreed Plan Modifications* (the "Plan Modification Notice," ECF Doc. # 1208), including those reflecting agreements reached with the Ad Hoc Cross-Holder Group and (ii) "additional clarifications based on discussions with other parties-in-interest." (Plan at 2.) Subsequently, the Debtor filed the seventh iteration of the Plan (ECF Doc. # 1303) on July 18, 2024, "reflecting certain clarifications based on discussions with other parties-in-interest." (*Id.*) The Debtor further revised the Plan and, on July 24, 2024, filed the version of the Plan that is before the Court for its consideration.

### D. The FDIC Setoff Objection[4]

The FDIC asserts that the section 10.7 of the Plan improperly extinguishes FDIC-R1's defensive setoff rights.[5] (FDIC Objection ¶¶ 1, 16.) Section 10.7 of the Plan provides, in relevant part:

> In no event will any Person or Entity be entitled to set off any Claim or Interest against any Claim or Interest, right, or Cause of Action and Defense of the Debtor, the Liquidating Trust or NewCo, as applicable, in any judicial or administrative proceeding, unless such Person or Entity has filed a Proof of Claim in this Chapter 11 Case preserving such setoff and a Final Order of the Bankruptcy Court has been entered, authorizing and approving such setoff.

(Plan § 10.7.)

As FDIC-R1 has not filed a proof of claim, the FDIC argues that section 10.7 eliminates FDIC-R1's defensive setoff rights. (FDIC Objection ¶ 16.)

---

[4]    As the Debtor and the FDIC have resolved the FDIC Non-Setoff Objections, the Opinion addresses solely the FDIC Setoff Objection.

[5]    The FDIC also highlights section 4.2.9(ii) of the Plan, which it argues authorizes the Debtor to release Intercompany Claims against the Debtor that are owned by FDIC-R1 and serve as the basis for its defensive setoff rights. (FDIC Objection ¶ 17.)

A54

The foregoing is improper, the FDIC argues, because the FDIC-R1's defensive setoff
rights are pending before the District Courts in the Southern District of New York and the
Northern District of California, the latter of which has exclusive jurisdiction over the Claims and
FDIC-R1's defensive setoff rights pursuant to 12 U.S.C. § 1821(d)(6)(A).  (*Id.* ¶¶ 1, 18, 20–21;
*see also id.* ¶ 22 (arguing that the N.D. Cal. Action is the "only forum in which FDIC-R1's
defensive setoff rights can be adjudicated").)  A release or extinguishment of the FDIC-R1's
defensive setoff rights here, the FDIC maintains, would "unequivocally restrain or affect the
FDIC-R1's powers under 12 U.S.C. § 1821(d)(2)(A)."  (*Id.* ¶ 23.)  Additionally, the FDIC
argues, the District Court for the Southern District of New York, which has withdrawn the
reference over the Debtor's claims in the Adversary Proceeding, possesses jurisdiction over the
FDIC-R1's setoff rights that are pending in the S.D.N.Y. Action and divested this Court of
jurisdiction.  (*Id.* ¶ 28.)

Moreover, the FDIC further argues that even if such setoff rights were not subject to the
exclusive jurisdiction of another court (*i.e.*, the District Courts for Southern District of New York
and the Northern District of California), section 553 of the Bankruptcy Code nonetheless
preserves the FDIC-R1's setoff rights.  (*Id.* ¶¶ 1, 18, 29–30.)  It notes that the FDIC-R1 has
"consistently asserted" and provided notice of its defensive setoff rights throughout the pendency
of this chapter 11 case and in the Adversary Proceeding.  (*See id.* ¶¶ 32–34, 36–37; *see also id.* ¶
35 (indicating that the FDIC-R1 asserted its right to defensive setoff in the S.D.N.Y. Action).)
The FDIC also maintains that it was not required to file a proof of claim to preserve its rights to
setoff.  (*Id.* ¶ 38.)

A55

To address the foregoing, the FDIC proposed language to be included in any order confirming the Plan that would resolve its objection.[6]  (*See id.* ¶ 40.)

### E.  The Debtor's Reply to the FDIC Setoff Objection

The Debtor opposes the FDIC Setoff Objection on five grounds: (i) the FDIC lacks constitutional and statutory authority to bring the FDIC Objection; (ii) section 553 of the Bankruptcy Code does not preserve the FDIC-R1's purported setoff from discharge; (iii) the FDIC-R1 forfeited any setoff claims when it failed to file a proof of claim or seek stay relief; (iv) notwithstanding, equitable principles dictate that the Court exercise its discretionary authority to overrule the FDIC Objection; and (v) FIRREA is inapplicable as its administrative process is limited to "claims against a depository institution."  (*See* Debtor Reply ¶ 2.)

### F.  The Committee's Statement in Response to the FDIC Setoff Objection

The Committee joins in support of the Debtor Reply and separately argues that the FDIC Setoff Objection is meritless and should be overruled.  (*See* UCC Statement ¶ 3.)  First, the Committee asserts that the FDIC has failed to file a proof of claim, and, therefore, it is appropriately barred by the Plan from asserting setoff claims or defenses in any future litigation. (*Id.* ¶ 4.)  The Committee emphasizes that the FDIC deliberately chose not to file a proof of claim to secure a "more favorable venue and to delay having to substantiate and litigate its

---

[6]      In addition, annexed to the FDIC Objection is (i) a list of relevant Plan provisions as Schedule 1; (ii) the Adversary Complaint as Exhibit A; (iii) the Opinion and Order issued in the S.D.N.Y. Action on December 13, 2023 as Exhibit B; (iv) copies of claims filed by the Debtor against the FDIC-R1 in the FIRREA claims process as Exhibit C; (v) copies of claims filed by the Debtor against the FDIC-R2 in the FIRREA claims process as Exhibit D; (vi) the N.D. Cal. Complaint as Exhibit E; (vii) the March 21, 2023 hearing transcript as Exhibit F; (viii) the May 17, 2023 hearing transcript as Exhibit G; (ix) the April 26, 2023 hearing transcript as Exhibit H; (x) the *Statement of the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank, Pursuant to the Court's Direction at the April 26, 2023 Hearing* (ECF Doc. # 145) as Exhibit I; (xi) the FDIC-R1's memorandum of law in support of its motion to dismiss filed in the Adversary Proceeding as Exhibit J; (xii) the FDIC-R1's reply in support of its motion to dismiss filed in the Adversary Proceeding as Exhibit K; (xiii) the October 19, 2023 hearing transcript as Exhibit L; (xiv) the *Statement of the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank Regarding its Defensive Setoff Rights Against SVB Financial Group* (ECF Doc. # 1081) as Exhibit M; (xv) the FDIC-R1's objection to the Disclosure Statement (ECF Doc. # 1111) as Exhibit N; and (xvi) the Amended Tax Allocation Agreement (ECF Doc. # 167-1) as Exhibit O.

A56

alleged claims." (*Id.*)  The Committee concludes that the FDIC should not be allowed to object

to the Plan's language "bar[ring] future assertion of unfiled claims," especially after disregarding

the claim deadline set by the Court.  (*Id.*)  Second, the Committee disagrees with the FDIC's

classification of its claims as "defensive setoff claims."  (*Id.* ¶ 5.)  The UCC Statement states that

the FDIC's claims are "quintessential 'Claims'" against the Debtor's estate and the fact that

maximum potential recovery on these claims is capped to the $1.93 billion the FDIC owes the

Debtor does not change the analysis.  (*Id.*)  The Committee reiterates that the FDIC should have

identified and preserved its setoff claim but failed to do so.  (*Id.*)  Accordingly, the FDIC should

face the consequences of violating the deadline to file proofs of claims.  (*Id.*)  The Committee

maintains that any other result will undermine core bankruptcy purposes such as ensuring finality

and allowing the Debtor to have a "fresh start."  (*Id.*)

## II.    <u>LEGAL STANDARD</u>

### A.  Standing in a Bankruptcy Case

Generally, to have standing in bankruptcy court, a party must possess: (i) prudential

standing; (ii) constitutional standing; and (iii) standing under section 1109 of the Bankruptcy

Code.  *In re Motors Liquidation Co.*, 580 B.R. 319, 340 (Bankr. S.D.N.Y. 2018); *see In re Old

Carco LLC*, 500 B.R. 683, 690 (Bankr. S.D.N.Y. 2013) (indicating that a party invoking federal

jurisdiction bears the burden to establish that it meets "(1) Article III's constitutional

requirements, (2) federal court prudential standing requirements, and (3) the 'party in interest'

requirements under Bankruptcy Code 1109(b).").  "All three standing requirements must be met

to have standing."  *Motors Liquidation*, 580 B.R. at 340.

A57

1. Prudential Standing

First, a party seeking to appear in federal court must demonstrate prudential standing. *See Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 644 (2d Cir. 1988) (stating that "[t]he prudential concerns limiting third-party standing are particularly relevant in the bankruptcy context. Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself."). The doctrine, self-imposed by federal courts, bars litigants "from asserting the constitutional and statutory rights of others in an effort to obtain relief for injury to themselves." *See id.* at 643 (holding that a creditor with an existing asbestos claim lacked standing to assert the rights of future claimants).

2. Constitutional Standing

Once a party has shown that it has prudential standing, it then must prove that it has constitutional standing. Specifically, under the "case or controversy" requirement of Article III of the United States Constitution, a party "must have a 'personal stake in the outcome of the controversy'" to have standing. *Breeden v. Kirkpatrick & Lockhart, LLP*, 268 B.R. 704, 708 (S.D.N.Y. 2001) (citation omitted), *aff'd sub nom. Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Grp.)*, 336 F.3d 94 (2d Cir. 2003). Similar to the prudential standing requirements, "[a] party can only assert its own legal rights and cannot assert the rights of third-parties." *Id.* Furthermore, "[t]he Art[icle] III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

13

To prove constitutional standing, a party must establish "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

### 3.  Party-in-Interest Standing

Section 1109(b) of the Bankruptcy Code states, in relevant part, that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee may raise and may appear and be heard on any issue in a case under this chapter."  11 U.S.C. § 1109(b); *see also id.* § 1128(b) (providing that "part[ies] in interest may object to confirmation of a plan").  These interested parties are non-exclusive.  *See In re Residential Cap., LLC*, No. 12-12020 (MG), 2013 WL 6698365, at *3 (Bankr. S.D.N.Y. Dec. 19, 2013) (explaining that "[i]n the context of chapter 11 cases, the Code provides a non-exclusive listing of 'parties in interest'").

The phrase, "any issue in a case," generally "grants a right to raise, appear and be heard on *any issue* regardless [of] whether it arises in a contested matter or an adversary proceeding."  *Term Loan Holder Comm. v. Ozer Grp. LLC, et al. (In re Caldor Corp.)*, 303 F.3d 161, 169 (2d Cir. 2002) (emphasis in original).  In applying section 1109(b), "[c]ourts must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation."  *Lazard v. Texaco Inc. (In re Texaco Inc.)*, 81 B.R. 820, 828 (Bankr. S.D.N.Y. 1988) (citing *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d. Cir. 1985)).

A59

## B.  Setoff

Section 553(a) of the Bankruptcy Code provides, in relevant part, that:

> (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—
>
> > (1) the claim of such creditor against the debtor is disallowed; . . .
> >
> > (3) the debt owed to the debtor by such creditor was incurred by such creditor—
> >
> > > (A) after 90 days before the date of the filing of the petition;
> > >
> > > (B) while the debtor was insolvent; and
> > >
> > > (C) for the purpose of obtaining a right of setoff against the debtor (except for a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, or 561).

11 U.S.C. § 553(a).

"Section 553(a) of Title 11 of the United States Code does not create a right of setoff, but rather preserves whatever right exists under applicable non-bankruptcy law."  *Off. Comm. of Unsecured Creditors v. Mfrs. & Traders Tr. Co. (In re Bennett Funding Grp.)*, 146 F.3d 136, 138–39 (2d Cir. 1998) (footnote omitted); *see also Bank of Am. v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*, 439 B.R. 811, 823 (Bankr. S.D.N.Y. 2010) ("Section 553 of the Bankruptcy Code does not provide for an independent right of setoff[.]"); *In re Delta Air Lines*, 341 B.R. 439, 443 (Bankr. S.D.N.Y. 2006) ("Section 553 does not create a federal right of setoff, nor does it enhance, diminish or otherwise modify any state law right of setoff."); *In re McLean Indus., Inc.*, 90 B.R. 614, 618 (Bankr. S.D.N.Y. 1988) ("Section 553 is, however, not an independent source of a right to setoff; rather, it recognizes and preserves, but does not define,

15

A60

the common law right of setoff under nonbankruptcy law.  A creditor seeking to setoff a debt

under Title 11, therefore, must establish a claim and a right to setoff by applying the law of the

state where the operative facts occurred . . . .  Section 553, moreover, does not expand

nonbankruptcy rights and clearly provides that the automatic stay provisions of section 362 limit

post-petition setoff rights, requiring creditors to obtain court permission before taking any action

against the property of the estate." (internal citations omitted)).

Therefore, in order to establish a right to setoff under section 553, a creditor must first

demonstrate a preexisting right of setoff under non-bankruptcy or state law.  *In re Corp. Res.*

*Servs., Inc.*, 564 B.R. 196, 203 (Bankr. S.D.N.Y. 2017); *see also In re WL Homes LLC*, 471 B.R.

349, 352 (Bankr. D. Del. 2012) (stating that creditor must "first establish its right to setoff by

finding an independent right of setoff under non-bankruptcy law"); *Charles Russell, LLP v.*

*HSBC Bank USA, N.A. (In re Awal Bank, BSC)*, 455 B.R. 73, 87 (Bankr. S.D.N.Y. 2011)

("[Section] 553 requires the court to analyze the applicable nonbankruptcy law before dealing

with a set-off[.]").

The creditor asserting the right to setoff has the burden to establish that the right to setoff

exists.  *See Geron v. Schulman (In re Manshul Constr. Corp.)*, Nos. 96B44080 (JHG), 96B44079

(JHG), 97 CIV. 8851 (JGK), 99 CIV. 2825 (JGK), 2000 WL 1228866, at *56 (S.D.N.Y. Aug. 30,

2000); *McLean Indus., Inc.*, 90 B.R. at 618 ("The burden of proof, moreover, squarely rests with

[the creditor] in demonstrating its entitlement to setoff in light of the facts of this case." (citing

*Pester Ref. Co. v. Mapco Gas Prods., Inc. (Matter of Pester Ref. Co.)*, 845 F.2d 1476, 1486 (8th

Cir. 1988) (stating that burden is on creditors to establish valid rights of setoff))).  *See also Glob.*

*Cable, Inc. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, No. 02 Civ. 9770

A61

(RCC), 2006 WL 1559437, at *4 (S.D.N.Y. June 7, 2006) (indicating that the burden of proving

mutuality rests with the creditor).

### III.    DISCUSSION

#### A.  The FDIC-R1 Has Standing to Bring the FDIC Setoff Objection

The Debtor contends that the FDIC lacks standing to object to confirmation of the Plan

because the FDIC has failed to (i) plead or present facts to support a "concrete and

particularized" and "actual or imminent" injury or seek other relief; and (ii) file a proof of claim.

(Debtor Reply ¶¶ 23–26.)  While the Debtor Reply initially opposed the FDIC's standing,

Debtor's counsel stated at the Confirmation Hearing that the FDIC Setoff Objection, while

asserted by the FDIC, is truly an objection by the FDIC-R1.  (*See* July 24, 2024 Hr'g Tr. at

79:15–21 ("We're here with an objection by the FDIC to section 10.7 of the [P]lan, which has

the effect of ending any set-off rights they may have.  Now, the FDIC, it's an objection by the

FDIC-R1, which is the receiver for [SVB] as distinct from the FDIC-R2, which is the receiver

for Bridge Bank.").)  Accordingly, the Debtor opposes the standing of the FDIC-R1 to object to

confirmation of the Plan.  (*See Notice of Filing of Confirmation Hearing Presentation* (the

"Debtor Confirmation Presentation," ECF Doc. # 1330) at 7 ("FDIC-R1 Lacks Standing to

Object to the Plan").)  For the reasons discussed below, the Debtor's assertions are unavailing.

"Whether a claimant has standing is 'the threshold question in every federal case,

determining the power of the court to entertain the suit.'"  *Licensing by Paolo, Inc. v. Sinatra (In

re Gucci)*, 126 F.3d 380, 387–88 (2d Cir. 1997) (quoting *Warth*, 422 U.S. at 498); *see also In re

Teligent, Inc.*, 417 B.R. 197, 209 (Bankr. S.D.N.Y. 2009) ("Standing is a threshold issue in every

federal litigation.").  "When a plaintiff lacks standing to bring a suit, the court does not have

subject matter jurisdiction to hear their claim."  *In re Genesis Glob. Holdco, LLC*, No. 23-10063

A62

(SHL), 2024 WL 2264719, at *32 (Bankr. S.D.N.Y. May 17, 2024).  In other words, standing

determines "whether the litigant is entitled to have the court decide the merits of the dispute or of

particular issues."  *Warth*, 422 U.S. at 498.

Here, while the FDIC-R1 has not invoked the Court's claims allowance process by filing

a proof of claim, the Plan nonetheless seeks to extinguish whatever defensive setoff rights the

FDIC-R1 may possess in the pending S.D.N.Y. Action and N.D. Cal. Action.  It goes without

saying that it was the Debtor who commenced the N.D. Cal. Action and the Adversary

Proceeding that is now before the District Court in the Southern District of New York, asserting

claims against the FDIC-R1, among others.  And it is these claims against which the FDIC-R1

believes it possesses "defensive setoff rights" that the Plan now seeks to irrevocably discharge.

The Plan's discharge of these defensive setoff rights undoubtedly impacts the FDIC-R1's

pecuniary interest as it forecloses one possible avenue for the FDIC-R1 to reduce its liability, if

any, to the Debtor.  The validity and merits of such defensive setoff rights, as will be discussed

in greater detail below, is ultimately a matter for the applicable district court to address.

Therefore, the FDIC-R1, in asserting its own legal rights and interests, has satisfied the

requirement of prudential standing.  *See In re Quigley*, 391 B.R. 695, 702 (Bankr. S.D.N.Y.

2008) (providing that prudential standing is established when a "plaintiff . . . assert[s] his own

legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

parties" (quoting *Ward*, 422 U.S. at 499)).  Moreover, given the possible direct impact of the

Plan's discharge on the FDIC-R1's pecuniary interest in both a concrete and particularized

manner, the FDIC-R1 also possesses Article III and party-in-interest standing to object to

confirmation on such grounds.  *See In re Innkeepers USA Trust*, 448 B.R. 131, 141 (Bankr.

S.D.N.Y. 2011) ("[A] party in interest is one that has a sufficient interest in the outcome of the

18

case that would require representation, or a pecuniary interest that will be directly affected by the case."); *Teligent*, 417 B.R. at 210 ("Generally, a 'party in interest' with respect to a particular issue will also meet the requirement for Article III standing with respect to that issue. . . . Thus, the inquiries overlap." (citations omitted)); *In re Motors Liquidation*, 430 B.R. 65, 92 (S.D.N.Y. 2010) ("An injury in fact is an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." (internal citations and quotations omitted)).

Lastly, the Debtor's contention that the FDIC-R1 is out of luck because it failed to file a proof of claim is unpersuasive. This Court has previously recognized that "a creditor or party in interest need not file a proof of claim to obtain standing in a bankruptcy case." *In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 188 (Bankr. S.D.N.Y. 2012). Rather, filing a proof of claim "is only required for a creditor to have voting and distribution rights." *Id.* at 188–89 (citing references).

Accordingly, the Court concludes that the FDIC-R1 possesses standing to assert the FDIC Setoff Objection.

## B. The FDIC-R1's Defensive Setoff Rights Are Preserved

The Debtor's purported reasons for extinguishing the FDIC-R1's defensive right to setoff are unpersuasive. Specifically, two of the Debtor's arguments are relevant here.[7] First, the Debtor states that the FDIC-R1's setoff rights are excluded from protection under section 553(a)(3) of the Bankruptcy Code. (Debtor Reply ¶¶ 27, 29.) And second, the Debtor claims that the FDIC-R1 has forfeited its setoff rights by failing to file a proof of claim in these chapter

---

[7]        The Debtor advances a total of four arguments in favor of overruling the FDIC Objection. However, only two of them directly implicate the establishment and preservation of the FDIC-R1's right to setoff, and, therefore, are considered here. (Debtor Reply ¶ 27.)

A64

11 cases.  (*Id.* ¶ 27.)  For the reasons discussed below, the Court disagrees with the Debtor's

conclusion and finds that the FDIC-R1's ability to assert defensive setoff rights are preserved.

      1.   The FDIC-R1 Holds Defensive Setoff Rights

As an initial matter, the Debtor maintains that defensive setoff rights are "claims" under

section 11 U.S.C. § 101(5), and, therefore, the FDIC-R1 lost its ability to assert such claims

when the claim deadline passed under the Bar Date Order.  (*Id.* ¶¶ 9, 41, 45; Debtor

Confirmation Presentation at 5.)  In relevant part, under section 101(5), a claim is defined as:

> (A)  right to payment, whether or not such right is reduced to judgment,
> liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,
> undisputed, legal, equitable, secured, or unsecured; or
>
> (B)  right to an equitable remedy for breach of performance if such breach
> gives rise to a right to payment, whether or not such right to an equitable
> remedy is reduced to judgment, fixed, contingent, matured, unmatured,
> disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

However, courts have noted that a defensive setoff is substantively different from a

"claim."  For instance, in *Styler v. Jean Bob Inc. (In re Concept Clubs, Inc.)*, 154 B.R. 581 (D.

Utah 1993), the court there noted that "when setoff is raised only as an affirmative defense

seeking to reduce, or extinguish, the original claim, the party asserting the claim does not invoke

the bankruptcy court's equitable jurisdiction . . . ."  *Id.* at 589.  The court emphasized that "an

affirmative recovery raised through setoff implicates the allowance and disallowance of claims

against the estate . . . ."  *Id.*  The *Concept Clubs* court relied on the Tenth Circuit's reasoning in

*In re G.S. Omni Corp.*, where the court held that a defendant need not file a proof of claim to

assert a right of setoff.  *Turner v. United States (In re G.S. Omni Corp.)*, 835 F.2d 1317, 1319

(10th Cir. 1987).  Notably, the *Omni Corp.* court drew a distinction between affirmative relief

and defensive relief, stating:

> ***Setoff must be distinguished from a claim requesting a distribution from the liquidation of an estate***. Here the Government sought only to exercise its right to a setoff as a defense to the turnover action. Instead of seeking a distribution from the liquidation of the estate or double recovery, the Government attempted to satisfy its claim only to the extent of the money due from the Government to the debtor. As long as the debt owed the Government continued to exist, the Government had the right to do so.

*Id.* at 1319 (emphasis added).

However, it is important to note that some courts disagree with this approach and hold that there is no distinction between asserting a setoff as a claim and asserting setoff as a defense. *See, e.g.*, *In re Com. Fin. Servs., Inc.*, 251 B.R. 397, 406 (Bankr. N.D. Okla. 2000) (disagreeing with the court's conclusions in *Concept Clubs*).

Nonetheless, this Court concludes that there is material difference between a defensive claim for setoff and a claim that seeks similar relief on an affirmative basis against a debtor or its estate. Here, the FDIC-R1 is not attempting to affirmatively recover from the Debtor's estate. Instead, the FDIC-R1 is interested in using the setoff defensively to extinguish or reduce its potential obligation to the Debtor. At the Confirmation Hearing, counsel to the Debtor and the Ad Hoc Cross-Holder Group emphasized that the Plan could be confirmed and go effective even if the FDIC Setoff Objection remained unresolved. (*See* July 24, 2024 Hr'g Tr. at 73:1–8, 74:7–9.) Notably, counsel for the Ad Hoc Cross-Holder Group further noted that "***[the setoff] is not money that would come out of the estate***. This is a question of just how much money we get back from the FDIC." (*Id.* (emphasis added)). Accordingly, the FDIC-R1's purported setoff right is defensive and does not affirmatively implicate the Debtor's estate.

2. <u>The FDIC-R1's Right to Defensive Setoff is Not Precluded by 11 U.S.C. § 553(a)(3)</u>

A creditor's right of setoff is governed by section 553 of the Bankruptcy Code. Notably, however, section 553 *does not* create a right of setoff, but preserves the right if it exists under

applicable non-bankruptcy law. *See Cairns & Assocs., Inc. v. Conopco, Inc. (In re Cairns &*

*Assocs., Inc.)*, 372 B.R. 637, 660 (Bankr. S.D.N.Y. 2007) (citing *In re Bennett Funding Grp.,*

*Inc.*, 212 B.R. 206, 211 (2d Cir. BAP 1997)); *see also Citizens Bank of Maryland v. Strumpf*, 516

U.S. 16, 18 (1995) ("Although no federal right of setoff is created by the Bankruptcy Code, 11

U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists

is preserved in bankruptcy.").  Here, the applicable non-bankruptcy law is 12 U.S.C. § 1822(d),

which "has been found to create a federal statutory right to setoff."[8]  *Villafane Neris v. Citibank,*

*N.A.*, 845 F. Supp. 930, 934 (D.P.R. 1994); *see also FDIC v. Colonial BancGroup, Inc.(In re*

*Colonial BancGroup, Inc.)*, No. 2:11cv133 (WO), 2012 U.S. Dist. LEXIS 957, at *8 (M.D. Ala.

Jan. 4, 2012) (collecting cases).  Specifically, section 1822(d) provides that:

> [The FDIC] may withhold payment of such portion of the insured deposit
> of any depositor in a depository institution in default as may be required to
> provide for the payment of any liability of such depositor to the depository
> institution in default or its receiver, which is not offset against a claim due
> from such depository institution pending the determination and payment of
> such liability by such depositor or any other person liable therefor.

12 U.S.C. § 1822.

Critically, section 1822(d) does not modify the substantive requirements for setoff under

the Bankruptcy Code.  *See In re Colonial BancGroup*, 2012 U.S. Dist. LEXIS 957, at *9

("Section 1822(d) does not add substantive criteria to those necessary for offset already

embodied in § 553.").  Therefore, the Court must assess whether the FDIC-R1 has established

the requirements under section 553: "(1) the debtor must owe a debt to the creditor which arose

---

[8]    The FDIC has also asserted that it has a common law right of setoff by virtue of 12
U.S.C.§ 1821(d)(2)(A)(i), which allows the FDIC to "succeed[] to SVB's common law right of setoff with respect to
all claims by and between SVB and SVBFG." (*See* ECF Doc. # 145 at 3.)  Furthermore, the FDIC claims that it has
succeeded to "all [of] SVB's contractual setoff rights against SVBFG."  (*Id.* at 4.)  However, the Court need not to
analyze these bases for setoff to resolve the issue.

A67

prepetition; (2) the debtor must have a claim against the creditor which arose prepetition; and (3)

the debt and claim must be mutual." *In re Cairns & Assocs.*, 372 B.R. at 660 (citation omitted).

> a.   The FDIC-R1's Defensive Setoff Rights Satisfy Section 553
>      Requirements

Here, the FDIC-R1's defensive setoff rights satisfy all three of the section 553

requirements.  First, the Debtor "owes" a debt to the FDIC-R1, in its capacity as receiver for

SVB, which arose in the prepetition period.  By operation of 12 U.S.C. § 1821(d)(2)(A)(i), the

FDIC-R1 has succeeded to "all rights, titles, powers and privileges of [SVB], and of any

stockholder, member, accountholder, depositor, officer or director of [SVB] with respect to the

institution and the assets of the institution."  12 U.S.C. § 1821(d)(2)(A)(i).  Accordingly, the

FDIC-R1 stands in the shoes of SVB and has the authority to bring claims against the Debtor.

On May 2, 2024, the FDIC-R1 filed the *Statement of the Federal Deposit Insurance*

*Corporation as Receiver for Silicon Valley Bank Regarding its Defensive Setoff Rights Against*

*SVB Financial Group* (the "FDIC-R1 Statement," ECF Doc. # 1081).  The FDIC-R1 had filed

the FDIC-R1 Statement in the N.D. Cal. Action as well, but Judge Freeman struck the statement

and noted that the "[FDIC-R1 Statement] [did] nothing to advance [the] litigation and

request[ed] no relief."  (ECF Doc. # 1096.)  The Court need not discuss the propriety and legal

effect of the FDIC-R1 Statement, other than to note it sets out the alleged bases of the FDIC-

R1's claims against the Debtor.  (*See generally* FDIC-R1 Statement.)  The FDIC-R1 alleges that

the debt owed to it by the Debtor arose in the prepetition period.  (*Id.*)  Of course, the FDIC-R1

has not asserted its defensive setoff rights in this Court or the N.D. Cal. Action.[9]  Accordingly,

the underlying claims have not been briefed and argued.  Nevertheless, the substance of the

---

[9]      Because the FDIC filed a motion to dismiss the Debtor's lawsuit, and the motion remains unresolved, the
FDIC is not required by the Federal Rules of Civil Procedure to answer the complaint and plead any affirmative
defenses and counterclaims.

claims is beyond the scope of the Court's decision to preserve such setoff rights to be asserted in a future proceeding. The Court finds that the debts owed to the FDIC-R1 plausibly arose in the prepetition period, and the merits of the underlying claims may be addressed in the N.D. Cal. Action when the defensive setoff rights are formally asserted.

Second, the Debtor's claim against the FDIC-R1 arose in the prepetition period. The Debtor had deposited funds in SVB before the Petition Date, and, therefore, entered a "standard debtor-creditor relationship" with SVB at that time. *See In re Bennett Funding Grp.*, 146 F.3d at 139 ("Ordinarily, funds in a general deposit account can be used to setoff debts owed to the bank because when a depositor deposits funds into a general account he parts with title to the funds in exchange for a debt owed to him by the bank, thereby establishing a standard debtor-creditor relationship."). Following the collapse of SVB on March 10, 2023, the FDIC-R1 was appointed receiver and transferred "all deposits and substantially all assets" of SVB to the Bridge Bank. (ECF Doc. # 21 ¶ 10.) On March 13, 2023, the Debtor's deposit accounts at the Bridge Bank had a total balance of approximately $2.1 billion. (Joint Pretrial Order at 3.) The deposit accounts were purportedly transferred back to FDIC-R1's control on March 15, 2023. (*See* Debtor Confirmation Presentation at 11.) As noted above, under 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC-R1 inherited SVB's obligations as well, including the obligation on the Debtor's deposit accounts. *See* 12 U.S.C. § 1821(d)(2)(A)(i). Accordingly, the Debtor has a prepetition claim against the FDIC-R1.

Third, mutuality exists between the Debtor and the FDIC-R1. Notably, courts have generally construed mutuality strictly and emphasized that "a narrow interpretation of mutuality ensures that setoff is allowed only in situations in which the equitable considerations are strongest: namely where the claims or debts are owed between the same parties in the same right

24

or capacity." *In re Cairns & Assocs., Inc.*, 372 B.R. at 660 (citing *In re Ionosphere Clubs, Inc.*,

164 B.R. 839, 843 (Bankr. S.D.N.Y.1994)).  Here, the Debtor disputes that mutuality exists and

points to section 553(a)(3) to exclude the FDIC-R1's defensive setoff rights.  Specifically,

section 553(a)(3) states that a right of setoff is not preserved where: "the debt owed to the debtor

by such creditor was incurred by such creditor—(A) after 90 days before the date of the filing of

the petition; (B) while the debtor was insolvent; and (C) for the purpose of obtaining a right of

setoff against the debtor (except for a setoff of a kind described in section 362(b)(6), 362(b)(7),

362(b)(17), 555, 556, 559, 560 or 561)."  11 U.S.C. § 553(a)(3).  The Debtor argues that on

March 13, 2023, its deposit accounts were available at the Bridge Bank.  (Debtor Reply ¶ 32.)

However, around March 15 "—two days before the Petition Date—FDIC-R1 purported to

transfer that account liability from Bridge Bank to FDIC-R1."[10]  (*Id.*)  The Debtor concludes that

the FDIC-R1's defensive setoff rights directly implicate section 553(a)(3) because the FDIC-R1

"incurred deposit liability to Debtor two days before Debtor's bankruptcy filing for the purposes

of obtaining a setoff right against Debtor."  (*Id.*)  The Court disagrees with the Debtor's position.

It is uncontroversial that the FDIC-R1 had a mutual debt with the Debtor before the

deposit accounts were transferred to the Bridge Bank pursuant to that certain Transfer

Agreement dated March 13, 2023 (the "Transfer Agreement," ECF Doc. # 1351-1.)  The Debtor

argues that the transfer of the deposit accounts to Bridge Bank disrupts mutuality and their

subsequent return to the FDIC-R1's control offends section 553(a)(3).  (Debtor Reply ¶ 32.)

However, the district court's analysis in *In re Colonial BancGroup* is instructive here.  *See*

---

[10]     The Court notes that there is a factual dispute between the Debtor and the FDIC-R1 regarding the
movement of the Debtor's deposit accounts in the pre- and post-petition period.  (*See generally* Sacks Declaration
(asserting, among other things, that "open issues" remain as to whether and when the Debtor's deposit accounts
were transferred).)  However, as the Court has discussed, the merits of the FDIC-R1's setoff claims are for the
applicable district court to decide.

A70

*generally In re Colonial BancGroup*, 2012 U.S. Dist. LEXIS 957.  There, the district court

analyzed whether mutuality between the FDIC and BancGroup (the debtor's holding company)

was disrupted as a result of the purchase and assumption agreement (P&A), which transferred

substantially all of the debtor's assets to Branch Banking and Trust Company ("BB&T")

(including the six demand-deposit accounts owned by BancGroup).  *Id.* at *3.  The *Colonial*

*BancGroup* court held that the P&A had not extinguished the FDIC's liability on the deposit

accounts, and, therefore, mutuality between the parties survived despite BB&T also incurring

liability.  *Id.* at *14.  The district court reasoned that first, and most compellingly, the "[FDIC's]

liability to BancGroup was not addressed in the agreement and ***could not be addressed in the***

***agreement, for BancGroup was not a party to the agreement.***"  *Id.* (emphasis added).  Invoking

basic principles of contract law, the district court maintained that a debtor (*i.e.*, the FDIC, on

account of the deposit obligations) could not unilaterally modify its obligation to a creditor (*i.e.,*

BancGroup).  *Id.*  Second, even if the P&A could alter the FDIC's obligations without

BancGroup's consent, the language of the agreement showed that it did not intend to extinguish

the FDIC's liability.  *Id.*  The *Colonial BancGroup* court analyzed the relevant provisions and

found that they did not absolve the FDIC of liability on the deposit accounts that had been

transferred to the BB&T, so mutuality persisted.

       Here, mutuality exists for similar reasons.  First, the Debtor was not a party to the

Transfer Agreement, and, therefore, the agreement could not have unilaterally extinguished the

FDIC-R1's liability without the Debtor's consent.  (Transfer Agreement at 1.)  As the court

noted in *In re Colonial BancGroup*, under basic contract principles, the FDIC-R1 does not have

the power to single-handedly modify its obligations to the Debtor via the Transfer Agreement.

A71

*See In re Colonial BancGroup*, 2012 U.S. Dist. LEXIS 957, at \*18.  Accordingly, throughout the

relevant period and despite the various transfers, the FDIC maintained its liability.

Additionally, the provisions of the Transfer Agreement suggest that it was not meant to

eliminate the FDIC-R1's obligations to SVB's depositors, including the Debtor.  The Transfer

Agreement provided for "the transfer of certain Assumed Liabilities, including Assumed

Deposits, as between FDIC-R1 and Bridge Bank."  (Mayorga Declaration ¶ 6.)  However,

section 9.09 of the Transfer Agreement precludes the application of the agreement to third-party

beneficiaries, noting that:

> [T]he obligations and statements of responsibilities hereunder, and all other
> conditions and provisions hereof are *for the sole and exclusive benefit of
> the Receiver and the Bridge Bank, and the [FDIC] as an express, third-
> party beneficiary, and for the benefit of no other Person*.

(Transfer Agreement § 9.09 (emphasis added).)  Furthermore, section 4.04 clarifies that SVB

depositors retained the right to assert claims against the FDIC-R1 despite the Transfer

Agreement, stating:

> *If any depositor does not accept the obligation of the Bridge Bank to pay
> the liability of the Failed Bank related to Assumed Deposits and asserts a
> claim against the Receiver for all or any portion of any such liability, the
> Bridge Bank agrees to provide to the Receiver funds sufficient to pay such
> claim* in an amount not in excess of the liability related to the Assumed
> Deposit reflected on the books of the Bridge Bank . . . ."

(*Id.* § 4.04 (emphasis added).)

Taken together, these provisions show that whether the Bridge Bank was liable to

depositors in addition to the FDIC-R1 is immaterial.  The FDIC-R1 remained liable to

depositors throughout the process and expressly acknowledged its obligation in section

4.04 of the Transfer Agreement.  (*See id.*)  Accordingly, the Court finds that there is

mutuality.

> b. *The Court Need Not Determine Whether the FDIC-R1's Defensive*
> *Setoff Rights Are Sufficiently Liquid and Contingent*

The Debtor also attacks the FDIC-R1's defensive setoff rights for being "too contingent to give it setoff rights." (Debtor Reply ¶ 46.) In support, the Debtor cites to this Court's decision in *Corp. Res. Servs.*, 564 B.R. 196, where the Court determined the defendants could not "set off [their] contingent claims, either as a defense in the adversary proceeding or as a claim against these estates." *Id.* at 208. However, *Corp. Res. Servs.* is easily distinguished because the defendants there sought to apply their purported setoff rights *in* the bankruptcy case. *Id.* Here, however, the FDIC-R1 does not intend to assert its defensive setoff rights in the bankruptcy case but preserve them for the N.D. Cal. Action. (*See* Debtor Reply ¶ 1 (noting that the FDIC-R1 has not asserted any claims against the Debtor).) Moreover, at the Confirmation Hearing, counsel for the Debtor acknowledged that there was a pending motion to dismiss in the N.D. Cal. Action, and the FDIC-R1's time to respond to the complaint had not run yet. (*See* July 24, 2024 Hr'g Tr. at 91:23–92:2, 220:13–19.) And, to date, the FDIC-R1 has not responded to the N.D. Cal. Complaint. Accordingly, the Court need not analyze the *merits* of the FDIC-R1's defensive setoff rights, as that issue is neither issue before the Court nor necessary to decide whether the FDIC-R1 may *preserve* the ability to assert such rights.

> 3.  The FDIC-R1 Was Not Required to File a Proof of Claim to Preserve Its
> Defensive Setoff Rights

The Debtor argues that the FDIC-R1 has forfeited its defensive setoff rights by not filing a proof of claim. (Debtor Reply ¶ 2.) The Court disagrees that filing a proof of claim is a prerequisite to preserving a defensive setoff right. Instead, case law in this district expressly state that a defensive right of setoff can be preserved in the absence of a proof of claim. *See, e.g.*, *Bernstein v. IDT Corp. (In re Frigitemp Corp.)*, 76 B.R. 275, 281 (S.D.N.Y. 1987); *Thelen*

*LLP v. Fontana (In re Thelen LLP)*, No. 09-15631 (MEW), Adv. Pro. No. 11-02648 (MEW), 2015 WL 4999972, at *7 (Bankr. S.D.N.Y. Aug. 21, 2015); *Geltzer v. Bloom (In re M. Silverman Laces, Inc.)*, 404 B.R. 345, 365 (Bankr. S.D.N.Y. 2009) ("***The clear majority and better view . . . is that filing a proof of claim is not a prerequisite to asserting an otherwise valid setoff***." (emphasis added)).  Other courts have also generally agreed that the absence of a proof of claim is not fatal to a right of setoff.  *See, e.g.*, *Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1539 (10th Cir. 1990) ("Accordingly, we reaffirm our holding in *Omni* that filing of a proof of claim is not a prerequisite to assertion of a right to setoff under 11 U.S.C. § 553 . . . ."); *In re G.S. Omni Corp.*, 835 F.2d at 1319 ("Making the right to assert the attribute of setoff dependent upon the filing of the proof of claim is an intrusion into the creditor's rights which is not contemplated in the Bankruptcy Code."); *Columbia Hosp. for Women Med. Ctr., Inc. v. NCRIC, Inc. (In re Columbia Hosp. for Women Med. Ctr., Inc.)*, 461 B.R. 648, 672–73 (Bankr. D.C. 2011) ("Although failure to file a proof of claim may preclude NCRIC from asserting any right to distribution under the plan, it does not bar NCRIC from asserting a right of setoff defensively in a turnover proceeding.").

Notably, a minority of courts require a creditor to file a proof of claim before the applicable bar date to preserve and exercise its right of setoff.  *See e.g., Neal v. Golden Knights, Inc. (In re Laughter, Inc.)*, Case No. 93-41808-B, APN. NO. 95-4022-B, 1995 Bankr. LEXIS 2163, at *11–12 (Bankr. E.D. Va. Oct. 13, 1995) (holding that filing a proof of claim is not necessary to assert setoff but collecting cases reflecting the minority view); *Bank of Dixie v. King (In re Honeycutt Grain Co., Inc.)*, 41 B.R. 678 (Bankr. W.D. La. 1984).

The Debtor points to *Daewoo Int'l (Am.) Corp. Creditor Tr. v. SSTS Am. Corp.*, 2003 WL 21355214, at *5 (S.D.N.Y. June 11, 2003), for the proposition that courts have denied setoff

29

A74

claims "if the creditor fails to timely take affirmative actions to assert a setoff . . . ." (Debtor

Reply ¶ 35.) However, *Daewoo* is easily distinguished from the present case. In *Daewoo*, the

District Court adopted the Third Circuit's reasoning in *In re Cont'l Airlines*, quoting "allowing

the creditor ***to come forward after the plan of reorganization has been confirmed and . . .***

***decide that it has a valid set-off without timely filing a proof of claim and asserting the set-off***

***in the reorganization proceedings***, has a probability of disrupting the plan of reorganization . . .

and can conceivably undermine . . . the objectives and structure of the Bankruptcy Code."

*Daweeo*, 2003 WL 21355214, at *5 (citing *In re Cont'l Airlines*, 134 F.3d 536, 542 (3d Cir.

1998)) (emphasis added). Here, the FDIC-R1 has not appeared after the confirmation of the plan

to assert purported defensive setoff rights. Instead, the FDIC-R1 has objected to the Plan and

appeared at the Confirmation Hearing, and generally provided notice to the Debtor and other

stakeholders that it intended to assert its defensive setoff rights. (*See* FDIC-R1 Statement.)

Although the FDIC-R1 has not filed a proof of claim, it has taken sufficient affirmative action to

put parties on notice. As counsel for the Ad Hoc Cross Holder Group emphasized at the

Confirmation Hearing, the Debtor and creditors were aware of the FDIC-R1's purported

defensive right of setoff which is why the Disclosure Statement projections for creditor

recoveries accounted for a scenario where the Debtor recovered nothing from the N.D. Cal.

Action. (*See* July 24, 2024 Hr'g Tr. at 74:7–24 (noting that the possibility of setoff was

"expressly contemplated").) Ultimately, the concerns that moved the *Daewoo* and *In re Cont'l

Airlines* Courts are not present here. Accordingly, this Court accepts the majority view that

filing a proof of claim is not required for a creditor to preserve its defensive right of setoff.

    In sum, the Court determines that the FDIC-R1's *ability* to assert defensive setoff rights

are preserved. Notably, however, the Court's opinion does not consider whether the FDIC-R1

A75

can *successfully* assert setoff in the N. D. Cal. Action. As the Debtor concedes, the "[m]erits of setoff [is] not at issue in Plan confirmation." (Debtor Confirmation Presentation at 34.) Accordingly, this Court does not take a position on the strength or propriety of the FDIC-R1's purported defensive setoff rights since that is not the question before the Court.

### C. The FDIC-R1's Preserved Defensive Setoff Rights Cannot be Discharged

The Debtor and the Committee also contend that the FDIC-R1's defensive setoff rights are not immune from discharge and reject the FDIC-R1's contention that such rights survive confirmation. (*See* FDIC Objection ¶¶ 29–39 (discussing how section 553 of the Bankruptcy Code preserves the FDIC-R1's defensive setoff rights post-confirmation); Debtor Reply ¶¶ 28–29 (asserting that the FDIC-R1 is "wrong" that its "setoff rights cannot be extinguished post-discharge"); UCC Statement ¶ 33 (arguing that the Plan's discharge and injunction provisions bar the FDIC-R1's "future assertion" of its setoff claims).)

Specifically, the Committee makes two arguments in support. *First*, the Committee believes that the FDIC-R1's failure to file a proof of claim bars the ability of the FDIC-R1 to assert its defensive setoff claims post-confirmation under the Plan's proposed discharge and injunction provisions. (UCC Statement ¶ 33.) *Second*, the Committee argues that section 553 of the Bankruptcy Code does not override the discharge authorized in section 1141 or what it deems the "Centralization Sections"[11] of the Bankruptcy Code.[12] (UCC Statement ¶ 46.)

---

[11]    The Committee defines "Centralization Sections" to include sections 105, 362, 502, 553, 1141, and 28 U.S.C. § 1334, which it believes ensures "procedural fairness and equality of treatment for creditors." (UCC Statement ¶ 29.)

[12]    The Debtor does not believe that the Court needs to resolve the "question [of] whether section 553 overrides section 1141 because the FDIC-R1's purported setoff rights are ***excluded*** from protection under section 553(a)(3)." (Debtor Reply ¶ 29 (emphasis in original).) However, the Court has already established that the FDIC-R1's defensive setoff rights are not precluded by 11 U.S.C. § 553(a)(3). (*See supra* Section III(B)(2).) Accordingly, the Court focuses solely on the Committee's arguments.

31

Section 1141 of the Bankruptcy Code addresses the effect of confirmation of a plan in a chapter 11 case. As a general matter, confirmation of a chapter 11 plan "discharges the debtor from any debt that arose before the date of such confirmation."[13]  11 U.S.C. § 1141(d)(1)(A). Meanwhile, section 553(a) of the Bankruptcy Code provides, in relevant part, that "[e]xcept as otherwise provided in this section and in sections 362 and 363 of [Title 11], [Title 11] does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose [pre-petition] . . . against a claim of such creditor against the debtor that arose [pre-petition]."  11 U.S.C. § 553(a).

Underlying each of the Committee's arguments, however, is its position that the FDIC-R1 has failed to file a proof of claim. As discussed, however, the FDIC-R1 was not required to file a proof of claim to preserve its defensive setoff rights and, therefore, neither is availing. With respect to the Committee's first argument, while it may be true that sections 10.7 and 12.10 of the Plan, if approved, would bar the FDIC-R1's future assertion of its purported setoff claims, that is precisely the issue at hand and the basis for the FDIC Setoff Objection to the Debtor's proposed Plan. Similarly, with respect to its second argument, the Committee states that "section 553 expressly contemplates that a setoff claim should be submitted as part of the claim process and that it can be disallowed, and thus extinguished, in bankruptcy" and therefore, cannot be read to "trump the discharge provision in . . . section 1141." (UCC Statement ¶¶ 47–48; *see also id.* ¶ 52 (distinguishing *Carolco Television Inc. v. Nat'l Broad. Co. (In re De Laurentiis Ent. Grp.)*, 963 F.2d 1269 (9th Cir. 1992), since the FDIC-R1 has "purposefully not filed a proof of claim and never sought relief from the automatic stay").)  Since the Court has already concluded that

---

[13]     Section 524(a) of the Bankruptcy Code provides that such a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset" of any "debt discharged under section . . . 1141 [of the Bankruptcy Code]."  11 U.S.C. § 524(a)(1), (2).

A77

the FDIC-R1 is asserting setoff defensively and that it did not need to file a proof of claim to preserve its rights, the Committee's position is unpersuasive.

Accordingly, the Court concludes that the FDIC-R1's preserved defensive setoff rights cannot be discharged. However, the Court emphasizes and makes clear that this ruling as to discharge is limited solely to the FDIC-R1's *preserved* setoff rights. Any claim that the FDIC-R1 may have held against the Debtor in this bankruptcy case for which it was required to file a proof of claim in this case, including those relating to the personal liability of the Debtor, is otherwise discharged. *See In re Velo Holdings Inc.*, 500 B.R. 693, 698 (Bankr. S.D.N.Y. 2013) (noting that a discharge under section 1141 of Bankruptcy Code, among others, operates as an injunction against the "recover[y] or offset [of] any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived" (quoting 11 U.S.C. § 524(a)(2))).

## IV.    <u>CONCLUSION</u>

For the reasons discussed, the Court **SUSTAINS** the FDIC Objection.

**IT IS SO ORDERED.**

Dated:    August 2, 2024
New York, New York

_____
*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge

A78

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re

**SVB FINANCIAL GROUP**, *et al.*,

　　Debtor.

**Chapter 11**

**Case No. 23-10367 (MG)**

---

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1. Name(s) of appellant(s):    SVB Financial Group;
   Official Committee of Unsecured Creditors of SVB Financial Group

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

   For appeals in an adversary proceeding.
   ☐ Plaintiff
   ☐ Defendant
   ☐ Other (describe) _____

   For appeals in a bankruptcy case and not in an adversary proceeding.
   ☑ Debtor
   ☑ Creditor
   ☐ Trustee
   ☐ Other (describe) _____

### Part 2:  Identify the subject of this appeal

1. Describe the judgment—or the appealable order or decree—from which the appeal is taken:
   Memorandum Opinion and Order Sustaining the Objection of the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A. to the Second Amended Chapter 11 Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Dkt. No. 1380], attached herein as **Exhibit 2**

2. State the date on which the judgment—or the appealable order or decree—was entered:
   August 2, 2024

### Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment—or the appealable order or decree—from which the appeal is taken and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: SVB Financial Group    Attorney: Robert A. Sacks; James L. Bromley; Adam S. Paris; Christian Jensen
   Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, (212) 558-4000
   Diane L. McGimsey
   Sullivan & Cromwell LLP, 1888 Century Park East, Los Angeles CA 90067, (310) 712-6600

2. Party: Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank and as Receiver for Silicon Valley Bridge Bank, N.A.    Attorney: Kurt F. Gwynne; Casey D. Laffey
   Reed Smith LLP, 599 Lexington Avenue, New York, NY 10022, (212) 549-0389
   Derek J. Baker
   Reed Smith LLP, Three Logan Square, 1717 Arch Street, Suite 3100, Philadelphia, PA 19103, (215) 851-8148
   Keith M. Aurzada
   Reed Smith LLP, 2850 N. Harwood Street, Dallas, TX 75201, (469) 680-4211

   See **Exhibit 1** for additional parties and attorneys

**A79**

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☑ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

/s/ Robert A. Sacks                                          Date: August 9, 2024
_____                              _____
Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Name, address, and telephone number of attorney
(or appellant(s) if not represented by an attorney):
Robert A. Sacks
Sullivan & Cromwell LLP
125 Broad Street, New York, NY 10004
(212) 558-4000
Counsel for SVB Financial Group


/s/ David M. Zensky
_____

David M. Zensky
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park New York, NY 10036
(212) 872-1000
Counsel for the Official Committee of Unsecured Creditors
of SVB Financial Group




Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.


[**Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

A80

## EXHIBIT 1
## ADDITIONAL PARTIES TO THE JUDGMENT, ORDER, OR DECREE

Official Committee of Unsecured Creditors of SVB Financial Group (Additional Appellant)

Ira S. Dizengoff
David M. Zensky
Joseph L. Sorkin
Brad M. Kahn
Katherine Porter
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park New York, NY 10036
Telephone:    (212) 872-1000
E-mail:        idizengoff@AkinGump.com
               dzensky@AkinGump.com
               jsorkin@AkinGump.com
               bkahn@AkinGump.com
               kporter@AkinGump.com


James R. Savin
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K Street NW, Washington, DC 20006
Telephone:    (202) 887-4000
E-mail:        jsavin@akingump.com

## EXHIBIT 2
## BANKRUPTCY COURT ORDER

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re:                                                    **FOR PUBLICATION**

       SVB FINANCIAL GROUP,                       Chapter 11

                                       Case No. 23-10367 (MG)

                            Debtor.

------------------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER SUSTAINING**
**THE OBJECTION OF THE FEDERAL DEPOSIT INSURANCE**
**CORPORATION, AS RECEIVER FOR SILICON VALLEY BANK AND**
**SILICON VALLEY BRIDGE BANK, N.A. TO THE SECOND AMENDED CHAPTER 11**
**PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

*A P P E A R A N C E S :*

SULLIVAN & CROMWELL
*Counsel to the Debtor*
125 Broad Street
New York, New York 10004
By:    James L. Bromley, Esq.
        Andrew G. Dietderich, Esq.
        Adam S. Paris, Esq.
        Christian Jensen, Esq.

1888 Century Park East
Suite 2100
Los Angeles, California 90067
By:    Diane L. McGimsey, Esq.
        Robert A. Sacks, Esq.

AKIN GUMP STRAUSS HAUER & FELD LLP
*Counsel to the Official Committee of Unsecured Creditors*
One Bryant Park
New York, New York 10036
By:    Ira S. Dizengoff, Esq.
        David M. Zensky, Esq.
        Joseph L. Sorkin, Esq.
        Brad M. Kahn, Esq.
        Katherine Porter, Esq.

2001 K Street NW
Washington, D.C. 2006
By:     James R. Savin, Esq.

REED SMITH LLP
*Counsel to the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank and as Receiver for Silicon Valley Bridge Bank, N.A.*
599 Lexington Avenue
New York, New York 10022
By:     Kurt F. Gwynne, Esq.
        Casey D. Laffey, Esq.

Three Logan Square
1717 Arch Street
Suite 3100
Philadelphia, Pennsylvania 19103
By:     Derek J. Baker, Esq.

2850 N. Harwood Street
Suite 1500
Dallas, Texas 75201
By:     Keith M. Aurzada, Esq.

DAVIS POLK & WARDWELL LLP
*Counsel to the Ad Hoc Group of Senior Noteholders*
450 Lexington Avenue
New York, New York 10017
By:     Marshall S. Huebner, Esq.
        Elliot Moskowitz, Esq.
        Angela M. Libby, Esq.
        Aryeh Ethan Falk, Esq.
        Abraham Bane, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the objection (the "FDIC Objection," ECF Doc. # 1268) of

the Federal Deposit Insurance Corporation as receiver for Silicon Valley Bank (in such capacity,

the "FDIC-R1") and Silicon Valley Bridge Bank, N.A. (in such capacity, the "FDIC-R2," and

together with FDIC-R1, the "FDIC") to confirmation of the *Second Amended Plan of*

*Reorganization Under Chapter 11 of the Bankruptcy Code* (ECF Doc. # 1332 and, together with

2

A84

the plan supplement (the "Plan Supplement," ECF Doc. ## 1246, 1290, 1304), the "Plan") of

SVB Financial Group (the "Debtor" or "SVBFG").[1] The Plan represents the eighth iteration of

the Debtor's proposed Plan. (*See* ECF Doc. # 826 (first iteration); ECF Doc. # 1086 (second

iteration); ECF Doc. # 1143 (third iteration); ECF Doc. # 1175 (fourth iteration); ECF Doc. #

1178 (fifth iteration); ECF Doc # 1276 (sixth iteration); ECF Doc. # 1303 (seventh iteration);

ECF Doc. # 1332 (eighth iteration).)

The FDIC Objection raises, among other things, objections concerning the impact of the

Plan on the FDIC's purported defensive rights of setoff (the "FDIC Setoff Objection," and all

other objections asserted therein, the "FDIC Non-Setoff Objections"), which are pending before

the District Courts of the Southern District of New York and the Northern District of California.[2]

On July 18, 2024, the Debtor filed a memorandum of law (the "Confirmation Brief and

Omnibus Reply," ECF Doc. # 1307) in support of confirmation and in response to objections

filed to confirmation, including the FDIC Non-Setoff Objections. That same day, the Debtor

filed a separate reply memorandum (the "Debtor Reply," ECF Doc. # 1306) that focused solely

on the FDIC Setoff Objection.

---

[1]      Defined terms used herein but not otherwise defined shall have the meaning ascribed to them in the *Disclosure Statement for Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement," ECF Doc. # 1179) or as further modified in the Plan.

[2]      In total, five objections were filed to the Plan: (i) the limited objection of creditor Shirley Jane Leung ("Leung" and her objection, the "Leung Limited Objection," ECF Doc. # 1267); (ii) the FDIC Objection; (iii) the objection of Hildene Collateral Management Company, LLC ("Hildene" and its objection, the "Hildene Objection," ECF Doc. # 1269); (iv) the objection of the U.S. Trustee (the "UST" and its objection, the "UST Objection," ECF Doc. # 1288); and (v) the objection of ACE American Insurance Company, ACE Property & Casualty Insurance Company, Federal Insurance Company, Great Northern Insurance Company, Vigilant Insurance Company, and each of their respective U.S.-based affiliates and predecessors (collectively, the "Chubb Companies" and their objection, the "Chubb Objection," ECF Doc. # 1291). Other than the FDIC Setoff Objection and the Hildene Objection, the Debtor resolved all objections to confirmation. The Court has separately overruled the Hildene Objection in the Confirmation Order.

A85

In conjunction with the Confirmation Brief and Omnibus Reply, the Debtor also filed the declaration of William C. Kosturos, Chief Restructuring Officer of SVB (the "Kosturos Declaration," ECF Doc. # 1308) in support of confirmation. Annexed to the Kosturos Declaration is (i) a copy of the BP Trust I Indenture as Exhibit A and (ii) a copy of the BP Trust II Indenture as Exhibit B.

In addition, on July 18, 2024, each of the Official Committee of Unsecured Creditors (the "Committee" and its statement, the "UCC Statement," ECF Doc. # 1309) and an ad hoc group of holders or investment advisors or managers acting on behalf of holders of certain Senior Notes (the "Ad Hoc Noteholder Group" and its reply, the "Ad Hoc Noteholder Group Reply," ECF Doc. # 1310) filed statements in support of confirmation.[3]

On July 19, 2024, the Court entered a joint pretrial order (the "Joint Pretrial Order," ECF Doc. # 1319), which sets forth, among other things, certain stipulated facts between the Debtor and the FDIC. The Court held a hearing on confirmation of the Plan on July 24, 2024 (the "Confirmation Hearing"). At the Confirmation Hearing, the Debtor and the FDIC notified the Court that the FDIC Non-Setoff Objections were resolved. (*See* July 24, 2024 Hr'g Tr. at 69:7–8 (notifying the Court that the Debtor "reached an agreement" with the FDIC on the FDIC Non-Setoff Objections).) Accordingly, this Opinion addresses the remainder of the FDIC Objection, which is comprised of the FDIC Setoff Objection.

At the Confirmation Hearing, the Court directed the FDIC-R1 to "file one or more declarations with supporting exhibits that show precisely what the flow of funds or paper account records reflect the transfer of the 1.9 billion dollars from one entity to another." (*See* July 24, 2024 Hr'g Tr. at 143:17–20.) In accordance with the foregoing, the FDIC-R1 filed the *Second*

---

[3]     The Ad Hoc Noteholder Group Reply also responds to the Hildene Objection, which has been overruled as set forth in the Confirmation Order.

A86

*Amended Declaration of Luis Mayorga Pursuant to Court's Direction at the July 24, 2024, Confirmation Hearing* (the "Mayorga Declaration," ECF Doc. # 1351) on July 28, 2024.  One day later, the Debtor filed the *Declaration of Robert A. Sacks* (the "Sacks Declaration," ECF Doc. # 1353) in response to the Mayorga Declaration.

For the reasons discussed, the Court **SUSTAINS** the FDIC Objection.

## I.    BACKGROUND

### A.  Relevant Events Preceding the Debtor's Chapter 11 Filing

Prior to March 10, 2023, the Debtor owned and operated Silicon Valley Bank ("SVB"), a California-chartered bank, through which the Debtor offered commercial and private banking products and services.  (Disclosure Statement, Art. II(A).)  On March 10, 2023, the California Department of Financial Protection and Innovation closed SVB and appointed FDIC-R1 as receiver for SVB.  (Joint Pretrial Order at 3.)

On March 13, 2023, following the Treasury Secretary's declaration of a systemic risk exception on March 12, 2023, the Debtor had deposit accounts at Silicon Valley Bridge Bank, N.A. ("Bridge Bank") with a combined balance of approximately $2.1 billion as of the opening of business.  (*Id.*)  Between March 13–16, 2023, the Debtor withdrew funds from those accounts. (*Id.*)

On or about March 15, 2023, FDIC-R1 purported to recall the account liability from Bridge Bank to prevent the Debtor from withdrawing funds from its deposit accounts and sought Bridge Bank's reversal of the wire withdrawals that the Debtor had previously initiated from that account.  (*Id.*)

5

A87

**B. Relevant Case History**

1. The Chapter 11 Case

On March 17, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief

(the "Petition," ECF Doc. # 1) under chapter 11 of the Bankruptcy Code. (Disclosure Statement,

Art. I.) On March 28, 2023, the UST appointed the Committee. (*Id.*, Art. III(C).)

In addition to the Committee, two ad hoc groups have also formed: (i) an ad hoc group of

certain holders, or investment advisors managing or acting on behalf of holders of certain Senior

Notes and Preferred Stock issued by the Debtor (the "Ad Hoc Group of Senior Noteholders")

and (ii) an ad hoc group of holders, or investment advisors, sub-advisors, or managers of holders,

of certain Senior Notes and preferred stock issued by the Debtor (the "Ad Hoc Cross-Holder

Group"). (*Id.*, Art. III(D), (E).)

On June 29, 2023, the Court entered an order approving the Debtor's motion to establish

deadlines for filing of proofs of claim (the "Bar Date Order," ECF Doc. # 373), which

established September 14, 2023 at 4:00 p.m. (EST) as the deadline for governmental units to file

proofs of claim against the Debtor (the "Government Bar Date"). (Bar Date Order ¶ 4.)

The FDIC acknowledges that it did not file proofs of claim in this bankruptcy case and

"[has] not invoked this Court's claims allowance process" notwithstanding the FDIC-R1's

awareness of the Government Bar Date and the "subject matter for which it claims defensive

setoff rights." (FDIC Objection ¶ 10; Joint Pretrial Order at 6 ("FDIC-R1 was aware of the

September 14, 2023 deadline for governmental units to file claims . . . .").) The FDIC-R1 does

not dispute that it "could have filed a proof of claim based on the subject matter of those rights,"

but did not. (*Id.*) Such claims, it states, "were and remain under investigation." (*Id.*) In other

words, the FDIC-R1 made a determination, prior to the Government Bar Date, to not file a claim

6

in this proceeding based on the subject matter for which it claims to have defensive setoff rights. (*Id.*)

### 2. The Adversary Proceeding and the Withdrawal of the Reference

On July 9, 2023, the Debtor commenced adversary proceeding no. 23-01137 (MG) (the "Adversary Proceeding" and related complaint, the "Adversary Complaint") against the FDIC in its corporate capacity, FDIC-R1, and FDIC-R2. (FDIC Objection ¶ 6; Joint Pretrial Order at 5.) Count II of the Adversary Complaint asserts a claim for turnover pursuant to section 542 of the Bankruptcy Code against the FDIC for the turnover of the "Deposit Account" that the Debtor asserts had a balance of $1,933,805,708.13 as of the Petition Date (the "Deposit Claim"). (FDIC Objection ¶ 6.) Relatedly, count IV of the Adversary Complaint seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and asks the Court to determine the rights of FDIC-R1 with respect to setting off against the Deposit Claim. (*Id.*)

On December 13, 2023, the U.S. District Court for the Southern District of New York withdrew the reference of the Adversary Complaint, which is pending in District Court as Civil Action No. 23-7218 (JPC) (the "S.D.N.Y. Action"). (*Id.* ¶ 7.) The S.D.N.Y. Action remains pending in District Court but is currently stayed pending further developments in the litigation in the Northern District of California. (Joint Pretrial Order at 6–7.)

### 3. The Debtor's Asserted Claims in the FIRREA Process

Pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), the FDIC established July 10, 2023, as the claims bar date (the "FDIC Bar Date"). (FDIC Objection ¶ 9.) On the FDIC Bar Date, the Debtor filed three claims against each of FDIC-R1 and FDIC-R2: (i) a $1.93 billion claim on account of the Deposit Claim; (ii) a second claim in an unidentified amount for deferred compensation plan participants (the "Deferred

A89

Compensation Claim"); and a (iii) third claim in a contingent and unliquidated amount for alleged actions or omissions of the FDIC (such as allegedly selling the assets of SVB for less than their value) (the "Damages Claim" and together with the Deposit Claim and the Deferred Compensation Claim, the "Claims"). (*Id.*; *see also* Joint Pretrial Order at 5.) The FDIC notes that the Deposit Claim and the Damages Claim are based on the same allegations as the Adversary Complaint that is now before the District Court. (FDIC Objection ¶ 9.)

On January 5, 2024, FDIC-R1 disallowed the Deposit Claim because it was "not proven to the satisfaction of the receiver due to the receiver's defenses," and FDIC-R2 denied the claim because it was not a liability of Bridge Bank. (*Id.* ¶ 11.) Notably, the *Notice of Disallowance of Claim* concerning the Deposit Claim did not specifically identify those defenses, including any alleged right of setoff. (Joint Pretrial Order at 7.) All other Claims were "denied as speculative, unsupportable, or otherwise not proven to the satisfaction of the receiver." (FDIC Objection ¶ 11.)

### 4.  The Pending Action in the Northern District of California

On March 5, 2024, the Debtor commenced an action against the FDIC in the U.S. District Court for the Northern District of California (the "N.D. Cal. Action" and the complaint, the "N.D. Cal. Complaint"). (*Id.* ¶ 12.) The N.D. Cal. Complaint asserts 11 counts against the FDIC with respect to the Deposit Claim and raises identical issues to those in the S.D.N.Y. Action. (*Id.* ¶¶ 13–14.)

### C.  The Chapter 11 Plan

On May 30, 2024, the Court entered an order (the "Disclosure Statement Order," ECF Doc. # 1172) approving the Disclosure Statement, which was filed in connection with the fifth iteration of the Plan (ECF Doc. # 1178), the solicitation version of the Plan.

A90

On July 9, 2024, the Debtor filed the sixth iteration of the Plan (ECF Doc. # 1276).  That version of the Plan reflected (i) modifications disclosed in the *Notice of Agreed Plan Modifications* (the "Plan Modification Notice," ECF Doc. # 1208), including those reflecting agreements reached with the Ad Hoc Cross-Holder Group and (ii) "additional clarifications based on discussions with other parties-in-interest."  (Plan at 2.)  Subsequently, the Debtor filed the seventh iteration of the Plan (ECF Doc. # 1303) on July 18, 2024, "reflecting certain clarifications based on discussions with other parties-in-interest."  (*Id.*)  The Debtor further revised the Plan and, on July 24, 2024, filed the version of the Plan that is before the Court for its consideration.

### D.  The FDIC Setoff Objection[4]

The FDIC asserts that the section 10.7 of the Plan improperly extinguishes FDIC-R1's defensive setoff rights.[5]  (FDIC Objection ¶¶ 1, 16.)  Section 10.7 of the Plan provides, in relevant part:

> In no event will any Person or Entity be entitled to set off any Claim or Interest against any Claim or Interest, right, or Cause of Action and Defense of the Debtor, the Liquidating Trust or NewCo, as applicable, in any judicial or administrative proceeding, unless such Person or Entity has filed a Proof of Claim in this Chapter 11 Case preserving such setoff and a Final Order of the Bankruptcy Court has been entered, authorizing and approving such setoff.

(Plan § 10.7.)

As FDIC-R1 has not filed a proof of claim, the FDIC argues that section 10.7 eliminates FDIC-R1's defensive setoff rights.  (FDIC Objection ¶ 16.)

---

[4]    As the Debtor and the FDIC have resolved the FDIC Non-Setoff Objections, the Opinion addresses solely the FDIC Setoff Objection.

[5]    The FDIC also highlights section 4.2.9(ii) of the Plan, which it argues authorizes the Debtor to release Intercompany Claims against the Debtor that are owned by FDIC-R1 and serve as the basis for its defensive setoff rights.  (FDIC Objection ¶ 17.)

9

The foregoing is improper, the FDIC argues, because the FDIC-R1's defensive setoff rights are pending before the District Courts in the Southern District of New York and the Northern District of California, the latter of which has exclusive jurisdiction over the Claims and FDIC-R1's defensive setoff rights pursuant to 12 U.S.C. § 1821(d)(6)(A).  (*Id.* ¶¶ 1, 18, 20–21; *see also id.* ¶ 22 (arguing that the N.D. Cal. Action is the "only forum in which FDIC-R1's defensive setoff rights can be adjudicated").)  A release or extinguishment of the FDIC-R1's defensive setoff rights here, the FDIC maintains, would "unequivocally restrain or affect the FDIC-R1's powers under 12 U.S.C. § 1821(d)(2)(A)."  (*Id.* ¶ 23.)  Additionally, the FDIC argues, the District Court for the Southern District of New York, which has withdrawn the reference over the Debtor's claims in the Adversary Proceeding, possesses jurisdiction over the FDIC-R1's setoff rights that are pending in the S.D.N.Y. Action and divested this Court of jurisdiction.  (*Id.* ¶ 28.)

Moreover, the FDIC further argues that even if such setoff rights were not subject to the exclusive jurisdiction of another court (*i.e.*, the District Courts for Southern District of New York and the Northern District of California), section 553 of the Bankruptcy Code nonetheless preserves the FDIC-R1's setoff rights.  (*Id.* ¶¶ 1, 18, 29–30.)  It notes that the FDIC-R1 has "consistently asserted" and provided notice of its defensive setoff rights throughout the pendency of this chapter 11 case and in the Adversary Proceeding.  (*See id.* ¶¶ 32–34, 36–37; *see also id.* ¶ 35 (indicating that the FDIC-R1 asserted its right to defensive setoff in the S.D.N.Y. Action).)  The FDIC also maintains that it was not required to file a proof of claim to preserve its rights to setoff.  (*Id.* ¶ 38.)

A92

To address the foregoing, the FDIC proposed language to be included in any order confirming the Plan that would resolve its objection.[6] (*See id.* ¶ 40.)

### E. The Debtor's Reply to the FDIC Setoff Objection

The Debtor opposes the FDIC Setoff Objection on five grounds: (i) the FDIC lacks constitutional and statutory authority to bring the FDIC Objection; (ii) section 553 of the Bankruptcy Code does not preserve the FDIC-R1's purported setoff from discharge; (iii) the FDIC-R1 forfeited any setoff claims when it failed to file a proof of claim or seek stay relief; (iv) notwithstanding, equitable principles dictate that the Court exercise its discretionary authority to overrule the FDIC Objection; and (v) FIRREA is inapplicable as its administrative process is limited to "claims against a depository institution." (*See* Debtor Reply ¶ 2.)

### F. The Committee's Statement in Response to the FDIC Setoff Objection

The Committee joins in support of the Debtor Reply and separately argues that the FDIC Setoff Objection is meritless and should be overruled. (*See* UCC Statement ¶ 3.) First, the Committee asserts that the FDIC has failed to file a proof of claim, and, therefore, it is appropriately barred by the Plan from asserting setoff claims or defenses in any future litigation. (*Id.* ¶ 4.) The Committee emphasizes that the FDIC deliberately chose not to file a proof of claim to secure a "more favorable venue and to delay having to substantiate and litigate its

---

[6] In addition, annexed to the FDIC Objection is (i) a list of relevant Plan provisions as Schedule 1; (ii) the Adversary Complaint as Exhibit A; (iii) the Opinion and Order issued in the S.D.N.Y. Action on December 13, 2023 as Exhibit B; (iv) copies of claims filed by the Debtor against the FDIC-R1 in the FIRREA claims process as Exhibit C; (v) copies of claims filed by the Debtor against the FDIC-R2 in the FIRREA claims process as Exhibit D; (vi) the N.D. Cal. Complaint as Exhibit E; (vii) the March 21, 2023 hearing transcript as Exhibit F; (viii) the May 17, 2023 hearing transcript as Exhibit G; (ix) the April 26, 2023 hearing transcript as Exhibit H; (x) the *Statement of the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank, Pursuant to the Court's Direction at the April 26, 2023 Hearing* (ECF Doc. # 145) as Exhibit I; (xi) the FDIC-R1's memorandum of law in support of its motion to dismiss filed in the Adversary Proceeding as Exhibit J; (xii) the FDIC-R1's reply in support of its motion to dismiss filed in the Adversary Proceeding as Exhibit K; (xiii) the October 19, 2023 hearing transcript as Exhibit L; (xiv) the *Statement of the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank Regarding its Defensive Setoff Rights Against SVB Financial Group* (ECF Doc. # 1081) as Exhibit M; (xv) the FDIC-R1's objection to the Disclosure Statement (ECF Doc. # 1111) as Exhibit N; and (xvi) the Amended Tax Allocation Agreement (ECF Doc. # 167-1) as Exhibit O.

A93

alleged claims." (*Id.*) The Committee concludes that the FDIC should not be allowed to object to the Plan's language "bar[ring] future assertion of unfiled claims," especially after disregarding the claim deadline set by the Court. (*Id.*) Second, the Committee disagrees with the FDIC's classification of its claims as "defensive setoff claims." (*Id.* ¶ 5.) The UCC Statement states that the FDIC's claims are "quintessential 'Claims'" against the Debtor's estate and the fact that maximum potential recovery on these claims is capped to the $1.93 billion the FDIC owes the Debtor does not change the analysis. (*Id.*) The Committee reiterates that the FDIC should have identified and preserved its setoff claim but failed to do so. (*Id.*) Accordingly, the FDIC should face the consequences of violating the deadline to file proofs of claims. (*Id.*) The Committee maintains that any other result will undermine core bankruptcy purposes such as ensuring finality and allowing the Debtor to have a "fresh start." (*Id.*)

## II.    LEGAL STANDARD

### A.  Standing in a Bankruptcy Case

Generally, to have standing in bankruptcy court, a party must possess: (i) prudential standing; (ii) constitutional standing; and (iii) standing under section 1109 of the Bankruptcy Code. *In re Motors Liquidation Co.*, 580 B.R. 319, 340 (Bankr. S.D.N.Y. 2018); *see In re Old Carco LLC*, 500 B.R. 683, 690 (Bankr. S.D.N.Y. 2013) (indicating that a party invoking federal jurisdiction bears the burden to establish that it meets "(1) Article III's constitutional requirements, (2) federal court prudential standing requirements, and (3) the 'party in interest' requirements under Bankruptcy Code 1109(b).").  "All three standing requirements must be met to have standing." *Motors Liquidation*, 580 B.R. at 340.

A94

1. Prudential Standing

First, a party seeking to appear in federal court must demonstrate prudential standing. *See Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 644 (2d Cir. 1988) (stating that "[t]he prudential concerns limiting third-party standing are particularly relevant in the bankruptcy context. Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself."). The doctrine, self-imposed by federal courts, bars litigants "from asserting the constitutional and statutory rights of others in an effort to obtain relief for injury to themselves." *See id.* at 643 (holding that a creditor with an existing asbestos claim lacked standing to assert the rights of future claimants).

2. Constitutional Standing

Once a party has shown that it has prudential standing, it then must prove that it has constitutional standing. Specifically, under the "case or controversy" requirement of Article III of the United States Constitution, a party "must have a 'personal stake in the outcome of the controversy'" to have standing. *Breeden v. Kirkpatrick & Lockhart, LLP*, 268 B.R. 704, 708 (S.D.N.Y. 2001) (citation omitted), *aff'd sub nom. Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Grp.)*, 336 F.3d 94 (2d Cir. 2003). Similar to the prudential standing requirements, "[a] party can only assert its own legal rights and cannot assert the rights of third-parties." *Id.* Furthermore, "[t]he Art[icle] III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

13

A95

To prove constitutional standing, a party must establish "an invasion of a legally

protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural

or hypothetical." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 560–61 (1992)).

### 3. Party-in-Interest Standing

Section 1109(b) of the Bankruptcy Code states, in relevant part, that "[a] party in interest,

including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a

creditor, an equity security holder, or any indenture trustee may raise and may appear and be

heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b); *see also id.* § 1128(b)

(providing that "part[ies] in interest may object to confirmation of a plan"). These interested

parties are non-exclusive. *See In re Residential Cap., LLC*, No. 12-12020 (MG), 2013 WL

6698365, at *3 (Bankr. S.D.N.Y. Dec. 19, 2013) (explaining that "[i]n the context of chapter 11

cases, the Code provides a non-exclusive listing of 'parties in interest'").

The phrase, "any issue in a case," generally "grants a right to raise, appear and be heard

on *any issue* regardless [of] whether it arises in a contested matter or an adversary proceeding."

*Term Loan Holder Comm. v. Ozer Grp. LLC, et al. (In re Caldor Corp.)*, 303 F.3d 161, 169 (2d

Cir. 2002) (emphasis in original). In applying section 1109(b), "[c]ourts must determine on a

case by case basis whether the prospective party in interest has a sufficient stake in the

proceeding so as to require representation." *Lazard v. Texaco Inc. (In re Texaco Inc.)*, 81 B.R.

820, 828 (Bankr. S.D.N.Y. 1988) (citing *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d. Cir.

1985)).

A96

## B. Setoff

Section 553(a) of the Bankruptcy Code provides, in relevant part, that:

> (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—
>
> > (1) the claim of such creditor against the debtor is disallowed; . . .
> >
> > (3) the debt owed to the debtor by such creditor was incurred by such creditor—
> >
> > > (A) after 90 days before the date of the filing of the petition;
> > >
> > > (B) while the debtor was insolvent; and
> > >
> > > (C) for the purpose of obtaining a right of setoff against the debtor (except for a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, or 561).

11 U.S.C. § 553(a).

"Section 553(a) of Title 11 of the United States Code does not create a right of setoff, but rather preserves whatever right exists under applicable non-bankruptcy law." *Off. Comm. of Unsecured Creditors v. Mfrs. & Traders Tr. Co. (In re Bennett Funding Grp.)*, 146 F.3d 136, 138–39 (2d Cir. 1998) (footnote omitted); *see also Bank of Am. v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*, 439 B.R. 811, 823 (Bankr. S.D.N.Y. 2010) ("Section 553 of the Bankruptcy Code does not provide for an independent right of setoff[.]"); *In re Delta Air Lines*, 341 B.R. 439, 443 (Bankr. S.D.N.Y. 2006) ("Section 553 does not create a federal right of setoff, nor does it enhance, diminish or otherwise modify any state law right of setoff."); *In re McLean Indus., Inc.*, 90 B.R. 614, 618 (Bankr. S.D.N.Y. 1988) ("Section 553 is, however, not an independent source of a right to setoff; rather, it recognizes and preserves, but does not define,

15

A97

the common law right of setoff under nonbankruptcy law. A creditor seeking to setoff a debt

under Title 11, therefore, must establish a claim and a right to setoff by applying the law of the

state where the operative facts occurred . . . . Section 553, moreover, does not expand

nonbankruptcy rights and clearly provides that the automatic stay provisions of section 362 limit

post-petition setoff rights, requiring creditors to obtain court permission before taking any action

against the property of the estate." (internal citations omitted)).

Therefore, in order to establish a right to setoff under section 553, a creditor must first

demonstrate a preexisting right of setoff under non-bankruptcy or state law. *In re Corp. Res.

Servs., Inc.*, 564 B.R. 196, 203 (Bankr. S.D.N.Y. 2017); *see also In re WL Homes LLC*, 471 B.R.

349, 352 (Bankr. D. Del. 2012) (stating that creditor must "first establish its right to setoff by

finding an independent right of setoff under non-bankruptcy law"); *Charles Russell, LLP v.

HSBC Bank USA, N.A. (In re Awal Bank, BSC)*, 455 B.R. 73, 87 (Bankr. S.D.N.Y. 2011)

("[Section] 553 requires the court to analyze the applicable nonbankruptcy law before dealing

with a set-off[.]").

The creditor asserting the right to setoff has the burden to establish that the right to setoff

exists. *See Geron v. Schulman (In re Manshul Constr. Corp.)*, Nos. 96B44080 (JHG), 96B44079

(JHG), 97 CIV. 8851 (JGK), 99 CIV. 2825 (JGK), 2000 WL 1228866, at *56 (S.D.N.Y. Aug. 30,

2000); *McLean Indus., Inc.*, 90 B.R. at 618 ("The burden of proof, moreover, squarely rests with

[the creditor] in demonstrating its entitlement to setoff in light of the facts of this case." (citing

*Pester Ref. Co. v. Mapco Gas Prods., Inc. (Matter of Pester Ref. Co.)*, 845 F.2d 1476, 1486 (8th

Cir. 1988) (stating that burden is on creditors to establish valid rights of setoff))). *See also Glob.

Cable, Inc. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, No. 02 Civ. 9770

16

(RCC), 2006 WL 1559437, at *4 (S.D.N.Y. June 7, 2006) (indicating that the burden of proving

mutuality rests with the creditor).

### III.   DISCUSSION

### A.  The FDIC-R1 Has Standing to Bring the FDIC Setoff Objection

The Debtor contends that the FDIC lacks standing to object to confirmation of the Plan

because the FDIC has failed to (i) plead or present facts to support a "concrete and

particularized" and "actual or imminent" injury or seek other relief; and (ii) file a proof of claim.

(Debtor Reply ¶¶ 23–26.)  While the Debtor Reply initially opposed the FDIC's standing,

Debtor's counsel stated at the Confirmation Hearing that the FDIC Setoff Objection, while

asserted by the FDIC, is truly an objection by the FDIC-R1.  (*See* July 24, 2024 Hr'g Tr. at

79:15–21 ("We're here with an objection by the FDIC to section 10.7 of the [P]lan, which has

the effect of ending any set-off rights they may have.  Now, the FDIC, it's an objection by the

FDIC-R1, which is the receiver for [SVB] as distinct from the FDIC-R2, which is the receiver

for Bridge Bank.").)  Accordingly, the Debtor opposes the standing of the FDIC-R1 to object to

confirmation of the Plan.  (*See Notice of Filing of Confirmation Hearing Presentation* (the

"Debtor Confirmation Presentation," ECF Doc. # 1330) at 7 ("FDIC-R1 Lacks Standing to

Object to the Plan").)  For the reasons discussed below, the Debtor's assertions are unavailing.

"Whether a claimant has standing is 'the threshold question in every federal case,

determining the power of the court to entertain the suit.'"  *Licensing by Paolo, Inc. v. Sinatra (In*

*re Gucci)*, 126 F.3d 380, 387–88 (2d Cir. 1997) (quoting *Warth*, 422 U.S. at 498); *see also In re*

*Teligent, Inc.*, 417 B.R. 197, 209 (Bankr. S.D.N.Y. 2009) ("Standing is a threshold issue in every

federal litigation.").  "When a plaintiff lacks standing to bring a suit, the court does not have

subject matter jurisdiction to hear their claim."  *In re Genesis Glob. Holdco, LLC*, No. 23-10063

A99

(SHL), 2024 WL 2264719, at *32 (Bankr. S.D.N.Y. May 17, 2024).  In other words, standing

determines "whether the litigant is entitled to have the court decide the merits of the dispute or of

particular issues."  *Warth*, 422 U.S. at 498.

Here, while the FDIC-R1 has not invoked the Court's claims allowance process by filing

a proof of claim, the Plan nonetheless seeks to extinguish whatever defensive setoff rights the

FDIC-R1 may possess in the pending S.D.N.Y. Action and N.D. Cal. Action.  It goes without

saying that it was the Debtor who commenced the N.D. Cal. Action and the Adversary

Proceeding that is now before the District Court in the Southern District of New York, asserting

claims against the FDIC-R1, among others.  And it is these claims against which the FDIC-R1

believes it possesses "defensive setoff rights" that the Plan now seeks to irrevocably discharge.

The Plan's discharge of these defensive setoff rights undoubtedly impacts the FDIC-R1's

pecuniary interest as it forecloses one possible avenue for the FDIC-R1 to reduce its liability, if

any, to the Debtor.  The validity and merits of such defensive setoff rights, as will be discussed

in greater detail below, is ultimately a matter for the applicable district court to address.

Therefore, the FDIC-R1, in asserting its own legal rights and interests, has satisfied the

requirement of prudential standing.  *See In re Quigley*, 391 B.R. 695, 702 (Bankr. S.D.N.Y.

2008) (providing that prudential standing is established when a "plaintiff . . . assert[s] his own

legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

parties" (quoting *Ward*, 422 U.S. at 499)).  Moreover, given the possible direct impact of the

Plan's discharge on the FDIC-R1's pecuniary interest in both a concrete and particularized

manner, the FDIC-R1 also possesses Article III and party-in-interest standing to object to

confirmation on such grounds.  *See In re Innkeepers USA Trust*, 448 B.R. 131, 141 (Bankr.

S.D.N.Y. 2011) ("[A] party in interest is one that has a sufficient interest in the outcome of the

A100

case that would require representation, or a pecuniary interest that will be directly affected by the case."); *Teligent*, 417 B.R. at 210 ("Generally, a 'party in interest' with respect to a particular issue will also meet the requirement for Article III standing with respect to that issue. . . . Thus, the inquiries overlap." (citations omitted)); *In re Motors Liquidation*, 430 B.R. 65, 92 (S.D.N.Y. 2010) ("An injury in fact is an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." (internal citations and quotations omitted)).

Lastly, the Debtor's contention that the FDIC-R1 is out of luck because it failed to file a proof of claim is unpersuasive. This Court has previously recognized that "a creditor or party in interest need not file a proof of claim to obtain standing in a bankruptcy case." *In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 188 (Bankr. S.D.N.Y. 2012). Rather, filing a proof of claim "is only required for a creditor to have voting and distribution rights." *Id.* at 188–89 (citing references).

Accordingly, the Court concludes that the FDIC-R1 possesses standing to assert the FDIC Setoff Objection.

### B. The FDIC-R1's Defensive Setoff Rights Are Preserved

The Debtor's purported reasons for extinguishing the FDIC-R1's defensive right to setoff are unpersuasive. Specifically, two of the Debtor's arguments are relevant here.[7] First, the Debtor states that the FDIC-R1's setoff rights are excluded from protection under section 553(a)(3) of the Bankruptcy Code. (Debtor Reply ¶¶ 27, 29.) And second, the Debtor claims that the FDIC-R1 has forfeited its setoff rights by failing to file a proof of claim in these chapter

---

[7]     The Debtor advances a total of four arguments in favor of overruling the FDIC Objection. However, only two of them directly implicate the establishment and preservation of the FDIC-R1's right to setoff, and, therefore, are considered here. (Debtor Reply ¶ 27.)

19

A101

11 cases.  (*Id.* ¶ 27.)  For the reasons discussed below, the Court disagrees with the Debtor's

conclusion and finds that the FDIC-R1's ability to assert defensive setoff rights are preserved.

### 1.  The FDIC-R1 Holds Defensive Setoff Rights

As an initial matter, the Debtor maintains that defensive setoff rights are "claims" under

section 11 U.S.C. § 101(5), and, therefore, the FDIC-R1 lost its ability to assert such claims

when the claim deadline passed under the Bar Date Order.  (*Id.* ¶¶ 9, 41, 45; Debtor

Confirmation Presentation at 5.)  In relevant part, under section 101(5), a claim is defined as:

> (A)  right to payment, whether or not such right is reduced to judgment,
> liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,
> undisputed, legal, equitable, secured, or unsecured; or
>
> (B)  right to an equitable remedy for breach of performance if such breach
> gives rise to a right to payment, whether or not such right to an equitable
> remedy is reduced to judgment, fixed, contingent, matured, unmatured,
> disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

However, courts have noted that a defensive setoff is substantively different from a

"claim."  For instance, in *Styler v. Jean Bob Inc. (In re Concept Clubs, Inc.)*, 154 B.R. 581 (D.

Utah 1993), the court there noted that "when setoff is raised only as an affirmative defense

seeking to reduce, or extinguish, the original claim, the party asserting the claim does not invoke

the bankruptcy court's equitable jurisdiction . . . ."  *Id.* at 589.  The court emphasized that "an

affirmative recovery raised through setoff implicates the allowance and disallowance of claims

against the estate . . . ."  *Id.*  The *Concept Clubs* court relied on the Tenth Circuit's reasoning in

*In re G.S. Omni Corp.*, where the court held that a defendant need not file a proof of claim to

assert a right of setoff.  *Turner v. United States (In re G.S. Omni Corp.)*, 835 F.2d 1317, 1319

(10th Cir. 1987).  Notably, the *Omni Corp.* court drew a distinction between affirmative relief

and defensive relief, stating:

A102

> ***Setoff must be distinguished from a claim requesting a distribution from the liquidation of an estate***. Here the Government sought only to exercise its right to a setoff as a defense to the turnover action. Instead of seeking a distribution from the liquidation of the estate or double recovery, the Government attempted to satisfy its claim only to the extent of the money due from the Government to the debtor. As long as the debt owed the Government continued to exist, the Government had the right to do so.

*Id.* at 1319 (emphasis added).

However, it is important to note that some courts disagree with this approach and hold that there is no distinction between asserting a setoff as a claim and asserting setoff as a defense. *See, e.g.*, *In re Com. Fin. Servs., Inc.*, 251 B.R. 397, 406 (Bankr. N.D. Okla. 2000) (disagreeing with the court's conclusions in *Concept Clubs*).

Nonetheless, this Court concludes that there is material difference between a defensive claim for setoff and a claim that seeks similar relief on an affirmative basis against a debtor or its estate. Here, the FDIC-R1 is not attempting to affirmatively recover from the Debtor's estate. Instead, the FDIC-R1 is interested in using the setoff defensively to extinguish or reduce its potential obligation to the Debtor. At the Confirmation Hearing, counsel to the Debtor and the Ad Hoc Cross-Holder Group emphasized that the Plan could be confirmed and go effective even if the FDIC Setoff Objection remained unresolved. (*See* July 24, 2024 Hr'g Tr. at 73:1–8, 74:7–9.) Notably, counsel for the Ad Hoc Cross-Holder Group further noted that "***[the setoff] is not money that would come out of the estate***. This is a question of just how much money we get back from the FDIC." (*Id.* (emphasis added)). Accordingly, the FDIC-R1's purported setoff right is defensive and does not affirmatively implicate the Debtor's estate.

### 2. The FDIC-R1's Right to Defensive Setoff is Not Precluded by 11 U.S.C. § 553(a)(3)

A creditor's right of setoff is governed by section 553 of the Bankruptcy Code. Notably, however, section 553 *does not* create a right of setoff, but preserves the right if it exists under

A103

applicable non-bankruptcy law. *See Cairns & Assocs., Inc. v. Conopco, Inc. (In re Cairns &*

*Assocs., Inc.)*, 372 B.R. 637, 660 (Bankr. S.D.N.Y. 2007) (citing *In re Bennett Funding Grp.,*

*Inc.*, 212 B.R. 206, 211 (2d Cir. BAP 1997)); *see also Citizens Bank of Maryland v. Strumpf*, 516

U.S. 16, 18 (1995) ("Although no federal right of setoff is created by the Bankruptcy Code, 11

U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists

is preserved in bankruptcy.").  Here, the applicable non-bankruptcy law is 12 U.S.C. § 1822(d),

which "has been found to create a federal statutory right to setoff."[8]  *Villafane Neris v. Citibank,*

*N.A.*, 845 F. Supp. 930, 934 (D.P.R. 1994); *see also FDIC v. Colonial BancGroup, Inc.(In re*

*Colonial BancGroup, Inc.)*, No. 2:11cv133 (WO), 2012 U.S. Dist. LEXIS 957, at *8 (M.D. Ala.

Jan. 4, 2012) (collecting cases).  Specifically, section 1822(d) provides that:

> [The FDIC] may withhold payment of such portion of the insured deposit
> of any depositor in a depository institution in default as may be required to
> provide for the payment of any liability of such depositor to the depository
> institution in default or its receiver, which is not offset against a claim due
> from such depository institution pending the determination and payment of
> such liability by such depositor or any other person liable therefor.

12 U.S.C. § 1822.

Critically, section 1822(d) does not modify the substantive requirements for setoff under

the Bankruptcy Code.  *See In re Colonial BancGroup*, 2012 U.S. Dist. LEXIS 957, at *9

("Section 1822(d) does not add substantive criteria to those necessary for offset already

embodied in § 553.").  Therefore, the Court must assess whether the FDIC-R1 has established

the requirements under section 553: "(1) the debtor must owe a debt to the creditor which arose

---

[8]     The FDIC has also asserted that it has a common law right of setoff by virtue of 12
U.S.C.§ 1821(d)(2)(A)(i), which allows the FDIC to "succeed[] to SVB's common law right of setoff with respect to
all claims by and between SVB and SVBFG." (*See* ECF Doc. # 145 at 3.)  Furthermore, the FDIC claims that it has
succeeded to "all [of] SVB's contractual setoff rights against SVBFG." (*Id.* at 4.)  However, the Court need not to
analyze these bases for setoff to resolve the issue.

A104

prepetition; (2) the debtor must have a claim against the creditor which arose prepetition; and (3) the debt and claim must be mutual." *In re Cairns & Assocs.*, 372 B.R. at 660 (citation omitted).

> a. *The FDIC-R1's Defensive Setoff Rights Satisfy Section 553 Requirements*

Here, the FDIC-R1's defensive setoff rights satisfy all three of the section 553 requirements. First, the Debtor "owes" a debt to the FDIC-R1, in its capacity as receiver for SVB, which arose in the prepetition period. By operation of 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC-R1 has succeeded to "all rights, titles, powers and privileges of [SVB], and of any stockholder, member, accountholder, depositor, officer or director of [SVB] with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i). Accordingly, the FDIC-R1 stands in the shoes of SVB and has the authority to bring claims against the Debtor.

On May 2, 2024, the FDIC-R1 filed the *Statement of the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank Regarding its Defensive Setoff Rights Against SVB Financial Group* (the "FDIC-R1 Statement," ECF Doc. # 1081). The FDIC-R1 had filed the FDIC-R1 Statement in the N.D. Cal. Action as well, but Judge Freeman struck the statement and noted that the "[FDIC-R1 Statement] [did] nothing to advance [the] litigation and request[ed] no relief." (ECF Doc. # 1096.) The Court need not discuss the propriety and legal effect of the FDIC-R1 Statement, other than to note it sets out the alleged bases of the FDIC-R1's claims against the Debtor. (*See generally* FDIC-R1 Statement.) The FDIC-R1 alleges that the debt owed to it by the Debtor arose in the prepetition period. (*Id.*) Of course, the FDIC-R1 has not asserted its defensive setoff rights in this Court or the N.D. Cal. Action.[9] Accordingly, the underlying claims have not been briefed and argued. Nevertheless, the substance of the

---

[9]     Because the FDIC filed a motion to dismiss the Debtor's lawsuit, and the motion remains unresolved, the FDIC is not required by the Federal Rules of Civil Procedure to answer the complaint and plead any affirmative defenses and counterclaims.

A105

claims is beyond the scope of the Court's decision to preserve such setoff rights to be asserted in a future proceeding. The Court finds that the debts owed to the FDIC-R1 plausibly arose in the prepetition period, and the merits of the underlying claims may be addressed in the N.D. Cal. Action when the defensive setoff rights are formally asserted.

Second, the Debtor's claim against the FDIC-R1 arose in the prepetition period. The Debtor had deposited funds in SVB before the Petition Date, and, therefore, entered a "standard debtor-creditor relationship" with SVB at that time. *See In re Bennett Funding Grp.*, 146 F.3d at 139 ("Ordinarily, funds in a general deposit account can be used to setoff debts owed to the bank because when a depositor deposits funds into a general account he parts with title to the funds in exchange for a debt owed to him by the bank, thereby establishing a standard debtor-creditor relationship."). Following the collapse of SVB on March 10, 2023, the FDIC-R1 was appointed receiver and transferred "all deposits and substantially all assets" of SVB to the Bridge Bank. (ECF Doc. # 21 ¶ 10.) On March 13, 2023, the Debtor's deposit accounts at the Bridge Bank had a total balance of approximately $2.1 billion. (Joint Pretrial Order at 3.) The deposit accounts were purportedly transferred back to FDIC-R1's control on March 15, 2023. (*See* Debtor Confirmation Presentation at 11.) As noted above, under 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC-R1 inherited SVB's obligations as well, including the obligation on the Debtor's deposit accounts. *See* 12 U.S.C. § 1821(d)(2)(A)(i). Accordingly, the Debtor has a prepetition claim against the FDIC-R1.

Third, mutuality exists between the Debtor and the FDIC-R1. Notably, courts have generally construed mutuality strictly and emphasized that "a narrow interpretation of mutuality ensures that setoff is allowed only in situations in which the equitable considerations are strongest: namely where the claims or debts are owed between the same parties in the same right

24

**A106**

or capacity." *In re Cairns & Assocs., Inc.*, 372 B.R. at 660 (citing *In re Ionosphere Clubs, Inc.*, 164 B.R. 839, 843 (Bankr. S.D.N.Y.1994)).  Here, the Debtor disputes that mutuality exists and points to section 553(a)(3) to exclude the FDIC-R1's defensive setoff rights.  Specifically, section 553(a)(3) states that a right of setoff is not preserved where: "the debt owed to the debtor by such creditor was incurred by such creditor—(A) after 90 days before the date of the filing of the petition; (B) while the debtor was insolvent; and (C) for the purpose of obtaining a right of setoff against the debtor (except for a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 555, 556, 559, 560 or 561)."  11 U.S.C. § 553(a)(3).  The Debtor argues that on March 13, 2023, its deposit accounts were available at the Bridge Bank.  (Debtor Reply ¶ 32.) However, around March 15 "—two days before the Petition Date—FDIC-R1 purported to transfer that account liability from Bridge Bank to FDIC-R1."[10]  (*Id.*)  The Debtor concludes that the FDIC-R1's defensive setoff rights directly implicate section 553(a)(3) because the FDIC-R1 "incurred deposit liability to Debtor two days before Debtor's bankruptcy filing for the purposes of obtaining a setoff right against Debtor."  (*Id.*)  The Court disagrees with the Debtor's position.

It is uncontroversial that the FDIC-R1 had a mutual debt with the Debtor before the deposit accounts were transferred to the Bridge Bank pursuant to that certain Transfer Agreement dated March 13, 2023 (the "Transfer Agreement," ECF Doc. # 1351-1.)  The Debtor argues that the transfer of the deposit accounts to Bridge Bank disrupts mutuality and their subsequent return to the FDIC-R1's control offends section 553(a)(3).  (Debtor Reply ¶ 32.) However, the district court's analysis in *In re Colonial BancGroup* is instructive here.  *See*

---

[10]     The Court notes that there is a factual dispute between the Debtor and the FDIC-R1 regarding the movement of the Debtor's deposit accounts in the pre- and post-petition period.  (*See generally* Sacks Declaration (asserting, among other things, that "open issues" remain as to whether and when the Debtor's deposit accounts were transferred).)  However, as the Court has discussed, the merits of the FDIC-R1's setoff claims are for the applicable district court to decide.

A107

*generally In re Colonial BancGroup*, 2012 U.S. Dist. LEXIS 957. There, the district court analyzed whether mutuality between the FDIC and BancGroup (the debtor's holding company) was disrupted as a result of the purchase and assumption agreement (P&A), which transferred substantially all of the debtor's assets to Branch Banking and Trust Company ("BB&T") (including the six demand-deposit accounts owned by BancGroup). *Id.* at *3. The *Colonial BancGroup* court held that the P&A had not extinguished the FDIC's liability on the deposit accounts, and, therefore, mutuality between the parties survived despite BB&T also incurring liability. *Id.* at *14. The district court reasoned that first, and most compellingly, the "[FDIC's] liability to BancGroup was not addressed in the agreement and **could not be addressed in the agreement, for BancGroup was not a party to the agreement.**" *Id.* (emphasis added). Invoking basic principles of contract law, the district court maintained that a debtor (*i.e.*, the FDIC, on account of the deposit obligations) could not unilaterally modify its obligation to a creditor (*i.e.,* BancGroup). *Id.* Second, even if the P&A could alter the FDIC's obligations without BancGroup's consent, the language of the agreement showed that it did not intend to extinguish the FDIC's liability. *Id.* The *Colonial BancGroup* court analyzed the relevant provisions and found that they did not absolve the FDIC of liability on the deposit accounts that had been transferred to the BB&T, so mutuality persisted.

Here, mutuality exists for similar reasons. First, the Debtor was not a party to the Transfer Agreement, and, therefore, the agreement could not have unilaterally extinguished the FDIC-R1's liability without the Debtor's consent. (Transfer Agreement at 1.) As the court noted in *In re Colonial BancGroup*, under basic contract principles, the FDIC-R1 does not have the power to single-handedly modify its obligations to the Debtor via the Transfer Agreement.

A108

*See In re Colonial BancGroup*, 2012 U.S. Dist. LEXIS 957, at *18.  Accordingly, throughout the

relevant period and despite the various transfers, the FDIC maintained its liability.

Additionally, the provisions of the Transfer Agreement suggest that it was not meant to

eliminate the FDIC-R1's obligations to SVB's depositors, including the Debtor.  The Transfer

Agreement provided for "the transfer of certain Assumed Liabilities, including Assumed

Deposits, as between FDIC-R1 and Bridge Bank."  (Mayorga Declaration ¶ 6.)  However,

section 9.09 of the Transfer Agreement precludes the application of the agreement to third-party

beneficiaries, noting that:

> [T]he obligations and statements of responsibilities hereunder, and all other
> conditions and provisions hereof are *for the sole and exclusive benefit of
> the Receiver and the Bridge Bank, and the [FDIC] as an express, third-
> party beneficiary, and for the benefit of no other Person*.

(Transfer Agreement § 9.09 (emphasis added).)  Furthermore, section 4.04 clarifies that SVB

depositors retained the right to assert claims against the FDIC-R1 despite the Transfer

Agreement, stating:

> *If any depositor does not accept the obligation of the Bridge Bank to pay
> the liability of the Failed Bank related to Assumed Deposits and asserts a
> claim against the Receiver for all or any portion of any such liability, the
> Bridge Bank agrees to provide to the Receiver funds sufficient to pay such
> claim* in an amount not in excess of the liability related to the Assumed
> Deposit reflected on the books of the Bridge Bank . . . ."

(*Id.* § 4.04 (emphasis added).)

Taken together, these provisions show that whether the Bridge Bank was liable to

depositors in addition to the FDIC-R1 is immaterial.  The FDIC-R1 remained liable to

depositors throughout the process and expressly acknowledged its obligation in section

4.04 of the Transfer Agreement.  (*See id.*)  Accordingly, the Court finds that there is

mutuality.

A109

b.  *The Court Need Not Determine Whether the FDIC-R1's Defensive
Setoff Rights Are Sufficiently Liquid and Contingent*

The Debtor also attacks the FDIC-R1's defensive setoff rights for being "too contingent

to give it setoff rights."  (Debtor Reply ¶ 46.)  In support, the Debtor cites to this Court's

decision in *Corp. Res. Servs.*, 564 B.R. 196, where the Court determined the defendants could

not "set off [their] contingent claims, either as a defense in the adversary proceeding or as a

claim against these estates."  *Id.* at 208.  However, *Corp. Res. Servs.* is easily distinguished

because the defendants there sought to apply their purported setoff rights *in* the bankruptcy case.

*Id.*  Here, however, the FDIC-R1 does not intend to assert its defensive setoff rights in the

bankruptcy case but preserve them for the N.D. Cal. Action.  (*See* Debtor Reply ¶ 1 (noting that

the FDIC-R1 has not asserted any claims against the Debtor).)  Moreover, at the Confirmation

Hearing, counsel for the Debtor acknowledged that there was a pending motion to dismiss in the

N.D. Cal. Action, and the FDIC-R1's time to respond to the complaint had not run yet.  (*See* July

24, 2024 Hr'g Tr. at 91:23–92:2, 220:13–19.)  And, to date, the FDIC-R1 has not responded to

the N.D. Cal. Complaint.  Accordingly, the Court need not analyze the *merits* of the FDIC-R1's

defensive setoff rights, as that issue is neither issue before the Court nor necessary to decide

whether the FDIC-R1 may *preserve* the ability to assert such rights.

3.  The FDIC-R1 Was Not Required to File a Proof of Claim to Preserve Its
Defensive Setoff Rights

The Debtor argues that the FDIC-R1 has forfeited its defensive setoff rights by not filing

a proof of claim.  (Debtor Reply ¶ 2.)  The Court disagrees that filing a proof of claim is a

prerequisite to preserving a defensive setoff right.  Instead, case law in this district expressly

state that a defensive right of setoff can be preserved in the absence of a proof of claim.  *See,*

*e.g.*, *Bernstein v. IDT Corp. (In re Frigitemp Corp.)*, 76 B.R. 275, 281 (S.D.N.Y. 1987); *Thelen*

A110

*LLP v. Fontana (In re Thelen LLP)*, No. 09-15631 (MEW), Adv. Pro. No. 11-02648 (MEW), 2015 WL 4999972, at *7 (Bankr. S.D.N.Y. Aug. 21, 2015); *Geltzer v. Bloom (In re M. Silverman Laces, Inc.)*, 404 B.R. 345, 365 (Bankr. S.D.N.Y. 2009) ("***The clear majority and better view . . . is that filing a proof of claim is not a prerequisite to asserting an otherwise valid setoff***." (emphasis added)).  Other courts have also generally agreed that the absence of a proof of claim is not fatal to a right of setoff.  *See, e.g.*, *Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1539 (10th Cir. 1990) ("Accordingly, we reaffirm our holding in *Omni* that filing of a proof of claim is not a prerequisite to assertion of a right to setoff under 11 U.S.C. § 553 . . . ."); *In re G.S. Omni Corp.*, 835 F.2d at 1319 ("Making the right to assert the attribute of setoff dependent upon the filing of the proof of claim is an intrusion into the creditor's rights which is not contemplated in the Bankruptcy Code."); *Columbia Hosp. for Women Med. Ctr., Inc. v. NCRIC, Inc. (In re Columbia Hosp. for Women Med. Ctr., Inc.)*, 461 B.R. 648, 672–73 (Bankr. D.C. 2011) ("Although failure to file a proof of claim may preclude NCRIC from asserting any right to distribution under the plan, it does not bar NCRIC from asserting a right of setoff defensively in a turnover proceeding.").

Notably, a minority of courts require a creditor to file a proof of claim before the applicable bar date to preserve and exercise its right of setoff.  *See e.g., Neal v. Golden Knights, Inc. (In re Laughter, Inc.)*, Case No. 93-41808-B, APN. NO. 95-4022-B, 1995 Bankr. LEXIS 2163, at *11–12 (Bankr. E.D. Va. Oct. 13, 1995) (holding that filing a proof of claim is not necessary to assert setoff but collecting cases reflecting the minority view); *Bank of Dixie v. King (In re Honeycutt Grain Co., Inc.)*, 41 B.R. 678 (Bankr. W.D. La. 1984).

The Debtor points to *Daewoo Int'l (Am.) Corp. Creditor Tr. v. SSTS Am. Corp.*, 2003 WL 21355214, at *5 (S.D.N.Y. June 11, 2003), for the proposition that courts have denied setoff

A111

claims "if the creditor fails to timely take affirmative actions to assert a setoff . . . ." (Debtor

Reply ¶ 35.) However, *Daewoo* is easily distinguished from the present case. In *Daewoo*, the

District Court adopted the Third Circuit's reasoning in *In re Cont'l Airlines*, quoting "allowing

the creditor ***to come forward after the plan of reorganization has been confirmed and . . .***

***decide that it has a valid set-off without timely filing a proof of claim and asserting the set-off***

***in the reorganization proceedings***, has a probability of disrupting the plan of reorganization . . .

and can conceivably undermine . . . the objectives and structure of the Bankruptcy Code."

*Daweeo*, 2003 WL 21355214, at *5 (citing *In re Cont'l Airlines*, 134 F.3d 536, 542 (3d Cir.

1998)) (emphasis added). Here, the FDIC-R1 has not appeared after the confirmation of the plan

to assert purported defensive setoff rights. Instead, the FDIC-R1 has objected to the Plan and

appeared at the Confirmation Hearing, and generally provided notice to the Debtor and other

stakeholders that it intended to assert its defensive setoff rights. (*See* FDIC-R1 Statement.)

Although the FDIC-R1 has not filed a proof of claim, it has taken sufficient affirmative action to

put parties on notice. As counsel for the Ad Hoc Cross Holder Group emphasized at the

Confirmation Hearing, the Debtor and creditors were aware of the FDIC-R1's purported

defensive right of setoff which is why the Disclosure Statement projections for creditor

recoveries accounted for a scenario where the Debtor recovered nothing from the N.D. Cal.

Action. (*See* July 24, 2024 Hr'g Tr. at 74:7–24 (noting that the possibility of setoff was

"expressly contemplated").) Ultimately, the concerns that moved the *Daewoo* and *In re Cont'l*

*Airlines* Courts are not present here. Accordingly, this Court accepts the majority view that

filing a proof of claim is not required for a creditor to preserve its defensive right of setoff.

      In sum, the Court determines that the FDIC-R1's *ability* to assert defensive setoff rights

are preserved. Notably, however, the Court's opinion does not consider whether the FDIC-R1

A112

can *successfully* assert setoff in the N. D. Cal. Action. As the Debtor concedes, the "[m]erits of setoff [is] not at issue in Plan confirmation." (Debtor Confirmation Presentation at 34.) Accordingly, this Court does not take a position on the strength or propriety of the FDIC-R1's purported defensive setoff rights since that is not the question before the Court.

### C. The FDIC-R1's Preserved Defensive Setoff Rights Cannot be Discharged

The Debtor and the Committee also contend that the FDIC-R1's defensive setoff rights are not immune from discharge and reject the FDIC-R1's contention that such rights survive confirmation. (*See* FDIC Objection ¶¶ 29–39 (discussing how section 553 of the Bankruptcy Code preserves the FDIC-R1's defensive setoff rights post-confirmation); Debtor Reply ¶¶ 28–29 (asserting that the FDIC-R1 is "wrong" that its "setoff rights cannot be extinguished post-discharge"); UCC Statement ¶ 33 (arguing that the Plan's discharge and injunction provisions bar the FDIC-R1's "future assertion" of its setoff claims).)

Specifically, the Committee makes two arguments in support. *First*, the Committee believes that the FDIC-R1's failure to file a proof of claim bars the ability of the FDIC-R1 to assert its defensive setoff claims post-confirmation under the Plan's proposed discharge and injunction provisions. (UCC Statement ¶ 33.) *Second*, the Committee argues that section 553 of the Bankruptcy Code does not override the discharge authorized in section 1141 or what it deems the "Centralization Sections"[11] of the Bankruptcy Code.[12] (UCC Statement ¶ 46.)

---

[11] The Committee defines "Centralization Sections" to include sections 105, 362, 502, 553, 1141, and 28 U.S.C. § 1334, which it believes ensures "procedural fairness and equality of treatment for creditors." (UCC Statement ¶ 29.)

[12] The Debtor does not believe that the Court needs to resolve the "question [of] whether section 553 overrides section 1141 because the FDIC-R1's purported setoff rights are *excluded* from protection under section 553(a)(3)." (Debtor Reply ¶ 29 (emphasis in original).) However, the Court has already established that the FDIC-R1's defensive setoff rights are not precluded by 11 U.S.C. § 553(a)(3). (*See supra* Section III(B)(2).) Accordingly, the Court focuses solely on the Committee's arguments.

A113

Section 1141 of the Bankruptcy Code addresses the effect of confirmation of a plan in a
chapter 11 case.  As a general matter, confirmation of a chapter 11 plan "discharges the debtor
from any debt that arose before the date of such confirmation."[13]  11 U.S.C. § 1141(d)(1)(A).
Meanwhile, section 553(a) of the Bankruptcy Code provides, in relevant part, that "[e]xcept as
otherwise provided in this section and in sections 362 and 363 of [Title 11], [Title 11] does not
affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that
arose [pre-petition] . . . against a claim of such creditor against the debtor that arose [pre-
petition]."  11 U.S.C. § 553(a).

Underlying each of the Committee's arguments, however, is its position that the FDIC-
R1 has failed to file a proof of claim.  As discussed, however, the FDIC-R1 was not required to
file a proof of claim to preserve its defensive setoff rights and, therefore, neither is availing.
With respect to the Committee's first argument, while it may be true that sections 10.7 and 12.10
of the Plan, if approved, would bar the FDIC-R1's future assertion of its purported setoff claims,
that is precisely the issue at hand and the basis for the FDIC Setoff Objection to the Debtor's
proposed Plan.  Similarly, with respect to its second argument, the Committee states that "section
553 expressly contemplates that a setoff claim should be submitted as part of the claim process
and that it can be disallowed, and thus extinguished, in bankruptcy" and therefore, cannot be read
to "trump the discharge provision in . . . section 1141."  (UCC Statement ¶¶ 47–48; *see also id.* ¶
52 (distinguishing *Carolco Television Inc. v. Nat'l Broad. Co. (In re De Laurentiis Ent. Grp.)*,
963 F.2d 1269 (9th Cir. 1992), since the FDIC-R1 has "purposefully not filed a proof of claim
and never sought relief from the automatic stay").)  Since the Court has already concluded that

---

[13]     Section 524(a) of the Bankruptcy Code provides that such a discharge "operates as an injunction against the
commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset" of
any "debt discharged under section . . . 1141 [of the Bankruptcy Code]."  11 U.S.C. § 524(a)(1), (2).

A114

the FDIC-R1 is asserting setoff defensively and that it did not need to file a proof of claim to preserve its rights, the Committee's position is unpersuasive.

Accordingly, the Court concludes that the FDIC-R1's preserved defensive setoff rights cannot be discharged.  However, the Court emphasizes and makes clear that this ruling as to discharge is limited solely to the FDIC-R1's *preserved* setoff rights.  Any claim that the FDIC-R1 may have held against the Debtor in this bankruptcy case for which it was required to file a proof of claim in this case, including those relating to the personal liability of the Debtor, is otherwise discharged.  *See In re Velo Holdings Inc.*, 500 B.R. 693, 698 (Bankr. S.D.N.Y. 2013) (noting that a discharge under section 1141 of Bankruptcy Code, among others, operates as an injunction against the "recover[y] or offset [of] any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived" (quoting 11 U.S.C. § 524(a)(2))).

## IV.    <u>CONCLUSION</u>

For the reasons discussed, the Court **SUSTAINS** the FDIC Objection.

**IT IS SO ORDERED.**

Dated:     August 2, 2024
           New York, New York

                                *Martin Glenn*
                                MARTIN GLENN
                Chief United States Bankruptcy Judge

A115

**<u>EXHIBIT 3</u>**
**CIVIL COVER SHEET**

A116

JS 44C/SDNY
REV.
05/28/2024

23-10367-mg    Doc 1389-3    Filed 08/09/24    Entered 08/09/24 17:39:27    Exhibit 3
Pg 2 of 4

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| SVB Financial Group; | Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank |
| Official Committee of Unsecured Creditors of SVB Financial Group | and as Receiver for Silicon Valley Bridge Bank, N.A. |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| See Civil Cover Sheet Attachment | See Civil Cover Sheet Attachment |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. Section 158(a)(1) (appeal of a final order issued by the United States Bankruptcy Court for the Southern District of New York)

Has this action, case, or proceeding, or one essentially the same, been previously filed in SDNY at any time? No [✓] Yes [ ] _____
(If yes, Judge Previously Assigned)

If yes, was this case Vol. [ ] Invol. [ ] Dismissed. No [x] Yes [ ] If yes, give date _____ & Case No. _____

Is this an international arbitration case? No [X] Yes [ ]

*(PLACE AN [x] IN ONE BOX ONLY)*                     **NATURE OF SUIT**

TORTS                                                        ACTIONS UNDER STATUTES

**CONTRACT**
[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[ ] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**REAL PROPERTY**
[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**PERSONAL INJURY**
[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY
[ ] 362 PERSONAL INJURY - MED MALPRACTICE

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**
[ ] 440 OTHER CIVIL RIGHTS (Non-Prisoner)
[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING/ ACCOMMODATIONS
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[ ] 448 EDUCATION

**PERSONAL INJURY**
[ ] 367 HEALTHCARE/ PHARMACEUTICAL PERSONAL INJURY/PRODUCT LIABILITY
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**PRISONER PETITIONS**
[ ] 463 ALIEN DETAINEE
[ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER

**PRISONER CIVIL RIGHTS**
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION
[ ] 560 CIVIL DETAINEE CONDITIONS OF CONFINEMENT

**FORFEITURE/PENALTY**
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 690 OTHER

**PROPERTY RIGHTS**
[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 835 PATENT-ABBREVIATED NEW DRUG APPLICATION
[ ] 840 TRADEMARK

**LABOR**
[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 740 RAILWAY LABOR ACT
[ ] 751 FAMILY MEDICAL LEAVE ACT (FMLA)
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT (ERISA)

**IMMIGRATION**
[ ] 462 NATURALIZATION APPLICATION
[ ] 465 OTHER IMMIGRATION ACTIONS

**BANKRUPTCY**
[x] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

[ ] 880 DEFEND TRADE SECRETS ACT

**SOCIAL SECURITY**
[ ] 861 HIA (1395ff)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC/DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
[ ] 870 TAXES (U.S. Plaintiff or Defendant)
[ ] 871 IRS-THIRD PARTY 26 USC 7609

**OTHER STATUTES**
[ ] 375 FALSE CLAIMS
[ ] 376 QUI TAM
[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLU- ENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 485 TELEPHONE CONSUMER PROTECTION ACT
[ ] 490 CABLE/SATELLITE TV
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 890 OTHER STATUTORY ACTIONS
[ ] 891 AGRICULTURAL ACTS
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 896 ARBITRATION
[ ] 899 ADMINISTRATIVE PROCEDURE ACT/REVIEW OR APPEAL OF AGENCY DECISION
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES

*Check if demanded in complaint:*

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $_____ OTHER _____

*Check YES only if demanded in complaint*
JURY DEMAND:    YES    x NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y. AS DEFINED BY LOCAL RULE FOR DIVISION OF BUSINESS 13?
IF SO, STATE:

JUDGE _____    DOCKET NUMBER_____

NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form IH-32).

**A117**

23-10367-mg    Doc 1389-3    Filed 08/09/24    Entered 08/09/24 17:39:27    Exhibit 3
Pg 3 of 4

*(PLACE AN  x  IN ONE BOX ONLY)*
**ORIGIN**

[X] 1  Original Proceeding    [ ] 2  Removed from State Court    [ ] 3  Remanded from Appellate Court    [ ] 4  Reinstated or Reopened    [ ] 5  Transferred from (Specify District)    [ ] 6  Multidistrict Litigation (Transferred)    [ ] 7  Appeal to District Judge from Magistrate Judge

[ ] a.  **all parties represented**

[ ] b.  **At least one party is pro se.**        [ ] 8  Multidistrict Litigation (Direct File)

*(PLACE AN  x  IN ONE BOX ONLY)*        **BASIS OF JURISDICTION**        *IF DIVERSITY, INDICATE CITIZENSHIP BELOW.*

[ ] 1  U.S. PLAINTIFF    [ ] 2  U.S. DEFENDANT    [X] 3  FEDERAL QUESTION (U.S. NOT A PARTY)    [ ] 4  DIVERSITY

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

N/A (Federal Question)

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

N/A (Federal Question)

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

N/A (Federal Question)

**COURTHOUSE ASSIGNMENT**

I have reviewed Rules 18(a) and 20(a) of the Rules for the Division of Business Among District Judges, Southern District of New York, and I hereby certify that this case should be assigned to the courthouse indicated below pursuant thereto.

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    [ ] WHITE PLAINS    [X] MANHATTAN

DATE 8/9/2024        /s/ Robert A. Sacks        ADMITTED TO PRACTICE IN THIS DISTRICT
                                                [ ] NO
          SIGNATURE OF ATTORNEY OF RECORD       [X] YES (DATE ADMITTED  Mo. January   Yr. 1983    )

RECEIPT #                                       Attorney Bar Code # 1833292

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

Daniel Ortiz, Acting Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

**A118**

# CIVIL COVER SHEET ATTACHMENT

Counsel for Appellant SVB Financial Group:

James L. Bromley
Robert A. Sacks
Adam S. Paris
Christian P. Jensen
**SULLIVAN & CROMWELL LLP**
125 Broad Street, New York, NY 10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588
E-mail:    bromleyj@sullcrom.com
             sacksr@sullcrom.com
             parisa@sullcrom.com
             jensenc@sullcrom.com

Diane L. McGimsey
**SULLIVAN & CROMWELL LLP**
1888 Century Park East, Los Angeles, CA 90067
Telephone:    (310) 712-6600
Facsimile:    (310) 712-8800
E-mail:    mcgimseyd@sullcrom.com

Counsel for Appellant Official Committee of
Unsecured Creditors of SVB Financial Group:

Ira S. Dizengoff
David M. Zensky
Joseph L. Sorkin
Brad M. Kahn
Katherine Porter
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park New York, NY 10036
Telephone:    (212) 872-1000
E-mail:    idizengoff@AkinGump.com
             dzensky@AkinGump.com
             jsorkin@AkinGump.com
             bkahn@AkinGump.com
             kporter@AkinGump.com

James R. Savin
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K Street NW, Washington, DC 20006
Telephone:    (202) 887-4000
E-mail:    jsavin@akingump.com

Counsel for Appellee Federal Deposit Insurance
Corporation as Receiver for Silicon Valley Bank
and as Receiver for Silicon Valley Bridge Bank,
N.A.:

Kurt F. Gwynne
Casey D. Laffey
**REED SMITH LLP**
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
E-mail:  kgwynne@reedsmith.com
             claffey@reedsmith.com

Derek J. Baker
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-mail: dbaker@reedsmith.com

Keith M. Aurzada
**REED SMITH LLP**
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469)-680-4200
Facsimile: (469) 680-4299
E-mail: kaurzada@reedsmith.com

**A119**

Robert A. Sacks
James L. Bromley
Adam S. Paris
Christian P. Jensen
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000
Facsimile:      (212) 558-3588

*Counsel for Debtor SVB Financial Group*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SVB FINANCIAL GROUP,[1]<br><br>           Debtor. | Bankruptcy Case No. 23-10367 (MG) |
| SVB FINANCIAL GROUP and OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF SVB FINANCIAL GROUP<br><br>           Appellants,<br><br>  v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A.,<br><br>           Appellees. | Civil Case No. 24-CV-6484 (JGLC) |

**SVB FINANCIAL GROUP'S MOTION TO CERTIFY**
**DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT UNDER 28 U.S.C. § 158(D)(2)**

---

[1]      The last four digits of SVB Financial Group's tax identification number are 2278.

A120

SVB Financial Group ("<u>Debtor</u>") respectfully moves for certification of the Memorandum Opinion and Order (the "<u>Order</u>") (Bankr. Dkt. No. 1380) issued by Chief Judge Martin Glenn of the United States Bankruptcy Court for the Southern District of New York, sustaining the confirmation objection (Bankr. Dkt. No. 1268) of the Federal Deposit Insurance Corporation ("<u>FDIC</u>"), as Receiver for Silicon Valley Bank ("<u>FDIC-R1</u>") and Silicon Valley Bridge Bank, N.A. ("<u>FDIC-R2</u>," and together with FDIC-R1, "<u>FDIC-Rs</u>") for direct appeal to the United States Court of Appeals for the Second Circuit under 28 U.S.C. § 158(d)(2) on or before October 1, 2024.  As explained below, the motion is currently pending before and ready for disposition by this Court because it was originally filed in the Bankruptcy Court and was fully briefed, but was not acted upon within the 30-day period before jurisdiction transferred to this Court under Rule 8006(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

On August 21, 2024, Debtor filed its Motion to Certify Direct Appeal to the United States Court of Appeals for the Second Circuit Under 28 U.S.C. § 158(d)(2) in the United States Bankruptcy Court for the Southern District of New York (the "<u>Motion</u>"), attached hereto as **Exhibit A**.  (Bankr. Dkt. No. 1406.)

On September 4, 2024, FDIC-Rs filed their Objection of the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A. to the Debtor's Motion to Certify Direct Appeal to the United States Court of Appeals for the Second Circuit Under 28 U.S.C. § 158(d)(2), attached hereto as **Exhibit B**.  (Bankr. Dkt. 1446.)

On September 5, 2024, Debtor filed its Reply in Support of its Motion to Certify Direct Appeal to the United States Court of Appeals for the Second Circuit Under 28 U.S.C. § 158(d)(2), attached hereto as **Exhibit C**.  (Bankr. Dkt. 1453.)

Bankruptcy Rule 8006(b) provides that a motion for certification of direct appeal

A121

must be filed "with the clerk of the court where the matter is pending.  For purposes of this rule, a matter remains pending in the bankruptcy court for 30 days" after the notice of appeal is filed, and "is pending in the district court . . . thereafter."

Because Debtor filed its notice of appeal on August 9, 2024, the Bankruptcy Court was a proper venue for Debtor's Motion at the time it was filed.  *See* Fed. R. Bankr. P. 8006(b), (f)(1).  Beginning on September 10, 2024, however, the matter has been pending before this Court. In addition, courts have held that a bankruptcy court loses authorization to consider a certification motion after the 30-day period, so the certification request must now be resolved by this Court. *See Secs. Inv. Protection Corp.* v. *Bernard L. Madoff Inv. Secs. LLC*, 2017 WL 3084395, at *2 (Bankr. S.D.N.Y. July 19, 2017); *see also* Fed. R. Bankr. P. 8006(b), (d).

Debtor is therefore refiling the Motion, attached as Exhibit A, together with FDIC-Rs opposition and Debtor's reply, attached as Exhibits B and C.  For the reasons set forth in the Motion, Debtor respectfully requests that the Court enter an order substantially in the form of **Exhibit D** attached hereto, certifying the Order for direct appeal to the United States Court of Appeals for the Second Circuit.

Dated:  September 11, 2024                    */s/ Robert A. Sacks*
        New York, New York          Robert A. Sacks
                                    James L. Bromley
                                    Adam S. Paris
                                    Christian P. Jensen
                                    SULLIVAN & CROMWELL LLP
                                    125 Broad Street, New York, NY 10004
                                    Telephone:     (212) 558-4000
                                    Facsimile:     (212) 558-3588
                                    E-mail:  sacksr@sullcrom.com
                                             bromleyj@sullcrom.com
                                             parisa@sullcrom.com
                                             jensenc@sullcrom.com

                                    Diane L. McGimsey (admitted *pro hac vice*)
                                    SULLIVAN & CROMWELL LLP
                                    1888 Century Park East, Los Angeles, CA 90067
                                    Telephone:     (310) 712-6600
                                    Facsimile:     (310) 712-8800
                                    E-mail:  mcgimseyd@sullcrom.com

                                    *Counsel for Debtor SVB Financial Group*

-4-

A123

## **EXHIBIT A**

**Debtor's Motion to Certify Direct Appeal to the United States Court of Appeals for the Second Circuit Under 28 U.S.C. § 158(d)(2)**

James L. Bromley
Robert A. Sacks
Adam S. Paris
Christian P. Jensen
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

Diane L. McGimsey (admitted *pro hac vice*)
**SULLIVAN & CROMWELL LLP**
1888 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 712-6600
Facsimile:  (310) 712-8800

*Counsel for Debtor SVB Financial Group*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ———————————————— x | |
| In re : | Chapter 11 |
| : | |
| SVB FINANCIAL GROUP,[1] : | Case No. 23-10367 (MG) |
| : | |
| Debtor. : | |
| ———————————————— x | |

## NOTICE OF DEBTOR'S MOTION TO
## CERTIFY DIRECT APPEAL TO THE UNITED STATES
## COURT OF APPEALS FOR THE SECOND CIRCUIT UNDER 28 U.S.C. § 158(d)(2)

**PLEASE TAKE NOTICE** that on the date hereof, SVB Financial Group, as debtor

and debtor-in-possession ("Debtor") filed the *Debtor's Motion to Certify Direct Appeal to the*

*United States Court of Appeals for the Second Circuit Under 28 U.S.C. § 158(d)(2)* (the "Motion").

Pursuant to Rule 8006(f)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[1]     The last four digits of SVB Financial Group's tax identification number are 2278.

Rules"), the Motion is "submitted without oral argument unless the court where the matter is pending orders otherwise."

       **PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "Objections") to the Motion shall conform to the Bankruptcy Rules and the Local Rules for the United States Bankruptcy Court for the Southern District of New York and shall be filed with the Court in accordance with the customary practices of the Court and General Order M-399. Objections must be filed and received pursuant to Bankruptcy Rule 8006(f)(3) no later than **September 4, 2024, at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline") and must be served on the following parties: (a) counsel to Debtor, Sullivan & Cromwell LLP, Attn: Christian P. Jensen (jensenc@sullcrom.com); (b) counsel to William K. Harrington, the U.S. Trustee for Region 2, U.S. Department of Justice, Office of the U.S. Trustee, Alexander Hamilton U.S. Custom House, One Bowling Green, Room 534, New York, NY 10004, Attn: Andrea B. Schwartz, Esq. (andrea.b.schwartz@usdoj.gov), Annie Wells, Esq. (annie.wells@usdoj.gov), and Rachael E. Siegel, Esq. (rachel.e.siegel@usdoj.gov); (c) counsel to the Official Committee of Unsecured Creditors, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Ira S. Dizengoff (idizengoff@akingump.com) and Brad M. Kahn (bkahn@akingump.com) and 2001 K Street NW, Washington, DC 20006, Attn: James R. Savin (jsavin@akingump.com); (d) counsel to the Ad Hoc Group of Senior Noteholders, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Marshall S. Huebner (marshall.huebner@davispolk.com), Elliot Moskowitz (elliot.moskowitz@davispolk.com), Angela M. Libby (angela.libby@davispolk.com), David Schiff (david.schiff@davispolk.com), and Aryeh Ethan Falk (aryeh.falk@davispolk.com); and (e) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

A126

PLEASE TAKE FURTHER NOTICE that only those Objections that are timely filed, served and received will be considered. Failure to file a timely Objection may result in the entry of an order granting the relief requested in the Motion without further notice.

PLEASE TAKE FURTHER NOTICE that copies of the Motion may be obtained from the Court's website, https://ecf.nysb.uscourts.gov for a nominal fee or free of charge from the website of Debtor's claims and noticing agent, https://restructuring.ra.kroll.com/svbfg/.

Dated:  August 21, 2024
        New York, New York

/s/ Robert A. Sacks

James L. Bromley
Robert A. Sacks
Adam S. Paris
Christian P. Jensen
**SULLIVAN & CROMWELL LLP**
125 Broad Street, New York, NY 10004
Telephone:   (212) 558-4000
Facsimile:   (212) 558-3588
E-mail:      bromleyj@sullcrom.com
             sacksr@sullcrom.com
             parisa@sullcrom.com
             jensenc@sullcrom.com

Diane L. McGimsey (admitted *pro hac vice*)
**SULLIVAN & CROMWELL LLP**
1888 Century Park East, Los Angeles, CA 90067
Telephone:   (310) 712-6600
Facsimile:   (310) 712-8800
E-mail:      mcgimseyd@sullcrom.com

*Counsel for Debtor SVB Financial Group*

-3-

A127

James L. Bromley
Robert A. Sacks
Adam S. Paris
Christian P. Jensen
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

Diane L. McGimsey (admitted *pro hac vice*)
**SULLIVAN & CROMWELL LLP**
1888 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 712-6600
Facsimile:  (310) 712-8800

*Counsel for Debtor SVB Financial Group*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ———————————————— x | | |
| In re | : | Chapter 11 |
| | : | |
| | : | |
| SVB FINANCIAL GROUP,[1] | : | Case No. 23-10367 (MG) |
| | : | |
| Debtor. | : | |
| | : | |
| ———————————————— x | | |

**DEBTOR'S MOTION TO CERTIFY DIRECT APPEAL TO THE UNITED STATES**
**COURT OF APPEALS FOR THE SECOND CIRCUIT UNDER 28 U.S.C. § 158(d)(2)**

---

[1]      The last four digits of SVB Financial Group's tax identification number are 2278.

23-1036, ... g: 24-2882, 10/30/2024, DktEntry: 1.1, Page 166 of 236 ... az
Case: 24-2882, 10/30/2024, DktEntry: 1.1, Page 166 of 236
Case 1:24-cv-04064-JSR Document Filed 08/20/24 Entered 08/21/24 11:55 Page 4 of 27
Pg 5 of 26

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ...................................................................................................2

JURISDICTION AND VENUE ................................................................................6

RELIEF REQUESTED..........................................................................................6

BASIS FOR RELIEF ...........................................................................................7

    I.     The Order Involves Questions of Law as to Which There Is No Controlling Decision. ...............................................................................................8

    II.    The Order Involves Questions of Law Requiring Resolution of Conflicting Decisions.............................................................................................11

    III.   The Appeal Involves a Matter of Public Importance.............................................14

CONCLUSION...................................................................................................17

A129

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Actrade Fin. Techs., LTD.*,
    2010 WL 3386945 (Bankr. S.D.N.Y. Aug. 23, 2010) ...........................................15

*In re Arcapita Bank B.S.C.(C)*,
    640 B.R. 604 (S.D.N.Y. 2022)........................................................................15

*In re Belmonte*,
    551 B.R. 723 (Bankr. E.D.N.Y. 2016).............................................................12

*Bernstein* v. *IDT Corp.*,
    76 B.R. 275 (S.D.N.Y. 1987)..........................................................................14

*In re Bruce*,
    2021 WL 6111925 (S.D.N.Y. Dec. 27, 2021) ....................................................7

*Bullard* v. *Blue Hills Bank*,
    575 U.S. 496 (2015)........................................................................................9

*Cent. Va. Cmty. Coll.* v. *Katz*,
    546 U.S. 356 (2006)......................................................................................16

*In re Chateaugay Corp.*,
    94 F.3d 772 (2d Cir. 1996)..............................................................................9

*In re Com. Fin. Servs., Inc.*,
    251 B.R. 397 (Bankr. N.D. Okla. 2000) ...........................................................8

*In re Concept Clubs, Inc.*,
    154 B.R. 581 (D. Utah 1993)...........................................................................9

*In re Cont'l Airlines*,
    134 F.3d 536 (3d Cir. 1998)...........................................................................14

*In re Corp. Res. Servs., Inc.*,
    564 B.R. 196 (Bankr. S.D.N.Y. 2017)............................................................11

*Daewoo Int'l (Am.) Corp. Creditor Tr.* v. *SSTS Am. Corp.*,
    2003 WL 21355214 (S.D.N.Y. June 11, 2003) ....................................12, 13, 14

*In re Davidovich*,
    901 F.2d 1533 (10th Cir. 1990) .....................................................................14

*DPWN Holdings (USA), Inc.* v. *United Air Lines, Inc.*,
    747 F.3d 145 (2d Cir. 2014).........................................................................16

-ii-

*In re Essar Steel Minn. LLC*,
    2020 WL 3574743 (D. Del. July 1, 2020) .............................................................7, 15, 16, 17

*In re Extraction Oil & Gas, Inc.*,
    2021 WL 3722229 (D. Del. Aug. 23, 2021) ....................................................................15, 16

*In re G.S. Omni Corp.*,
    835 F.2d 1317 (10th Cir. 1987) ......................................................................................9

*In re IMMC Corp.*,
    2016 WL 356026 (D. Del. Jan. 28, 2016) ...................................................................11

*In re Iridium Operating LLC*,
    285 B.R. 822 (S.D.N.Y. 2002)...............................................................................11, 12, 15

*In re LATAM Airlines Grp. S.A.*,
    2022 WL 2962948 (Bankr. S.D.N.Y. July 26, 2022) .......................................................11

*In re Malinowski*,
    156 F.3d 131 (2d Cir. 1998)..............................................................................................11

*In re MF Glob. Holdings Ltd.*,
    615 B.R. 415 (Bankr. S.D.N.Y. 2020) .............................................................................2

*In re Millennium Lab Holdings II, LLC*,
    543 B.R. 703 (Bankr. D. Del. 2016) .............................................................................8, 12

*In re N. Am. Energy Conservation, Inc.*,
    2000 WL 1514614 (S.D.N.Y. Oct. 12, 2000) .......................................................11, 12, 15

*In re Orexigen Therapeutics, Inc.*,
    990 F.3d 748 (3d Cir. 2021).............................................................................................15

*Secs. Inv. Protection* v. *Bernard L. Madoff Inv. Secs. LLC*,
    2017 WL 3084395 (Bankr. S.D.N.Y. July 19, 2017) ..............................................................6

*In re Springfield Hosp., Inc.*,
    618 B.R. 109 (Bankr. D. Vt. 2020)............................................................................12, 15

*Weber* v. *United States*,
    484 F.3d 154 (2d Cir. 2007)...........................................................................................8, 9

**Statutes**

11 U.S.C. § 101(5) .................................................................................................... *passim*

11 U.S.C. § 362 ...................................................................................................................10

11 U.S.C. § 553 ..................................................................................................... *passim*

A131

11 U.S.C. § 1141 ............................................................................................ *passim*

28 U.S.C. § 157 ....................................................................................................6

28 U.S.C. § 158 .......................................................................................... *passim*

28 U.S.C. § 1334 ..............................................................................................4, 6

28 U.S.C. § 1408 ..................................................................................................6

28 U.S.C. § 1409 ..................................................................................................6

**Other Authorities**

Fed. R. Bankr. P. 8006 .....................................................................................6, 7

1 Collier on Bankruptcy ¶ 5.06[3] (16th ed. 2022) ...........................................7

1 Collier on Bankruptcy ¶ 5.06[4][b] (16th ed. 2024) ....................................17

5 Collier on Bankruptcy ¶ 553.08 (16th ed. 2024) .........................................14

SVB Financial Group ("Debtor") respectfully moves for certification of the Court's Memorandum Opinion and Order ("Order") (Dkt. No. 1380), attached hereto as **Exhibit A**, sustaining the confirmation objection ("Objection") (Dkt. No. 1268) of the Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Silicon Valley Bank ("FDIC-R1") and Silicon Valley Bridge Bank, N.A. ("FDIC-R2," and together with FDIC-R1, "FDIC-Rs") for direct appeal to the United States Court of Appeals for the Second Circuit under 28 U.S.C. § 158(d)(2) on or before September 9, 2024.  In support of this Motion, Debtor states as follows:

## PRELIMINARY STATEMENT

1.　　On August 2, 2024, this Court issued an order sustaining FDIC-Rs' objection to the confirmation of the *Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*.  The Court's Order passes upon at least three important questions of law that remain unsettled by the Supreme Court or the Second Circuit, each of which is potentially dispositive of this case:

　　i.　　Whether a "defensive" setoff right is a "claim" under 11 U.S.C. § 101(5);

　　ii.　　Whether a creditor that was aware of the subject matter for which it claims defensive setoff rights prior to the bar date waives its defensive setoff rights by failing to file a proof of claim before the bar date; and

　　iii.　　Whether a creditor's setoff rights under 11 U.S.C. § 553 are discharged by the confirmation of a chapter 11 plan under 11 U.S.C. § 1141, where the creditor intentionally did not file a proof of claim before the bar date.

2.　　In sustaining FDIC-Rs' Objection, the Court held that FDIC-R1 was not required to file a proof of claim to preserve its defensive setoff rights, which are not "claims" under section 101(5), and that FDIC-R1's defensive setoff rights cannot be discharged by confirmation of a chapter 11 plan.  (Order at 20-33.)

3.　　*First*, although some sister Circuits have spoken on these issues, there are no *controlling decisions* from either the Supreme Court or the Second Circuit leaving no ambiguity

in their resolution of the issues.  This absence of controlling decisions renders certification mandatory under section 158(d)(2)(A)(i).

4.      **Second**, given the lack of controlling decisions, lower courts in this Circuit have reached contradictory conclusions on the three legal questions discussed above.  The presence of an intra-circuit split further requires certification under section 158(d)(2)(A)(ii).  *See In re MF Glob. Holdings Ltd.*, 615 B.R. 415, 420 (Bankr. S.D.N.Y. 2020) (Bernstein & Glenn, JJ.) (certifying direct appeal under section 158(d)(2)(A)(i) and (ii) because, "[p]articularly in light of the split in bankruptcy court decisions addressing these important issues that require a uniform result, whatever is decided here [by the bankruptcy court] is certainly not going to be the last word on the issues"), *abrogated on other grounds by In re Clinton Nurseries, Inc.*, 53 F.4th 15 (2d Cir. 2022).

5.      **Third**, the treatment of setoff rights in bankruptcy implicates the Bankruptcy Code's priority scheme, the equal treatment of creditors, and the "fresh start" promised to debtors post-bankruptcy.  These are fundamental bankruptcy principles that transcend the facts and parties of this case, particularly given that FDIC-Rs have sought to displace those principles by invoking the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").  This appeal therefore "involves a matter of public importance" and is certifiable under section 158(d)(2)(A)(i).

6.      Because each of the foregoing reasons independently satisfies section 158(d)(2)'s requirements, the Court should certify this appeal for direct review by the Second Circuit.

## **BACKGROUND**

7.      On March 10, 2023, the California Department of Financial Protection and Innovation closed Silicon Valley Bank ("SVB") and appointed FDIC-R1 as receiver for SVB. (Joint Pretrial Order (Dkt. No. 1319), Stipulated Facts ("SF") ¶ 2.)

-2-

8.      As of the opening of business on March 13, 2023, following the Treasury
Secretary's invocation of systemic risk on March 12, 2023, Debtor had deposit accounts at Silicon
Valley Bridge Bank, N.A. ("<u>Bridge Bank</u>"), with a combined balance of approximately
$2.1 billion.  Debtor initially had full access to its funds at Bridge Bank, and between March 13
and 16, 2023, Debtor withdrew approximately $180 million from those accounts.  (SF ¶ 3.)

9.      On or about March 15, 2023, FDIC-R1 purported to recall the account liability from
Bridge Bank to prevent Debtor from withdrawing funds from its accounts.  (SF ¶ 3.)  FDIC-R1
also sought Bridge Bank's reversal of the wire withdrawals that Debtor had previously initiated
from those accounts.  (*Id.*)

10.      On March 17, 2023 (the "<u>Petition Date</u>"), Debtor filed its voluntary petition for
relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

11.      On June 8, 2023, Debtor filed a motion seeking to establish certain deadlines for
filing proofs of claim (Dkt. No. 320).  The Court approved the motion on June 29, 2023, and
entered an order (the "<u>Bar Date Order</u>") (Dkt. No. 373) establishing September 14, 2023, as the
deadline for any governmental unit to file a proof of claim against Debtor (the "<u>Bar Date</u>").

12.      The Bar Date Order requires "all persons and entities … that assert a claim, as
defined in section 101(5) of the Bankruptcy Code, against the Debtor which arose on or prior to
the Petition Date … [to] file a proof of such claim."  (Bar Date Order ¶ 3.)  If a claimant fails to
timely file a proof of claim, the Bar Date Order specifies that the claimant "shall be forever barred,
estopped[,] and enjoined from asserting the applicable claim … against the Debtor or property of
the estate."  (*Id.* ¶ 11.)

13.      FDIC-R1 agrees that, prior to the Bar Date, it was aware of the subject matter for
which it claims defensive setoff rights and could have filed a proof of claim based on the subject

A135

matter of those rights. (SF ¶ 16.) Nevertheless, FDIC-R1 made the determination not to file a claim in this case prior to the Bar Date. (*Id.* ¶ 18.)

14.     On July 8, 2024, FDIC-Rs objected to Debtor's chapter 11 plan of reorganization (the "Plan"). Among other things, FDIC-Rs contends that the Plan cannot extinguish FDIC-R1's defensive setoff rights because they are "pending before two District Courts," one of which has exclusive jurisdiction under FIRREA to determine FDIC-R1's setoff rights; and that even if the setoff rights were not before the two district courts, "section 553 … preserves FDIC-R1's defensive setoff rights" post-confirmation. (Obj. ¶ 18.)

15.     Debtor responded to FDIC-Rs' Objection on July 18, 2023. In its reply (the "Reply") (Dkt. No. 1306), Debtor argued that (1) FDIC-Rs' jurisdictional arguments fail; (2) FDIC-Rs lack constitutional and statutory standing to bring its Objection; (3) section 553 does not preserve FDIC-R1's purported setoff from discharge because FDIC-R1's claims fall within the exclusion under section 553(a)(3); (4) FDIC-R1 has forfeited its setoff claims by failing to file a proof of claim or to seek stay relief; and (5) equitable principles dictate that this Court exercise its discretionary authority to overrule FDIC-Rs' Objection. (Reply ¶ 2.)

16.     The Official Committee of Unsecured Creditors (the "Committee") and the Ad Hoc Group of Senior Noteholders joined in Debtor's Reply. (Dkt. Nos. 1309, 1310.) In addition to endorsing Debtor's arguments, the Committee in its statement (the "Statement") contended that the Bankruptcy Code's "Centralization Sections"—sections 105, 362, 502, 553, 1141, and 28 U.S.C. § 1334—work together to ensure equal treatment of creditors and apply with equal force to FDIC-Rs. (Comm. St. ¶¶ 21-44.) The Statement further argued that section 553's setoff provision does not override section 1141, which provides that "the confirmation of the Plan will discharge the Debtor 'from any debt that arose before the date of such confirmation.'" (*Id.* ¶ 45.)

A136

17.     The Court heard oral arguments on July 24, 2024.  With respect to Debtor's contention that FDIC-R1's claims fall within the exclusion under section 553(a)(3), the Court ordered that FDIC-R1—by July 26—"file one or more declarations with supporting exhibits that show precisely what the flow of funds or paper account records reflect the transfer of the 1.9 billion dollars from one entity to another."  (July 24, 2024 Hr'g Tr. at 143:17-20.)  The Court also allowed Debtor to respond to FDIC-R1's declaration by July 29.  (*Id.* at 214:20-21.)

18.     FDIC-R1 submitted a declaration on July 26, 2024, and two amended declarations on July 26 and July 28.  (Dkt. Nos. 1343, 1348, 1351.)  After Debtor filed its responsive declaration (Dkt. No. 1353), FDIC-R1 submitted a memorandum and two additional declarations on August 1 (Dkt. Nos. 1373, 1374, 1376).  Debtor responded to FDIC-R1's sur-sur-reply on August 2, requesting the Court to strike the unauthorized submissions.  (Dkt. No. 1378.)

19.     Later on August 2, 2024, the Court entered an order confirming the Plan (the "Confirmation Order") (Dkt. No. 1379).  As relevant here, the Confirmation Order provides that "the impairment, discharge[,] or release of defensive setoff rights of the FDIC-R1, as raised in the [Objection] shall not be determined by [the Confirmation] Order."  (*Id.* ¶ 156.)  The Confirmation Order further provides that "[t]he Court's decision with respect to the FDIC-R Objection as it pertains to the impairment, discharge[,] or release of defensive setoff rights of the FDIC-R1 (if any) shall be set forth in a separate order, which order shall be subject to the 14-day stay."  (*Id.*)

20.     Contemporaneously with the Confirmation Order, the Court issued its Order sustaining FDIC-Rs' Objection.  Among other things, the Order concludes that (1) "there is a material difference between a defensive claim for setoff and a claim that seeks similar relief on an affirmative basis against a debtor or its estate," and because "FDIC-R1's purported setoff right is

A137

defensive [it] does not affirmatively implicate the Debtor's estate" (Order at 21); (2) "filing a proof of claim is not required for a creditor to preserve its defensive right of setoff" (*id.* at 30); and (3) "FDIC-R1's preserved defensive setoff rights cannot be discharged" (*id.* at 33).

21. Debtor filed a notice of appeal from the Order on August 9, 2024. (Dkt. No. 1389.)

## JURISDICTION AND VENUE

22. This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

23. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409 and Rule 8006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

24. The bases for the relief requested herein are 28 U.S.C. § 158(d)(2) and Bankruptcy Rule 8006.

25. Bankruptcy Rule 8006(b) provides that a motion for certification of direct appeal must be filed "with the clerk of the court where the matter is pending. For purposes of this rule, a matter remains pending in the bankruptcy court for 30 days" after the notice of appeal is filed. Because Debtor filed its notice of appeal on August 9, 2024, this Court is the proper venue for this Motion. *See* Fed. R. Bankr. P. 8006(b), (f)(1).

26. Courts have held, however, that a bankruptcy court loses authorization to consider a certification motion after the 30-day period. *See Secs. Inv. Protection* v. *Bernard L. Madoff Inv. Secs. LLC*, 2017 WL 3084395, at *2 (Bankr. S.D.N.Y. July 19, 2017); *see also* Fed. R. Bankr. P. 8006(b), (d). Accordingly, Debtor respectfully requests this Court rule on this Motion on or before September 9, 2024.

## RELIEF REQUESTED

27. Debtor respectfully requests that the Court certify the Order for direct appeal to the Second Circuit under 28 U.S.C. § 158(d)(2) on or before September 9, 2024.

A138

## **BASIS FOR RELIEF**

28. A court of appeals has jurisdiction to directly review a bankruptcy court's order if (1) the order is certified for direct appeal either by the court where the matter is pending or by "all the appellants and appellees … acting jointly";[2] and (2) the court of appeal authorizes the appeal. 28 U.S.C. § 158(d)(2)(A); *see also* Fed. R. Bankr. P. 8006(b)-(f).

29. A bankruptcy or district court must certify an order for direct appeal to the court of appeals if:

> (i) the order "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, *or* involves a matter of public importance";
>
> (ii) the order "involves a question of law requiring resolution of conflicting decisions"; *or*
>
> (iii) immediate appeal from the order "may materially advance the progress of the case or proceeding in which the appeal is taken."

*Id.* §§ 158(d)(2)(A)(i)-(iii), (B) (emphasis added).

30. Because section 158(d)(2)(B)'s language is mandatory and section 158(d)(2)(A)'s factors are written in the disjunctive, a court is required to make the certification if "*at least one* of the [four] circumstances enumerated in [section] 158(d)(2)(A) is present."[3] *In re Bruce*, 2021 WL 6111925, at *5 (S.D.N.Y. Dec. 27, 2021) (emphasis added); 1 Collier on Bankruptcy ¶ 5.06[3] (16th ed. 2024) ("[C]ourt must [certify] on request of one or more of the parties if it determines that [at] least one of the conditions specified in section 158(d)(2)(A)(i), (ii) or (iii) exists."). In light of the statute's text and history, the Second Circuit has explained that it "will be most likely

---

[2]     FDIC-Rs declined to join Debtor in seeking certification.

[3]     Courts have explained that "[w]hile … section [158(d)(2)(A)] contains *three subparts*, there are actually *four disjunctive criteria* as subpart (i) sets forth *two separate benchmarks* for certification." *In re Essar Steel Minn. LLC*, 2020 WL 3574743, at *4 (D. Del. July 1, 2020).

A139

to exercise [its] discretion to permit a direct appeal where there is uncertainty in the bankruptcy courts (either due to the absence of a controlling legal decision or because conflicting decisions have created confusion)." *Weber* v. *United States*, 484 F.3d 154, 161 (2d Cir. 2007).

31. The questions posed above easily satisfy the predicates for certifying the Order for direct appeal to the Second Circuit: (1) the appeal involves three questions of law for which there is no controlling decision from the Supreme Court or the Second Circuit; (2) the three questions of law also require the resolution of conflicting decisions within the Second Circuit; and (3) the appeal involves a matter of public importance. As such, the Court should certify Debtor's appeal for the Second Circuit's direct review.

**I.  The Order Involves Questions of Law as to Which There Is No Controlling Decision.**

32. The Court should certify the Order for direct appeal because it involves at least three questions of law as to which there are no controlling decisions. "Controlling law for the purposes of section 158(d)(2)(A)(i) is that which 'admits of no ambiguity in resolving the issue.'" *Millennium Lab Holdings II, LLC*, 543 B.R. 703, 711 (Bank. D. Del. 2016).

33. *First*, the Bar Date Order requires "all persons and entities … that assert a claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor which arose on or prior to the Petition Date … [to] file a proof of such claim." (Bar Date Order ¶ 3.) If a claimant fails to timely file a proof of claim, the Bar Date Order provides that claimant "shall be forever barred, estopped[,] and enjoined from asserting the applicable claim … against the Debtor or property of the estate." (*Id.* ¶ 11.)

34. Debtor argues that "defensive setoff rights are 'claims' under section 11 U.S.C. § 101(5)," and pursuant to the Bar Date Order, "FDIC-R1 lost its ability to assert such claims when the claim deadline passed." (Order at 20.) The Court rejected Debtor's argument, concluding that

-8-

"FDIC-R1's purported setoff right is defensive and does not affirmatively implicate the Debtor's estate." (*Id.* at 21) In reaching this conclusion, the Court reasoned that "a defensive setoff is substantively different than a 'claim.'" (*Id.* at 20 (citing *In re Concept Clubs, Inc.*, 154 B.R. 581 (D. Utah 1993); *In re G.S. Omni Corp.*, 835 F.2d 1317, 1319 (10th Cir. 1987)).)

35.    Neither the Supreme Court nor the Second Circuit has addressed the question whether defensive setoff rights are "claims" under 11 U.S.C. § 101(5). The absence of a controlling decision on this threshold issue mandates certification. *See Bullard* v. *Blue Hills Bank*, 575 U.S. 496, 508 (2015) ("Unlike [28 U.S.C.] § 1292(b), which permits certification only when three enumerated factors suggesting importance are all present, § 158(d)(2) permits certification when *any one of ... such factors* exists." (emphasis added)).[4]

36.    ***Second***, even if FDIC-R1's setoff right is not a "claim" and is not barred by the Bar Date Order, the question remains whether FDIC-R1's failure to file a proof of claim amounts to waiver. There is no controlling decision from the Supreme Court or the Second Circuit on this issue either. In fact, in *In re Chateaugay Corp.*, the Second Circuit recognized that other circuits had adopted conflicting positions on the question, but it declined to "decide which of these positions is correct" because the government-claimant in that case did file a proof of claim and the

---

[4]    Indeed, when pressed by the Court to identify an authority stating that a "right of setoff … is an affirmative defense, not a claim" (July 24, 2024 Hr'g Tr. 155:4-11), counsel for FDIC-R1 pointed to a bankruptcy court decision discussing the right of *recoupment*, rather than the right of *setoff* (*id.* at 155:17-156:15, 191:22-192:3 (citing *In re Actrade Fin. Techs., LTD.*, 2010 WL 3386945, at *5 (Bankr. S.D.N.Y. Aug. 23, 2010) ("In contrast to *Iridium* and *North American Energy*, the Plaintiffs in this case cannot demonstrate that the Sureties have any right of affirmative recovery against Actrade that is independent of the claims brought against them by Actrade. *If the Sureties have a defense in the nature of setoff, it would arise from the same prepetition contract on which Actrade bases its claims and would more correctly be termed a right of recoupment*." (emphasis added)))). This exchange highlights the "uncertainty" and "confusion" caused by "the absence of a controlling legal decision" on whether a defensive setoff is a "claim" under section 101(5). *Weber*, 484 F.3d at 161.

A141

proof of claim "was sufficiently specific to preserve [the setoff] right." 94 F.3d 772, 777 (2d Cir. 1996). Whether a claimant must preserve its defensive setoff rights by filing a proof of claim therefore remains "a question of law as to which there is no controlling decision." 28 U.S.C. § 158(d)(2)(A)(i).

37.    **Third**, the Order also presents a related legal question that the Second Circuit has yet to address: whether the discharge under section 1141 of the Bankruptcy Code prevents a claimant from asserting a right of setoff under section 553 post-confirmation. The Committee argues that it does, in light of the text and structure of the Bankruptcy Code. (*See* Comm. St. ¶¶ 45-52.) FDIC-R1 contends that "section 553 must take precedence over section 1141." (Obj. ¶ 30.) The Court ultimately rejected the Committee's argument. The Court first noted that the language in section 553(a) of the Bankruptcy Code provides that "[e]xcept as otherwise provided in this section and in sections 362 and 363 of [Title 11], [Title 11] does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose [pre-petition] … against a claim of such creditor against the debtor that arose [pre-petition]." (Order at 32.) The Court then determined that because "the Court has already concluded that FDIC-R1 is asserting setoff defensively and that it did not need to file a proof of claim to preserve its rights," FDIC-R1's "preserved defensive setoff rights cannot be discharged" by section 1141 of the Bankruptcy Code. (Order 32-33.)

38.    Although the Second Circuit has explained that "set-off claims are subject to the automatic stay of 11 U.S.C. § 362 and are substantively limited by the Bankruptcy Code," the Second Circuit has not addressed whether section 1141 imposes such substantive limitations. *In re Malinowski*, 156 F.3d 131, 133 (2d Cir. 1998). Because a controlling decision "for purposes of § 158(d)(2)(A)(i) is *one that admits of no ambiguity* in resolving the issue," the interplay

-10-

A142

between sections 553 and 1141 constitutes another certifiable question of law as to which there is no controlling decision. *In re IMMC Corp.*, 2016 WL 356026, at *4 (D. Del. Jan. 28, 2016) (emphasis added).

39. The Court should certify the Order for direct appeal in light of these three unsettled questions of law, each of which offers an independent ground for mandatory certification under section 158(d)(2)(A)(i).

**II.      The Order Involves Questions of Law Requiring Resolution of Conflicting Decisions.**

40. Beyond the lack of controlling Second Circuit precedent, an order must be certified under section 158(d)(2)(A)(ii) if it concerns conflicting decisions "within the circuit in which the request for a direct appeal is raised." *In re LATAM Airlines Grp. S.A.*, 2022 WL 2962948, at *9 (Bankr. S.D.N.Y. July 26, 2022). Here, each of the three questions of law requires resolution of conflicting decisions within the Second Circuit.

41. ***First***, although this Court concluded that "FDIC-R1's purported setoff right is defensive and does not affirmatively implicate the Debtor's estate" (Order at 20-21), this Court also recognized that "some courts disagree with this approach and hold that there is no distinction between asserting a setoff as a claim and asserting setoff as a defense" (*id.* at 21 (citing *In re Com. Fin. Servs., Inc.*, 251 B.R. 397, 406 (Bankr. N.D. Okla. 2000)). In both instances, a creditor is asserting a right to recover against the debtor, with the only difference being in the case of a setoff that the creditor is capping its recovery at the amount of the debtor's claim against the creditor. And in asserting a claim as a setoff, the creditor is improving the priority of its claim vis-à-vis other creditors of the same class by effectively claiming secured status. *See In re Iridium Operating LLC*, 285 B.R. 822, 834 (S.D.N.Y. 2002) (quoting *In re N. Am. Energy Conservation, Inc.*, 2000 WL 1514614, at *2 (S.D.N.Y. Oct. 12, 2000)); *see also In re Corp. Res. Servs., Inc.*,

A143

564 B.R. 196, 198-99 (Bankr. S.D.N.Y. 2017) (Glenn, J.) ("The effect of setoff is to elevate an

otherwise unsecured claim—unlikely to receive a substantial recovery in the cases of these

hopelessly insolvent debtors—to secured claim status, further diminishing the recoveries of any

other general unsecured creditors.").

42.      Multiple district courts in this Circuit have thus concluded that a defensive setoff is

a claim.  *See, e.g.*, *Iridium*, 285 B.R. at 833 ("Regardless of whether a setoff is labeled an

'affirmative defense' or a 'counterclaim,' a setoff is a claim against the bankruptcy estate."

(alterations omitted)); *N. Am. Energy*, 2000 WL 1514614, at *2 ("[B]y pleading setoffs in the form

of 'affirmative defenses,' [a claimant] has in fact asserted a claim against [the debtor]'s bankruptcy

estate."); *In re Belmonte*, 551 B.R. 723, 730 (Bankr. E.D.N.Y. 2016) ("[A] claim for setoff is

tantamount to filing a claim against the bankruptcy estate—a claim of setoff is essentially a request

to recover from the estate itself.").

43.      Where, as here, the subject order itself conflicts with other intra-circuit decisions,

section 158(d)(2)(A)(ii) requires certification.  *See Millennium*, 543 B.R. at 714-15 (concluding

that section 158(d)(2)(A)(ii) is met because the court's own decision was in conflict with another

decision within the same circuit); *In re Springfield Hosp., Inc.*, 618 B.R. 109, 119-20 (Bankr.

D. Vt. 2020) (same).

44.      **Second**, courts within the Second Circuit disagree over whether a creditor's failure

to file a proof of claim is fatal to its exercise of a setoff right post-confirmation.  As the Order

pointed out, there are cases "in this district expressly stat[ing] that a defensive right of setoff can

be preserved in the absence of a proof of claim."  (Order at 28-29 (collecting cases within this

District).)  But at least one court in the District has, to the contrary, dismissed a creditor's

"affirmative defense of setoff as a matter of law" because the creditor did not "timely fil[e] a proof

-12-

A144

of claim and assert[] the set-off in the reorganization proceedings." *Daewoo Int'l (Am.) Corp. Creditor Tr.* v. *SSTS Am. Corp.*, 2003 WL 21355214, at *5 (S.D.N.Y. June 11, 2003) (emphasis added).

45.     FDIC-Rs attempted to distinguish *Daewoo* from this case and other authorities on the basis that FDIC-Rs objected to the Plan, whereas the claimant in *Daewoo* did not.  (Obj. ¶ 31.)  The Court accepted that distinction.  (Order at 30.)  But whether the creditor objected to the plan is a factor that the *Daewoo* court considered only in rejecting the claimant's *recoupment* right, not in rejecting its *setoff* right.  With respect to the claimant's recoupment defense, the court in *Daewoo* explained that "recoupment is not a 'claim' within the meaning of the Bankruptcy Code and this right is, as a general matter, unaffected by the debtor's discharge."  *Id.*  But, in that case, "because [the claimant] was provided with *sufficient notice to object to the plan's prohibition on recoupment* and because *it did not do so in a timely fashion* before the Bankruptcy Court," the court did not "allow it to do so" post-confirmation.  *Id.* (emphasis added).

46.     The court denied the creditor's *setoff* claim for different (and more fundamental) reasons.  The court first observed that "where there is a specific provision in the confirmation order prohibiting setoff claims, courts have indicated that the right to setoff may not survive the confirmation plan."  *Id.* at *4.  The court then noted that "the Third Circuit [in *In re Continental*] has taken the position that even a general discharge under § 1141 takes precedence over § 553 where, as here, the debtor had no notice of the setoff claim prior to confirmation of the plan of reorganization by the bankruptcy court."  *Id.* at *5.  The court in *Daewoo* ultimately "agree[d] with the Third Circuit's reasoning" and dismissed the creditor's setoff defense because allowing the creditor to assert a set-off defense post-confirmation "without timely filing a proof of claim and asserting the set-off in the reorganization proceedings[] has a probability of disrupting the plan of

A145

reorganization and can conceivably undermine the objectives and structure of the Bankruptcy Code." *Id.* (alterations omitted). *Daewoo* therefore stands for the proposition that a creditor is required to file a proof of claim pre-confirmation to preserve its *setoff* right—a conclusion that conflicts with the Order and other decisions within the Second Circuit. *See, e.g.*, *Bernstein* v. *IDT Corp.*, 76 B.R. 275, 281 (S.D.N.Y. 1987).

47. **Finally**, whether section 553's setoff provision takes precedence over section 1141's discharge "has divided the courts." 5 Collier on Bankruptcy ¶ 553.08 (16th ed. 2024). On the one hand, the Tenth Circuit has held that "the right to assert a setoff against a mutual, prepetition debt owed the bankrupt estate survives even the Bankruptcy Court's discharge of the bankrupt's debts." *In re Davidovich*, 901 F.2d 1533, 1539 (10th Cir. 1990). On the other hand, the Third Circuit has concluded that a right of setoff is extinguished post-confirmation *unless* the right was "duly exercised in the bankruptcy court before the plan of reorganization is confirmed." *In re Cont'l Airlines*, 134 F.3d 536, 542 (3d Cir. 1998). *Daewoo* adopts the Third Circuit's view that "a general discharge under § 1141 takes precedence over § 553," *Daewoo*, 2003 WL 21355214, at *4-5, whereas this Court concluded that "FDIC-R1's preserved defensive setoff rights cannot be discharged" by virtue of section 1141 (Order at 33). These attempts to harmonize sections 1141 and 553 therefore present another conflict within the Second Circuit.

48. Because the Order implicates at least three questions of law requiring resolution of conflicting intra-circuit decisions, certification is also required pursuant to section 158(d)(2)(A)(ii).

## III. The Appeal Involves a Matter of Public Importance.

49. Certification is further required for the independent reason that this appeal "involves a matter of public importance." 28 U.S.C. § 158(d)(2)(A)(i). "Public importance exists when the matter on appeal transcends the litigants and involves a legal question the resolution of

A146

which will advance the cause of jurisprudence to a degree that is usually not the case." *Springfield*, 618 B.R. at 117. Public importance also exists when "the issue on appeal may aid in upholding fundamental bankruptcy protections" and "may have important practical ramifications." *Essar*, 2020 WL 3574743, at *6. Direct appeal is particularly appropriate if the appeal "raise[s] fundamental legal questions of public importance that lie at the intersection of federal bankruptcy law and federal [non-bankruptcy] law." *In re Extraction Oil & Gas, Inc.*, 2021 WL 3722229, at *6 (D. Del. Aug. 23, 2021).

50.     This appeal qualifies as a matter of public importance. Courts recognize that a "setoff claim takes on particular importance in the context of bankruptcy, as it, in effect, elevates an unsecured claim to secured status to the extent that the debtor has a mutual, pre-petition claim against the party asserting setoff." *Iridium*, 285 B.R. at 834 (internal quotation marks omitted) (quoting *N. Am. Energy*, 2000 WL 1514614, at *2). Through this appeal, Debtor seeks to clarify *when* a creditor can exercise its setoff right, thereby elevating its prepetition unsecured claim to secured status, and *when* a court should preclude the creditor from availing itself of this elevation, either because of its own conduct or by operation of the Bankruptcy Code. These issues "transcend[] the litigants" in this case, *Springfield*, 618 B.R. at 117, since the propriety of setoff— which has "the effect of paying one creditor more than another, in derogation of the general policy of the Bankruptcy Code to afford equal treatment to creditors"—has arisen in many cases before, and will certainly arise again. *See, e.g.*, *In re Arcapita Bank B.S.C.(C)*, 640 B.R. 604, 628 (S.D.N.Y. 2022) (affirming the bankruptcy court's disallowance of setoff under section 553(a)(3)); *In re Orexigen Therapeutics, Inc.*, 990 F.3d 748, 752 (3d Cir. 2021) (analyzing on appeal the "mutuality" requirement for setoffs under section 553).

-15-

A147

51. This case also involves a matter of public importance because "the issue on appeal may aid in upholding fundamental bankruptcy protections." *Essar*, 2020 WL 3574743, at *6 (agreeing with appellant that the public importance factor was met because "allowing the Bankruptcy Court's Order to stand may undermine the Bankruptcy Code's debtor protections provided in §§ 524 and 1141(d)"—the Code's discharge provisions). The discharge of pre-confirmation debt "serves the bankruptcy policy of providing debtors with a 'fresh start' to permit their continued operation free of pre-bankruptcy debts." *DPWN Holdings (USA), Inc.* v. *United Air Lines, Inc.*, 747 F.3d 145, 150 (2d Cir. 2014); *see also Cent. Va. Cmty. Coll.* v. *Katz*, 546 U.S. 356, 363-64 (2006) ("Critical features of every bankruptcy proceeding include the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts."). FDIC-Rs argue that "defensive" setoff rights survive the discharge under section 524 and 1141, whether or not they filed a proof of claim. (Obj. ¶¶ 29-31.) The Order ruled in favor of FDIC-Rs on this issue, rejecting the Committee's contrary arguments. (Order at 31-33.) This appeal thus concerns a fundamental feature of bankruptcy protection—bankruptcy discharge—and its purported exceptions. *See DPWN*, 747 F.3d at 150; *Katz*, 546 U.S. at 363-64.

52. Moreover, answering the questions presented by this appeal may involve addressing the intersection between the Bankruptcy Code and FIRREA, the latter of which FDIC-Rs have repeatedly invoked as a basis for sustaining their Objection. (Obj. ¶¶ 19-27.) This further counsels in favor of certification, as courts have found that the public importance factor is satisfied when the appeal requires harmonizing different federal statutory schemes. *See Extraction Oil*, 2021 WL 3722229, at *6 (certifying appeals for direct review because they "raise fundamental legal questions of public importance that lie at the intersection of federal bankruptcy law and federal energy law," *i.e.*, "how a bankruptcy court should proceed when a debtor in bankruptcy

-16-

A148

moves to reject a contract that has been approved by [the Federal Energy Regulatory Commission]"); 1 Collier on Bankruptcy ¶ 5.06[4][b] (16th ed. 2024) ("Such things as … the applicability of nonbankruptcy law to matters arising in a bankruptcy case … come immediately to mind as matters that might be considered as being of public importance.").

53.     Thus, this appeal must be certified pursuant to section 158(d)(2)(A)(i) because it involves matters that transcend the parties, concerns "fundamental bankruptcy protections," and implicates the interplay between federal bankruptcy law and federal banking law. *Essar*, 2020 WL 3574743, at *6.

## CONCLUSION

For the foregoing reasons, Debtor respectfully requests that the Court enter an order substantially in the form of **Exhibit B** attached hereto, certifying the Order for direct appeal to the United States Court of Appeals for the Second Circuit on or before September 9, 2024.

-17-

A149

Dated:  August 21, 2024
        New York, New York

/s/ Robert A. Sacks
_____
James L. Bromley
Robert A. Sacks
Adam S. Paris
Christian P. Jensen
**SULLIVAN & CROMWELL LLP**
125 Broad Street, New York, NY 10004
Telephone:     (212) 558-4000
Facsimile:     (212) 558-3588
E-mail:        bromleyj@sullcrom.com
               sacksr@sullcrom.com
               parisa@sullcrom.com
               jensenc@sullcrom.com

Diane L. McGimsey (admitted *pro hac vice*)
**SULLIVAN & CROMWELL LLP**
1888 Century Park East, Los Angeles, CA 90067
Telephone:     (310) 712-6600
Facsimile:     (310) 712-8800
E-mail:        mcgimseyd@sullcrom.com

*Counsel for Debtor SVB Financial Group*

A150

**<u>EXHIBIT B</u>**

**Objection of the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A. to the Debtor's Motion to Certify Direct Appeal to the United States Court of Appeals for the Second Circuit Under 28 U.S.C. § 158(d)(2)**

REED SMITH LLP
Kurt F. Gwynne, Esq.
Casey D. Laffey, Esq.
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
E-mail: kgwynne@reedsmith.com
E-mail: claffey@reedsmith.com

REED SMITH LLP
Derek J. Baker, Esq.
(admitted *pro hac vice*)
Three Logan Square
1717 Arch Street
Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-mail: dbaker@reedsmith.com

REED SMITH LLP
Keith M. Aurzada, Esq.
(admitted *pro hac vice*)
2850 N. Harwood Street
Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
E-mail: kaurzada@reedsmith.com

*Counsel to the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank and as Receiver for Silicon Valley Bridge Bank, N.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | X | Chapter 11 |
| | : | |
| SVB FINANCIAL GROUP,[1] | : | Case No. 23-10367 (MG) |
| | : | |
| Debtor. | : | |
| | X | |

**OBJECTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR SILICON VALLEY BANK AND SILICON VALLEY BRIDGE BANK, N.A. TO THE DEBTOR'S MOTION TO CERTIFY DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT UNDER 28 U.S.C. § 158(d)(2)**

---

[1] The last four digits of SVB Financial Group's tax identification number are 2278.

## TABLE OF CONTENTS

**Page**

BACKGROUND .................................................................................................... 1

SUMMARY OF ARGUMENT ............................................................................. 3

ARGUMENT ......................................................................................................... 6

    I.   Certification Is Not Appropriate Under Section 158(d)(2)(A)(i) or (ii). ........................... 6

        A.  The Bar Date Issues on Appeal Involve Mixed Questions of Fact and Law Inappropriate for Certification. ................................................................ 6

        B.  Whether a Defensive Setoff Right Is a "Claim" Is Not a Controlling Legal Issue....... 8

        C.  The Order Does Not Involve a Matter of Public Importance. ..................................... 9

        D.  The Order Does Not Involve Questions of Law Requiring Resolution of *Any* Conflicting Decision Within the Second Circuit. ...................................................... 12

CONCLUSION..................................................................................................... 16

A153

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*In re Am. Home Mortg. Inv. Corp.*,
   408 B.R. 42 (Bankr. D. Del. 2009) ...................................................................6, 7

*Beeman v. BGI Creditors' Liquidating Tr. (In re BGI, Inc.)*,
   504 B.R. 754 (S.D.N.Y. 2014)..............................................................................16

*Carolco Television, Inc. v. Nat'l Broadcasting Co. (In re DeLaurentis Ent. Grp.,
   Inc.)*,
   963 F.2d 1269 (9th Cir.), *cert. denied*, 113 S. Ct. 330 (1992)..................................9

*Citizens Bank of Maryland v. Strumpf*,
   516 U.S. 16 (1995)..........................................................................................7, 11

*In re Continental Airlines*,
   134 F.3d 536 (3d Cir. 1998).............................................................................13, 14

*Daewoo Int'l (Am.) Corp. Creditor Tr. v. SSTS Am. Corp.*,
   2003 U.S. Dist. LEXIS 9802 (S.D.N.Y. June 11, 2003)..............................13, 14, 15

*In re Davidovich*,
   901 F.2d 1533 (10th Cir. 1990) ...............................................................................8

*In re Denby Stores, Inc.*,
   86 B.R. 768 (Bankr. S.D.N.Y. 1988) .....................................................................12

*Geltzer v. Bloom (In re M. Silverman Laces, Inc.)*,
   404 B.R. 345 (Bankr. S.D.N.Y. 2009) ...................................................................12

*IRS v. Luongo (In re Luongo)*,
   259 F.3d 323 (5th Cir. 2001) ..................................................................................8

*In re Johns-Manville Corp.*,
   449 B.R. 31 (S.D.N.Y. 2011)...................................................................................4

*Jones v. Brand (In re Belmonte)*,
   551 B.R. 723 (Bankr. E.D.N.Y. 2016)....................................................................15

*In re LATAM Airlines Grp. S.A.*,
   2022 Bankr. LEXIS 2048 (Bankr. S.D.N.Y. July 26, 2022) ..........................6, 9, 12

*Mark IV Indus., Inc. v. N.M. Env't Dep't*,
   452 B.R. 385 (Bankr. S.D.N.Y. Apr. 12, 2011).........................................................6

A154

*N. Am. Energy Conservation v. Interstate Energy Res., Inc. (In re N. Am. Energy Conservation, Inc.)*,
     2000 U.S. Dist. LEXIS 15084 (S.D.N.Y. Oct. 10, 2000) ........................................15

*Official Comm. of Unsecured Creditors of Enron Corp. v. Whalen (In re Enron Corp.)*,
     357 B.R. 32 (Bankr. S.D.N.Y. 2006) ........................................................................8

*Official Comm. of Unsecured Creditors v. Sabine Oil & Gas Corp. (In re Sabine Oil & Gas Corp.)*,
     2016 U.S. Dist. LEXIS 147710 (S.D.N.Y. Oct. 26. 2016) .......................................4

*Polk 33 Lending, LLC v. THL Corp. Fin., Inc. (In re Aerogroup Int'l., Inc.)*,
     2020 U.S. Dist. LEXIS 25927 (D. Del. Feb. 14, 2020) ..........................................10

*Record Club of America, Inc. v. United Artists Records, Inc.*,
     80 B.R. 271, 278 (S.D.N.Y. 1987) ..........................................................................16

*Sabine Oil & Gas Corp. v. HPIP Gonzales Holdings, LLC (In re Sabine Oil & Gas Corp.)*,
     551 B.R. 132 (Bankr. S.D.N.Y.), aff'd, 562 B.R. 211 (S.D.N.Y. 2016) ...........6, 9, 10

*Shu Lun Wu v. May Kwan Si, Inc.*,
     508 B.R. 606 (S.D.N.Y. 2014) ...................................................................................8

*In re Springfield Hosp., Inc.*,
     618 B.R. 109 (Bankr. D. Vt. 2020) ..........................................................................12

*Statutory Comm. of Unsecured Creditors v. Motorola (In re Iridium Operating LLC)*,
     285 B.R. 822 (S.D.N.Y. 2002) .................................................................................15

*Studley v. Boylston Nat'l Bank*,
     229 U.S. 523 (1913) .................................................................................................11

*Thelen LLP v. Fontana (In re Thelen LLP)*,
     2015 Bankr. LEXIS 2787 (Bankr. S.D.N.Y. Aug. 21, 2015) ...................................12

*Weber v. United States Tr.*,
     484 F.3d 154 (2d Cir. 2007) .............................................................................. *passim*

*In re Whittaker, Clark & Daniels, Inc.*,
     2023 Bankr. LEXIS 1918 (Bankr. D.N.J. July 31, 2023) ................................7, 9, 10

*Woolsey v. Citibank, N.A. (In re Woolsey)*,
     696 F.3d 1266 (10th Cir. 2012) ........................................................................1, 4, 5, 9

A155

**Statutes**

11 U.S.C. § 32(f)(2) ........................................................................................16

11 U.S.C. § 101(5) ........................................................................................3, 8

11 U.S.C. § 101(12) ..........................................................................................8

11 U.S.C. § 108(a) ..........................................................................................16

11 U.S.C. § 553 ......................................................................................3, 6, 8, 14

11 U.S.C. § 553(a) ..............................................................................1, 7, 10, 11

11 U.S.C. § 1141 ....................................................................................3, 6, 14

28 U.S.C. § 158(d)(2) ..............................................................................1, 4, 8, 9

28 U.S.C. § 158(d)(2)(A) ....................................................................................3, 9

28 U.S.C. § 158(d)(2)(A)(i) .......................................................................... *passim*

28 U.S.C. § 158(d)(2)(A)(i)-(ii) ............................................................................3

28 U.S.C. § 158(d)(2)(A)(i)-(iii), (B) ..................................................................3

28 U.S.C. § 158(d)(2)(A)(iii) ..............................................................................16

**Rules**

FED. R. BANKR. P. 8006(b)-(f) ............................................................................3

A156

The Federal Deposit Insurance Corporation, in its capacity as Receiver for Silicon Valley Bank ("FDIC-R1") and Silicon Valley Bridge Bank, N.A. ("FDIC-R2" and together with FDIC-R1, the "FDIC-Rs"), by and through their counsel, hereby object (this "Objection") to *Debtor's Motion to Certify Direct Appeal to the United States Court of Appeals for the Second Circuit Under 28 U.S.C. § 158(d)(2)* [D.I. 1406] (the "Motion") of the *Memorandum Opinion and Order Sustaining the Objection of the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A. to the Second Amended Chapter 11 Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [D.I. 1380] (the "Order"), wherein the Court sustained the *Objection of the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A., to Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code.* [D.I. 1268] (the "Confirmation Objection"), and respectfully state as follows:

### BACKGROUND

1. On July 8, 2024, FDIC-R1 filed its Confirmation Objection. The FDIC-Rs objected to the *Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [D.I. 1175] (as further modified or amended, the "Plan") because (among other reasons) it improperly sought to extinguish FDIC-R1's defensive setoff rights, which are preserved by section 553(a) of the Bankruptcy Code. Confirmation Objection ¶¶ 29-39.

2. On July 18, 2024, the Debtor filed its *Reply to the Objection of the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A. to the Second Amended Chapter 11 Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [D.I. 1306] (the "Reply"). In its Reply, the Debtor argued, among other things, that FDIC-R1's defensive setoff rights do not survive confirmation because FDIC-R1 did not file a proof of claim. Reply ¶¶ 35-41.

A157

3.      On July 18, 2024, the Official Committee of Unsecured Creditors (the
"<u>Committee</u>") filed its *Statement of Official Committee of Unsecured Creditors in Support of
Confirmation of the Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the
Bankruptcy Code and in Response to Certain Objections Thereto* [D.I. 1309] (the "<u>Statement</u>").
In its Statement, the Committee made arguments similar to the Debtor's arguments in the Reply
and argued that FDIC-R1's defensive setoff rights were barred by the bar date order as "claims."
*See, e.g.,* Statement ¶ 34.

4.      On July 18, 2024, an ad hoc group of senior noteholders (the "<u>Ad Hoc Cross-Holder
Group</u>") filed their *Reply of the Ad Hoc Group of Senior Noteholders (I) to the Hildene Objection
and (II) in Support of Confirmation of the Debtor's Second Amended Plan of Reorganization
Under Chapter 11 of the Bankruptcy Code* [D.I. 1310] (the "<u>Ad Hoc Cross-Holder Reply</u>").  In the
Ad Hoc Cross-Holder Reply, the Ad Hoc Cross-Holder Group joined in the Reply.  *See* Ad Hoc
Cross-Holder Reply, ¶ 12.

5.      On August 2, 2024, the Court issued the 33-page, well-reasoned Order sustaining
the FDIC-Rs' Confirmation Objection.  On that date, the Court also entered its *Findings of Fact,
Conclusions of Law and Order Confirming the Debtor's Second Amended Plan of Reorganization
Under Chapter 11 of the Bankruptcy Code* [D.I. 1379], thereby confirming the Plan.

6.      On August 9, 2024, the Debtor and the Official Committee of Unsecured Creditors
filed a *Notice of Appeal* [D.I. 1389].  The Ad Hoc Cross-Holder Group did not join in the appeal.

7.      On August 21, 2024, the Debtor filed the Motion by which it seeks to circumvent
an appeal to the United States District Court for the Southern District of New York.  In the Motion,
the Debtor seeks certification of the Order for direct appeal to the United States Court of Appeals
for the Second Circuit on the grounds that the Order "involves a question of law as to which there

is no controlling decision," "involves a matter of public importance," or "involves a question of law requiring resolution of conflicting decisions" in this Circuit. *See* 28 U.S.C. § 158(d)(2)(A)(i)-(ii).

8.     The Debtor asserts the following three issues as "potentially dispositive" "questions of law" for appeal: "(i) whether a 'defensive' setoff right is a 'claim' under 11 U.S.C. § 101(5); (ii) whether a creditor that was aware of the subject matter for which it claims defensive setoff rights prior to the bar date waives its defensive setoff rights by failing to file a proof of claim before the bar date; and (iii) whether a creditor's setoff rights under 11 U.S.C. § 553 are discharged by the confirmation of a chapter 11 plan under 11 U.S.C. § 1141, where the creditor intentionally did not file a proof of claim before the bar date." Motion, ¶ 1. None of these provide a basis for certification of a direct appeal to the Second Circuit.

9.     For the reasons set forth below, the Court should deny the Motion.

## SUMMARY OF ARGUMENT

10.    Section 158(d)(2)(A) provides, in part, that a court of appeals has jurisdiction to directly review a bankruptcy court's order if the court where the matter is pending certifies the order for direct appeal and the court of appeals authorizes the appeal. 28 U.S.C. § 158(d)(2)(A); *see also* FED. R. BANKR. P. 8006(b)-(f).

11.    A bankruptcy or district court must certify an order for direct appeal to the court of appeals if the court determines that the order (i) "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance," (ii) the order "involves a question of law requiring resolution of conflicting decisions," or (iii) when immediate appeal "may materially advance the progress of the case or proceeding in which the appeal is taken." 28 U.S.C. § 158(d)(2)(A)(i)-(iii), (B).

A159

12.    Congress authorized direct appeals of bankruptcy court decisions under 28 U.S.C. § 158(d)(2) in very limited circumstances "to facilitate . . . provision of guidance on pure questions of law," *Weber v. United States Tr.*, 484 F.3d 154, 158 (2d Cir. 2007), by "speed[ing] up the resolution of dispositive legal questions." *Woolsey v. Citibank, N.A. (In re Woolsey)*, 696 F.3d 1266, 1268 (10th Cir. 2012).

13.    The fact that a direct appeal would be "quicker" is not a basis to certify an order. *See In re Johns-Manville Corp.*, 449 B.R. 31, 34 (S.D.N.Y. 2011) (rejecting the "argument for expedition . . . that the appeal [would] quicker because it need only be heard by one court—the Court of Appeals"). Bankruptcy cases should not "leapfrog[] the district court in the appeals process." *Weber*, 484 F.3d at 160. Instead, they normally should "percolate" through the District Court before proceeding to the Court of Appeals. *Id.*; *see also Official Comm. of Unsecured Creditors v. Sabine Oil & Gas Corp. (In re Sabine Oil & Gas Corp.)*, 2016 U.S. Dist. LEXIS 147710, *7 (S.D.N.Y. Oct. 26. 2016) (quoting *Weber*, 484 F.3d at 160). Proceeding through the traditional appellate framework allows for a more detailed development of the appellate record and the potential to streamline issues. *See generally Weber,* 484 F.3d at 160 ("Congress wisely permitted Courts of Appeals to reject direct appeals, probably "in recognition of the salutary effects" of allowing cases to proceed through the normal channels).

14.    Here, the Debtor does not satisfy any of the criteria for direct appeal, and its appeal should percolate through the District Court—which already has some familiarity with the Debtor and its bankruptcy case.

15.    The Order does not involve a pure or controlling "question of law" as to which there is no controlling decision, as required for certification under section 158(d)(2)(A)(i). As decided by the Court (based, in part, on FDIC-R1 providing sufficient pre-confirmation notice of

A160

its defensive setoff rights and objecting to the Plan) *and* as argued by the Debtor (based on FDIC-R1's "own conduct"), the bar-date issues raised by the Debtor involve mixed questions of fact and law that are inappropriate for certification. The sole legal issue raised by the Debtor (whether defensive setoff is a "claim") fails to satisfy the criteria for certification because it is *not* a dispositive issue.

16.     The Debtor's appeal does not involve any "matter of public importance," as required (alternatively) for certification under section 158(d)(2)(A)(i). The Order simply preserves FDIC-R1's defensive setoff rights for resolution in another forum. The Debtor and FDIC-R1 will litigate those setoff defenses in Case No. 5:24-cv-01321-BLF, styled *SVB Financial Group v. Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A.*, which is pending in the United States District Court for the Northern District of California (the "N.D. Cal. Action"). Meanwhile, the Debtor has received the benefit of its bankruptcy discharge as FDIC-R1's defensive setoff rights do not permit (and FDIC-R1 does not seek) an affirmative recovery from the Debtor's estate.

17.     The Order also does not involve any question of law requiring resolution of "conflicting decisions," as required (alternatively) for certification under section 158(d)(2)(A)(ii). In fact, the case law in the Second Circuit addressing the *same* questions of law *unanimously* agrees with the Court's legal conclusions. The Debtor's reliance upon inapposite or selectively quoted cases does not create a "conflict" in the case law of this Circuit.

A161

## ARGUMENT

### I.   Certification Is Not Appropriate Under Section 158(d)(2)(A)(i) or (ii).

#### A.   The Bar Date Issues on Appeal Involve Mixed Questions of Fact and Law Inappropriate for Certification.

18.   "Under its plain terms, [Section 158(d)] mandates that the order at issue raise a 'question of law', not a question of fact."  *In re LATAM Airlines Grp. S.A.*, 2022 Bankr. LEXIS 2048, *11 (Bankr. S.D.N.Y. July 26, 2022).  Certifications for direct appeal are reserved for "***pure*** questions of law."  *Mark IV Indus., Inc. v. N.M. Env't Dep't*, 452 B.R. 385, 390 (Bankr. S.D.N.Y. Apr. 12, 2011) (emphasis added); *see also Weber*, 484 F.3d at 158 (provision for direct appeal was intended "to facilitate [the Circuit Court's] guidance on pure questions of law.").  Thus, certification for direct appeal is not warranted for "'mixed questions [of law and fact] that implicate the particular circumstances of [the] case and, as such, . . . are not pure legal questions warranting direct certification.'"  *Sabine Oil & Gas Corp. v. HPIP Gonzales Holdings, LLC* (*In re Sabine Oil & Gas Corp.*), 551 B.R. 132, 140 (Bankr. S.D.N.Y.) (quoting *In re Am. Home Mortg. Inv. Corp.*, 408 B.R. 42, 44 (Bankr. D. Del. 2009)), *aff'd*, 562 B.R. 211 (S.D.N.Y. 2016).

19.   As indicated above, two of the Debtor's three alleged "questions of law" warranting certification for direct appeal based on FDIC-R1's decision not to file a proof of claim by the governmental bar date are as follows:  "[w]hether a creditor that was aware of the subject matter for which it claims defensive setoff rights prior to the bar date waives its defensive setoff rights by failing to file a proof of claim before the bar date" and "[w]hether a creditor's setoff rights under 11 U.S.C. § 553 are discharged by the confirmation of a chapter 11 plan under 11 U.S.C. § 1141, where the creditor intentionally did not file a proof of claim before the bar date."  Motion, ¶ 1.

20.   While the Debtor is "free to frame the issues and challenge the . . . Order in any fashion [it] so wish[es]," the Court "is not constrained to view the substance of its ruling and the

- 6 -

A162

applicable law in the same" manner as the Debtor frames them. *See In re Whittaker, Clark &
Daniels, Inc.*, 2023 Bankr. LEXIS 1918, *5 (Bankr. D.N.J. July 31, 2023); *In re Am. Home Mortg.
Inv. Corp.*, 408 B.R. at 44 (holding that "those issues that are specifically linked to the Bankruptcy
Court's decision are, in the Court's view. . . , mixed questions that implicate the particular
circumstances of this case, and as such, they are not pure legal questions warranting direct
certification").

21.     Notwithstanding the Debtor's framing of the issue, the Court did not resolve either
issue on a purely legal basis.  The Court's resolutions of both issues were based, in part, on
important factual findings.  For instance, the Court's ruling that FDIC-R1 was not required to file
a proof of claim to preserve its defensive setoff rights was based, in part, on the Court's factual
findings.  Specifically, the Court relied upon the facts that "FDIC-R1 has objected to the Plan and
appeared at the Confirmation Hearing, and generally provided notice to the Debtor and other
stakeholders that it intended to assert its defensive setoff rights" to conclude that, "[a]lthough the
FDIC-R1 has not filed a proof of claim, it has taken sufficient affirmative action to put parties on
notice."  Order at 30.  Indeed, the Court notes in the Order that "the Debtor and creditors were
aware of the FDIC-R1's purported defensive right of setoff which is why the Disclosure Statement
projections for creditor recoveries accounted for a scenario where the Debtor recovered nothing
from the N.D. Cal. Action." *Id.*

22.     To the extent the Debtor seeks to ignore the Court's factual findings, the Debtor
runs afoul of controlling precedent of the United States Supreme Court on the "question of law"
regarding preservation of setoff rights.  *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16,
18 (1995) ("Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C.

A163

§ 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is *preserved* in bankruptcy.") (emphasis added); Order at 22.

23.     Accordingly, certification is not warranted under section 158(d)(2)(A)(i) or (ii) on the issues relating to the bar-date order because those issues, as resolved by the Court, involved mixed questions of fact and law.

**B.     Whether a Defensive Setoff Right Is a "Claim" Is Not a Controlling Legal Issue.**

24.     Section 158(d)(2) is meant to authorize direct appeals of *controlling* questions of law. *Weber*, 484 F.3d at 158 ("The focus of the statute is explicit: on appeals that raise *controlling* questions of law, concern matters of public importance, and arise under circumstances where a prompt, determinative ruling might avoid needless litigation.") (emphasis added).

25.     The Debtor's third alleged "question of law" warranting certification for direct appeal is as follows:  "[w]hether a 'defensive' setoff right is a 'claim' under 11 U.S.C. § 101(5)." Motion, ¶ 1.  Although the Debtor describes that issue as a "potentially dispositive" legal issue (Motion, ¶ 1), it is *not* dispositive.  Even if a defensive setoff right is a "claim," a discharged "claim" or "debt"[2] can be used defensively for setoff purposes.  *E.g., In re Davidovich*, 901 F.2d 1533, 1539 (10th Cir. 1990) ("a discharged debt may be setoff upon compliance with the terms and conditions stated in section 553 of the Code"); *see also IRS v. Luongo (In re Luongo)*, 259 F.3d 323, 333 (5th Cir. 2001) (holding that the Bankruptcy Code creates "an equitable balance by preventing affirmative action to collect the discharged debt, while preserving the creditor's right

---

[2] "Debt" is defined as "liability on a claim."  11 U.S.C. 101(12). "It is well settled that 'claim' and 'debt' are synonymous, such that whenever a 'claim' arises, a 'debt' necessarily arises as well; the only distinction between the two terms is the party to which it applies." *Shu Lun Wu v. May Kwan Si, Inc.*, 508 B.R. 606, 611 (S.D.N.Y. 2014) (quoting *Official Comm. of Unsecured Creditors of Enron Corp. v. Whalen (In re Enron Corp.)*, 357 B.R. 32, 47 (Bankr. S.D.N.Y. 2006)).

A164

to raise a discharged debt as a defense to a recovery action brought by the debtor"); *Carolco Television, Inc. v. Nat'l Broadcasting Co. (In re DeLaurentis Ent. Grp., Inc.)*, 963 F.2d 1269, 1276-77 (9th Cir.), *cert. denied*, 113 S. Ct. 330 (1992) (discharged debt can be setoff).

26.     Certification for direct appeal is not warranted for such *non-dispositive* issues. *Woolsey*, 696 F.3d at 1268 (section 158(d)(2)(A) "gives [the circuit court] the authority to hear appeals straight from the bankruptcy court, leapfrogging over the district court or bankruptcy appellate panel in order *to speed up the resolution of dispositive legal questions*.") (emphasis added) (citing *Weber*, 484 F.3d at 157-58).

**C.      The Order Does Not Involve a Matter of Public Importance.**

27.     As indicated above, an order may be certified for direct appeal when it involves a matter of "public importance."  28 U.S.C. § 158(d)(2)(A)(i).  The "public importance" prong of section 158(d)(2) has been read "narrowly."  *Whittaker,* 2023 Bankr. LEXIS 1918, *8.

28.     "The bar for certification under this standard should be set high."  1 COLLIER ON BANKRUPTCY ¶ 5.06[4][b] (16th 2023).  "[P]ublic importance exists when the matter on appeal 'transcend[s] the litigants and involves a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case.'" *LATAM Airlines*, 2022 Bankr. LEXIS 2048, *4-5 (quoting *Sabine*, 551 B.R. at 140).  An appeal that "impacts only the parties, and not the public at large, is not a matter of public importance." *Id.* at *4-5.

29.     An appeal may not present a matter of "public importance" even if an underlying case receives media coverage or is important to certain members of the public. *See Sabine,* 551 B.R. at 141 ("Nor is the Court persuaded that Nordheim's appeals of the Rejection Order and the Nordheim Summary Judgment Order each constitutes a matter of 'public importance' because this dispute has received substantial news coverage or because the oil and gas midstream industry is

A165

watching this case closely. Simply because a matter is important to certain members of the public does not render it a matter of 'public importance' that meets the standard for direct certification.").

30.     The Debtor argues that its appeal transcends the parties because it involves "setoff," which "has arisen in many cases before, and will certainly arise again." Motion, ¶ 50. Such broad generalities would render any order subject to certification for a direct appeal just because the issue will arise again between other parties. Such an interpretation would encompass almost every bankruptcy appeal. The Debtor's exceedingly broad interpretation of "public importance" is contrary to the *narrow* interpretation given to "public importance" under section 158(d)(2)(A)(i).

31.     As discussed above, the Debtor's purported "legal questions" were resolved by the Court on a mixed basis of fact and law. The Debtor also makes clear that its arguments concerning setoff involve factual issues regarding FDIC-R1's "own conduct." *See* Motion, ¶ 50 ("Through this appeal, Debtor seeks to clarify when a creditor can exercise its setoff right, thereby elevating its prepetition unsecured claim to secured status, and when a court should preclude the creditor from availing itself of this elevation, either *because of its own conduct or* by operation of the Bankruptcy Code."). Such factual issues preclude the Order from "transcending" the litigants. *See Whittaker*, 2023 Bankr. LEXIS 1918, *8-9 ("'an issue involving a mixed question of law and fact generally does not constitute a matter of public importance,' because such issues 'generally do not "transcend" the parties and advance the cause of jurisprudence to an unusual degree.'") (quoting *Polk 33 Lending, LLC v. THL Corp. Fin., Inc., (In re Aerogroup Int'l., Inc.)*, 2020 U.S. Dist. LEXIS 25927, *17 (D. Del. Feb. 14, 2020)).

32.     The Debtor's assertion of "public importance" regarding the subject of setoff is meritless for another reason. The Debtor seeks to *extinguish* FDIC-R1's setoff rights, despite the fact that the Bankruptcy Code expressly *preserves* setoff rights. *See* 11 U.S.C. § 553(a). The

A166

Supreme Court has recognized that setoff avoids "the absurdity of making A pay B when B owes A." *Strumpf*, 516 U.S. at 18 (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)). By preserving setoff rights, section 553(a) avoids that absurdity. Consistent with the policy expressed in section 553(a), the Order merely *preserved* (but did not decide) FDIC-R1's setoff rights, which will be resolved in the N.D. Cal. Action. Order at 30-31 ("In sum, the Court determines that the FDIC-R1's ability to assert defensive setoff rights are preserved. . . . As the Debtor concedes, the '[m]erits of setoff [is] not at issue in Plan confirmation.'" (quoting Debtor Confirmation Presentation at 34)); *see also* Order at 24 ("the merits of the underlying claims may be addressed in the N.D. Cal. Action when the defensive setoff rights are formally asserted"). Thus, certification for direct appeal will not advance a matter of "public importance."[3]

33. The Debtor's assertion that its appeal involves a matter of "public importance" because it involves the bankruptcy discharge, a "fundamental" bankruptcy protection, is grossly exaggerated. The Debtor ignores that it has obtained the full benefit of its discharge. The Court held that the bankruptcy discharge, while permitting defensive setoff, precluded any affirmative recovery on account of such setoff rights. *See* Order at 33 ("[T]he Court emphasizes and makes clear that this ruling as to discharge is limited solely to the FDIC-R1's *preserved* setoff rights. Any claim that the FDIC- R1 may have held against the Debtor in this bankruptcy case for which it was required to file a proof of claim in this case, including those relating to the personal liability of the Debtor, is otherwise discharged") (emphasis in original). The Ad Hoc Cross-Over Group

---

[3] If the Court had extinguished FDIC-R1's defensive setoff rights contrary to the Bankruptcy Code and FDIC-R1's functions and powers under Title 12 of the U.S. Code, that would involve a matter of "public importance." Merely preserving those defensive setoff rights in the Order for resolution in another forum is obviously and substantively different.

acknowledged that FDIC-R1's defensive setoff "is not money that would come out of the estate."
Order at 21.

34.     Notably, "counsel to the Debtor and the Ad Hoc Cross-Holder Group emphasized
that the Plan could be confirmed and go effective even if the FDIC Setoff Objection remained
unresolved" (Order at 21), thereby conceding that the defensive setoff issue did not impair the
Debtor's ability to consummate its Plan and take advantage of its bankruptcy discharge.

### D.    The Order Does Not Involve Questions of Law Requiring Resolution of *Any* Conflicting Decision Within the Second Circuit.

35.     The Debtor also does not satisfy the standard for certification under section
158(d)(2)(A)(ii) as there are no "conflicting decisions" within the Second Circuit requiring
"resolution."

36.     "[S]ection 158(d)(2)(A)(ii) concerns 'conflicting decisions' only within the circuit
in which the request for a direct appeal is raised—i.e., here, the Second Circuit." *LATAM*, 2022
Bankr. LEXIS 2048, *25. "'[C]onflicting decisions from outside [the relevant circuit] do not
satisfy the criterion for certification.'" *Id*. at *25-26 (quoting *In re Springfield Hosp., Inc.*, 618
B.R. 109, 119 (Bankr. D. Vt. 2020)).

37.     All of the decisions in the Second Circuit cited by the parties have held that a
creditor is not required to file a proof of claim to preserve its right of setoff. *See, e.g., Thelen LLP
v. Fontana (In re Thelen LLP)*, 2015 Bankr. LEXIS 2787, *22 (Bankr. S.D.N.Y. Aug. 21, 2015)
(Wiles, J.) ("[T]he clearly prevailing view in the case law (as the Trustee has acknowledged) is
that a proof of claim is not required in order to assert setoff as a defense to a claim made by the
estate."); *Geltzer v. Bloom (In re M. Silverman Laces, Inc.)*, 404 B.R. 345, 365 (Bankr. S.D.N.Y.
2009) (Drain, J.) ("The clear majority and better view . . . is that filing a proof of claim is not a
prerequisite to asserting an otherwise valid setoff."); *In re Denby Stores, Inc.*, 86 B.R. 768, 777

A168

n.8 (Bankr. S.D.N.Y. 1988) (Brozman, J.) ("[A] creditor seeking to exercise setoff is not required to file a proof of claim.").  The Debtor does not cite any cases within the Second Circuit where a court held that filing a proof of claim is the only way for a party to preserve a defensive right of setoff.  Accordingly, there are no conflicting decisions on that issue.  *See Weber*, 484 F.3d at 161 (finding no conflicting decisions where "all three of the courts within this circuit to have considered the question have" reached the same conclusion) (internal quotation marks omitted).

38.     The Debtor tries to manufacture "conflicting decisions" by pointing to *Daewoo Int'l (Am.) Corp. Creditor Tr. v. SSTS Am. Corp.*, 2003 U.S. Dist. LEXIS 9802, * (S.D.N.Y. June 11, 2003), as support for its assertion that a party's failure to file a proof of claim is fatal to a post-confirmation assertion of defensive setoff.  Motion, ¶¶ 44-46.  As noted by the Court in the Order, however, *Daewoo* is "easily" distinguished from the present case and, therefore, not in conflict with the Order.  Order at 30.

39.     *Daewoo* concerned post-confirmation viability of a party's assertion of setoff where the "debtor had no notice" of the party's setoff rights.  *Daewoo*, 2003 U.S. Dist. LEXIS 9802, *16.  For that reason, the *Daewoo* court agreed with the Third Circuit's reasoning that "*allowing the creditor to come forward after the plan of reorganization has been confirmed and . . . decide that it has a valid set-off* without timely filing a proof of claim and asserting the set-off in the reorganization proceedings, has a probability of disrupting the plan of reorganization . . . and can conceivably undermine . . . the objectives and structure of the Bankruptcy Code."  *Id.* at *16-17 (quoting *In re Continental Airlines*, 134 F.3d 536, 542 (3d Cir. 1998)) (emphasis added).

40.     Cases like *Continental* and *Daewoo* involved parties that raised setoff rights *post-confirmation* in the face of a confirmed plan that extinguished setoff rights.  That implicates section 1141(a) of the Bankruptcy Code, which provides that "the provisions of a confirmed plan bind the

A169

debtor . . . and any creditor . . . whether or not such creditor . . . has accepted the plan." 11 U.S.C. § 1141(a).

41.     In contrast, here, FDIC-R1 repeatedly came forward *prior to confirmation of the Plan* and asserted its defensive setoff rights *and* objected to confirmation of the Plan. Thus, unlike in *Continental* and *Daewoo*, the Debtor and stakeholders were well-aware of FDIC-R1's defensive setoff rights. As "emphasized" by "counsel for the Ad Hoc Cross Holder Group . . . at the Confirmation Hearing, the Debtor and creditors were aware of the FDIC-R1's purported defensive right of setoff" and "the Disclosure Statement projections for creditor recoveries accounted for a scenario where the Debtor recovered nothing from the N.D. Cal. Action" because the "possibility of setoff was 'expressly contemplated.'" Order at 30. As setoff was expressly accounted for in the Debtor's Plan distribution scenarios, this is not a case (like *Daewoo* or *Continental)* where a party raised its defensive setoff rights post-confirmation and thereby threatened to "disrupt" or "undermine" a plan that did not contemplate the possibility of setoff.

42.     For those reasons, the Court distinguished *Daewoo* and *Continental* because "[u]ltimately, the concerns that moved the *Daewoo* and *In re Cont'l Airlines* Courts are **not** present here." Order at 30 (emphasis added).

43.     In another attempt to manufacture a split in courts within the Second Circuit, the Debtor selectively misquotes *Daewoo* to create a false impression of a conflict with the Order. Specifically, the Debtor asserts that "*Daewoo* adopts the Third Circuit's view that 'a general discharge under § 1141 takes precedence over § 553,' *Daewoo*, whereas this Court concluded that 'FDIC-R1's preserved defensive setoff rights cannot be discharged' by virtue of section 1141 (Order at 33)." Motion, ¶ 47. The full quote in *Daewoo*, however, is as follows: "[T]he Third Circuit has taken the position that even a general discharge under § 1141 takes precedence over §

A170

553 *where, as here, the debtor had no notice of the setoff claim prior to confirmation of the plan of reorganization by the bankruptcy court*." *Daewoo*, 2003 Dist. LEXIS 9802, *16 (emphasis added). The Debtor deleted the emphasized text in an attempt to create a conflict that does not exist because, in the present case (unlike in *Daewoo*), the Debtor *had notice* of FDIC-R1's defensive setoff rights prior to confirmation and even accounted for FDIC-R1's possible setoff in determining any recovery from the N.D. Cal. Action. *See supra* ¶¶ 21 & 41.

44. In its last attempt to manufacture a split in the Second Circuit, the Debtor also challenges the Court's conclusion that "FDIC-R1's purported setoff right is defensive and does not affirmatively implicate the Debtor's estate" (Order at 20-21) as conflicting with three other cases.[4] Those three cases, however, address *different* questions—*i.e.,* whether setoff is a core or non-core matter and (in one case) its impact on jury trial rights. Motion, ¶ 42.[5] None of the three cases cited by the Debtor address or bear any relevance to (a) whether a party's defensive setoff rights are barred by failure to file a proof of claim, or (b) whether the discharge extinguishes defensive setoff where a party puts a debtor and other stakeholders on notice of its defensive setoff rights and objects to the debtor's chapter 11 plan.

---

[4] *Statutory Comm. of Unsecured Creditors v. Motorola (In re Iridium Operating LLC)*, 285 B.R. 822 (S.D.N.Y. 2002); *N. Am. Energy Conservation v. Interstate Energy Res., Inc. (In re N. Am. Energy Conservation, Inc.),* 2000 U.S. Dist. LEXIS 15084 (S.D.N.Y. Oct. 10, 2000); *Jones v. Brand (In re Belmonte)*, 551 B.R. 723 (Bankr. E.D.N.Y. 2016).

[5] The *Iridium* court held that the defendant's assertion of setoff as an affirmative defense was a "core" proceeding because it was logically connected to the defendant's other counterclaims. 285 B.R. at 833 ("they arise from the same transactions, are logically connected to each other, and interpret the same issues"). Here, FDIC-R1's defensive setoff rights do not arise out of the same transaction as the Debtor's deposit claim. Similarly, in *N. Am. Energy Conservation,* the Court held that the defensive right of setoff was a "core" proceeding that "squints in the direction of leaving this matter in the bankruptcy court." 2000 U.S. Dist. LEXIS 15084, *7. *Belmonte* involved the court's determination that a party was not entitled to a jury trial when it asserted a defensive setoff right. 551 B.R. at 730.

A171

45.     The Debtor's reliance upon inapposite cases addressing different questions to create a conflict with the Order lacks merit.  *See Weber*, 484 F.3d at 161 (finding no conflicting decisions where "all three of the courts within this circuit to have considered *the question* have" reached the same conclusion) (emphasis added).

46.     Accordingly, there are *no* conflicting decisions on any pure "question of law" in the Second Circuit as required for certification under section 158(d)(2)(A)(ii).[6]  Any differences in the Second Circuit case law addressing the same questions of law as the Order are "easily" explained by factual distinctions.  There is no split in Second Circuit case law on any of the issues identified in the Motion.[7]

## CONCLUSION[8]

WHEREFORE, for the foregoing reasons, the FDIC-Rs respectfully requests that the Court enter an order (i) denying the Motion, and (ii) granting to the FDIC-Rs such further relief as is appropriate.

---

[6] As counsel for FDIC-R1 noted during oral argument, even case law from this District under the former Bankruptcy Act of 1898 is consistent with the Order.  *See Record Club of America, Inc. v. United Artists Records, Inc.,* 80 B.R. 271, 278 (S.D.N.Y. 1987) (holding that "right of setoff, however, is unaffected by Record Club's discharge in bankruptcy" and "§ 68(a) of the Bankruptcy Act [(repealed 1978)] permits setoffs of mutual debts between the bankrupt and a creditor.  11 U.S.C. § 108(a).  Although § 14(f)(2) enjoins creditors from 'instituting or continuing any action or employing any process to collect debts' from the bankrupt, 11 U.S.C. 32(f)(2), the courts have held that § 14(f)(2) bars only affirmative action to recover the debt, and does not bar the assertion of a setoff as a defense to an action brought by the debtor.").

[7] Notably, the Debtor fails to cite a *single* case from *anywhere* in the United States where a court has held that a debtor may discharge defensive setoff rights where the creditor, like FDIC-R1, appeared at the confirmation hearing and objected to a plan provision that would extinguish those rights.  *See Order at 29.

[8] The Debtor does not argue for certification under section 158(d)(2)(A)(iii), which provides for certification when "immediate appeal from the . . . order . . . may materially advance the progress of the case or proceeding in which the appeal is taken."  28 U.S.C. § 158(d)(2)(A)(iii).  Accordingly, any such argument is waived.  *See generally Beeman v. BGI Creditors' Liquidating Tr. (In re BGI, Inc.)*, 504 B.R. 754, 765 (S.D.N.Y. 2014) (certification of appeal would not advance the progress of litigation where plan was confirmed and the trustee was not stayed from continuing his efforts to pursue claims and make distributions under the plan).

A172

Dated: September 4, 2024                    Respectfully submitted,
New York, New York


OF COUNSEL:                                 **REED SMITH LLP**

Jeffrey E. Schmitt, Senior Counsel          */s/ Kurt F. Gwynne*_____
Nicholas Katsonis, Counsel                  Kurt F. Gwynne, Esq.
Federal Deposit Insurance Corporation       Casey D. Laffey, Esq.
3501 Fairfax Drive                          599 Lexington Avenue
Room VS-D-7066                              New York, NY 10022
Arlington, VA 22226                         Telephone: (212) 521-5400
Telephone: (703) 562-2089                   Facsimile: (212) 521-5450
Facsimile: (202) 898-3838                   E-mail: kgwynne@reedsmith.com
E-Mail: jschmitt@fdic.gov                   E-mail: claffey@reedsmith.com
E-Mail: nkatsonis@fdic.gov
                                            -and-

                                            Derek J. Baker, Esq.
                                            (admitted pro hac vice)
                                            1717 Arch Street
                                            Three Logan Square, Suite 3100
                                            Philadelphia, PA 19103
                                            Telephone: (215) 851-8100
                                            Facsimile: (215) 851-1420
                                            E-mail: dbaker@reedsmith.com

                                            -and-

                                            Keith M. Aurzada, Esq.
                                            (admitted pro hac vice)
                                            2850 N. Harwood Street, Suite 1500
                                            Dallas, TX 75201
                                            Telephone: (469)-680-4200(469)0
                                            Facsimile: (469) 680-4299
                                            E-mail: kaurzada@reedsmith.com


                                            *Counsel to the Federal Deposit*
                                            *Insurance Corporation, as Receiver for*
                                            *Silicon Valley Bank and as Receiver for*
                                            *Silicon Valley Bridge Bank, N.A.*

A173

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 4th day of September 2024, a true and correct copy of

the foregoing was electronically filed with the Clerk of Court using the CMF/ECF.  I also certify

that the foregoing document is being served this day via transmission of Notice of Electronic Filing

generated by CM/ECF on all parties of record.

*/s/ Kurt F. Gwynne*
Kurt F. Gwynne

A174

**EXHIBIT C**

**Debtor's Reply in Support of Its Motion to Certify Direct Appeal to the United States
Court of Appeals for the Second Circuit Under 28 U.S.C. § 158(d)(2)**

A175

James L. Bromley
Robert A. Sacks
Adam S. Paris
Christian P. Jensen
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

Diane L. McGimsey (admitted *pro hac vice*)
**SULLIVAN & CROMWELL LLP**
1888 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 712-6600
Facsimile:  (310) 712-8800

*Counsel for Debtor SVB Financial Group*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>————————————————— x</td><td></td></tr>
<tr><td>In re</td><td>Chapter 11</td></tr>
<tr><td></td><td></td></tr>
<tr><td>SVB FINANCIAL GROUP,[1]</td><td>Case No. 23-10367 (MG)</td></tr>
<tr><td>Debtor.</td><td></td></tr>
<tr><td>————————————————— x</td><td></td></tr>
</table>

**DEBTOR'S REPLY IN SUPPORT OF ITS**
**MOTION TO CERTIFY DIRECT APPEAL TO THE UNITED STATES**
**COURT OF APPEALS FOR THE SECOND CIRCUIT UNDER 28 U.S.C. § 158(d)(2)**

---

[1]     The last four digits of SVB Financial Group's tax identification number are 2278.

SVB Financial Group ("Debtor") submits this reply ("Reply") in support of its *Motion to Certify Direct Appeal to the United States Court of Appeals for the Second Circuit Under 28 U.S.C. § 158(D)(2)* ("Motion") (Dkt. 1406) and in response to the objection ("Objection") (Dkt. 1446) filed by the Federal Deposit Insurance Corporation, in its capacity as Receiver for Silicon Valley Bank ("FDIC-R1") and Silicon Valley Bridge Bank, N.A. ("FDIC-R2," and together with FDIC-R1, "FDIC-Rs").[2]  In support of this Reply, Debtor states as follows:

## REPLY

1.      Nothing in the Objection disturbs the fact that the appeal satisfies multiple factors under 28 U.S.C. § 158(d)(2)(A), each of which is an independent ground requiring certification. Notwithstanding FDIC-Rs' arguments to the contrary, the Order involves three questions of law for which there is no controlling decision from the Supreme Court or the Second Circuit; the three questions of law also require the resolution of conflicting decisions within the Second Circuit; and the appeal involves a matter of public importance.  The Court should therefore certify this appeal for direct review by the Second Circuit.

### I.      The Order Involves Questions of Law as to Which There Is No Controlling Decision.

2.      FDIC-Rs do not dispute that, under section 158(d)(2)(A)(i), there are no controlling Supreme Court or Second Circuit decisions unambiguously resolving the three legal issues identified by Debtor.  Instead, FDIC-Rs argue that the three issues do not warrant certification because one of them is "non-dispositive" and other two issues are not "pure legal questions."  (Obj. ¶¶ 18, 26.)

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

3.      ***First***, with respect to whether a defensive setoff right is a "claim," FDIC-Rs argue

that to satisfy section 158(d)(2), the question of law must be "dispositive."  (*Id.* ¶¶ 25-26.)  Neither

the statute nor the cases cited by FDIC-Rs support this argument.

4.      Section 158(d)(2)(A)(i) states that a court must certify a challenged order as long

as it "*involves a question of law* as to which there is *no controlling decision* of the court of appeals

for the circuit or of the Supreme Court of the United States."  28 U.S.C. § 158(d)(2)(A)(i)

(emphasis added).  The statute says nothing to suggest that the question of law must be "controlling"

or "dispositive."  And Congress knows how to impose a "dispositive" requirement when it wants

to.  For example, to certify an interlocutory appeal under 28 U.S.C. § 1292(b), a district court must

determine that the "order involves a controlling question of law as to which there is substantial

ground for difference of opinion."  Section 158(d)(2)(A)(i), by contrast, only requires that there be

no controlling decision of the court of appeals or the Supreme Court and clearly does not require

that the issue of law be dispositive.  *See Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U.S. 242,

252 (2010) (A court's decision adding a term of art to a statute "from which it is conspicuously

absent more closely resembles inventing a statute rather than interpreting one," especially when

"[t]he contrast between . . . two paragraphs makes clear that Congress knows how to impose

express limits."  (alterations omitted)).

5.      FDIC-Rs cite *In re Woolsey*, 696 F.3d 1266 (10th Cir. 2012), for the proposition

that "[c]ertification for direct appeal is not warranted for such non-dispositive issues."  (Obj. ¶ 26.)

But *Woolsey* makes no such holding.  The portion of the opinion that uses the phrase "dispositive

legal questions" concerns whether section 158(d)(2) grants a court of appeals "the power to hear

an interlocutory appeal of an interlocutory appeal"—an issue wholly irrelevant to this case.

*Woolsey*, 696 F.3d at 1268.  FDIC-Rs also seize on the passing reference to "controlling questions

of law" in *Weber* v. *United States*, 484 F.3d 154 (2d Cir. 2007). (Obj. ¶ 24.) But like *Woolsey*, *Weber* does not discuss—let alone decide—whether a legal question must be dispositive to satisfy section 158(d)(2)(A). In fact, the Second Circuit in *Weber* acknowledges that a direct appeal may be appropriate for non-dispositive issues of law. *See Weber*, 484 F.3d at 158, 161.

6. Because section 158(d)(2)(A)(i) imposes no "dispositive" requirement, and there is no controlling Supreme Court or Second Circuit decision on whether a defensive setoff right is a "claim" under section 101(5)—a fact undisputed by FDIC-Rs—this Court should certify the Order for direct appeal.[3]

7. **Second**, with respect to the other two legal issues identified by Debtor, FDIC-Rs argue that they fail to satisfy section 158(d)(2)(A) because they are not "pure questions of law." (Obj. ¶ 18.) To FDIC-Rs, legal issues are ineligible for certification under section 158(d)(2)(A) if "[t]he Court's resolutions of [the] issues were based, in part, on important factual findings." (Obj. ¶ 21.)

8. FDIC-Rs misstate the applicable standard. In cases properly brought in federal courts, the court's resolution of legal issues invariably are "based, in part, on important factual findings." (*Id.*) *See also* 13 Wright & Miller, Fed. Prac. & Proc. Juris. § 3529 n.17 (3d ed. 2024) ("[I]n judicial law, as opposed to legislative law, decisions should grow out of the specific facts of

---

[3]    Even if a "dispositive" requirement existed (and it does not), Debtor would nonetheless satisfy that requirement. For instance, if a defensive setoff right constitutes a claim under section 101(5), then the Bar Date Order itself would forbid FDIC-Rs from asserting a defensive setoff right against Debtor after the Bar Date for the reasons explained in Debtor's confirmation reply. (*See, e.g.*, Dkt. 1306, at ¶ 24.) This is a separate and independent ground for overruling FDIC-Rs' confirmation objection based on the discharge provisions of the Bankruptcy Code or the Plan.

A179

a case, not the application of abstract concepts to a myriad of potentially hypothetical transactions.").

9.      In the context of section 158(d)(2)(A), the question is not whether the issue can be resolved "on a *purely* legal basis," as FDIC-Rs suggest (Obj. ¶ 21 (emphasis added)), but whether an appellate court will be "called upon to resolve a question of law *not heavily dependent* on the particular facts of a case," because section 158(d)(2) was not intended to "facilitate direct appeal of '*fact-intensive* issues,'" *Weber*, 484 F.3d at 158 (emphasis added).

10.      Here, neither of the two legal questions are "fact-intensive issues." *Id.*  Indeed, the "important factual findings" that FDIC-Rs identify as the bases for the Court's decision—whether "FDIC-R1 has objected to the Plan and appeared at the Confirmation Hearing," and whether FDIC-R1 "*generally* provided notice to the Debtor and other stakeholders that it intended to assert its defensive setoff rights" (Obj. ¶ 21 (emphasis added))—are not disputed.  (*See, e.g.*, SF ¶¶ 29, 30.)  This is distinguishable from *In re LATAM Airlines Grp. S.A.*—a case relied on by FDIC-Rs— where the resolution of the appeal was contingent on resolution of the "threshold factual question" of "whether [the debtor] [wa]s insolvent under section 101(32) of the Bankruptcy Code," 2022 WL 2962948, at *4 (Bankr. S.D.N.Y. July 26, 2022), which is a fact-intensive inquiry that oftentimes requires dueling expert testimonies, *see* Kenneth Ayotte & Edward R. Morrison, *Valuation Disputes in Corporate Bankruptcy*, 166 U. Pa. L. Rev. 1819 (2018).  In contrast, resolving the two legal issues does not implicate fact-intensive issues where "percolation through the district court would cast more light."  *Weber*, 484 F.3d at 161.  Indeed, the record relevant to the two issues involved no testimony at all.  This Court should grant certification under section 158(d)(2)(A)(i) because FDIC-Rs do not otherwise dispute that there are no controlling Supreme Court or Second Circuit decision on any of the legal issues identified by Debtor.

A180

## II.     The Order Involves Questions of Law Requiring Resolution of Conflicting Decisions.

11.     Nothing in FDIC-Rs' objection changes the fact that there is an intra-circuit split under section 158(d)(2)(A)(ii) on the three legal issues identified by Debtor.

12.     As to whether a defensive setoff right is a "claim," this Court recognized that "some courts disagree with [its] approach and hold that there is no distinction between asserting a setoff as a claim and asserting setoff as a defense."  (Order at 21.)

13.     Debtor identified three cases from this Circuit concluding that a defensive setoff right is a "claim" against the debtor's estate.  *See, e.g.*, *In re Iridium Operating LLC*, 285 B.R. 822, 833 (S.D.N.Y. 2002) ("Regardless of whether a setoff is labeled an 'affirmative defense' or a 'counterclaim,' a setoff is a claim against the bankruptcy estate." (alterations omitted)); *In re N. Am. Energy Conservation, Inc.*, 2000 WL 1514614, at *2 (S.D.N.Y. Oct. 12, 2000) ("[B]y pleading setoffs in the form of 'affirmative defenses,' [a claimant] has in fact asserted a claim against [the debtor]'s bankruptcy estate."); *In re Belmonte*, 551 B.R. 723, 730 (Bankr. E.D.N.Y. 2016) ("[B]ecause Defendants have asserted an affirmative defense of setoff in their answer, they have asserted a claim against Debtor's bankruptcy estate.").

14.     FDIC-Rs do not dispute that the court in each of these three cases was asked to determine whether there is any distinction between asserting a setoff as a claim and asserting setoff as a defense, or that in each of these three cases, the court answered that there is no such distinction. Rather, FDIC-Rs attempt to distinguish them based on the *context* in which this identical interpretative question arose.  (Obj. ¶ 44.)  But that is a distinction without a difference.

15.     Section 101's definitions apply "throughout the Bankruptcy Code."  *Lac du Flambeau Band of Lake Superior Chippewa Indians* v. *Coughlin*, 599 U.S. 382, 398 (2023); *see also* 11 U.S.C. § 101 ("In this title the following definitions shall apply.").  Section 101(5)(A) defines a "claim" as a "right to payment" whether "such right is reduced to judgment, liquidated,

A181

unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." This definition does not change depending on whether it is invoked to determine if the assertion of a defensive setoff right is a "core or non-core matter," if a claimant asserting a defensive setoff right is entitled to "jury trial rights," or if a claimant's defensive setoff right is extinguished post-bar date and post-confirmation. (Obj. ¶ 44.) The threshold interpretative question is the same in all three contexts—whether a defensive setoff right is a "right to payment" and thus constitutes a "claim" under the Bankruptcy Code.

16.     As to the two other legal issues identified by Debtor, *Daewoo* conflicts with other decisions in this Circuit for the reasons explained in Debtor's Motion. (Mot. ¶¶ 44-47.) FDIC-Rs argue that *Daewoo* is distinguishable because, unlike in *Daewoo*, "FDIC-R1 repeatedly came forward prior to confirmation of the Plan and asserted its defensive setoff rights and objected to confirmation of the Plan." (Obj. ¶ 41.) But "whether the creditor objected to the plan is a factor that the *Daewoo* court considered only in rejecting the claimant's *recoupment* right, not in rejecting its *setoff* right." (Mot. ¶¶ 45-46.) FDIC-Rs simply ignore this distinction and pretend that the court in *Daewoo* was discussing setoff instead of recoupment.

17.     To distract from their plain misrepresentation of *Daewoo*, FDIC-Rs accuse Debtor of "selectively misquot[ing] *Daewoo* to create a false impression of a conflict with the Order." (Obj. ¶ 43.) But in paragraph 46 of the Motion—the paragraph just before the one FDIC-Rs choose to quote—"the emphasized text" that FDIC-Rs accuse Debtor of "delet[ing]" appears in full. (*id.*; *see also* Mot. ¶ 46 ("The court then noted that 'the Third Circuit [in *In re Continental*] has taken the position that even a general discharge under § 1141 takes precedence over § 553 *where, as here, the debtor had no notice of the setoff claim prior to confirmation of the plan of reorganization by the bankruptcy court*.'" (emphasis added)).)

18.     Because the Order implicates at least one legal issue on which there is an intra-circuit split, the Court should grant certification under section 158(d)(2)(A)(ii).

**III.     The Appeal Involves a Matter of Public Importance.**

19.     FDIC-Rs' arguments regarding section 158(d)(2)(A)(i)'s public importance factor are also meritless.

20.     ***First***, rather than respond to Debtor's arguments, FDIC-Rs try to rebut them by either ignoring or mischaracterizing them.  Contrary to FDIC-Rs' claim, Debtor does not argue that the issues raised by its appeal are matters of public importance because setoff issues arise frequently in cases.  (*See* Obj. ¶ 30.)  Rather, a "setoff claim takes on particular importance in the context of bankruptcy, as it, in effect, elevates an unsecured claim to secured status to the extent that the debtor has a mutual, pre-petition claim against the party asserting setoff."  (Mot. ¶ 50 (quoting *Iridium*, 285 B.R. at 834).)

21.     Similarly, FDIC-Rs argue that Debtor's legal questions are mixed questions of fact and law that are not matters of public importance, arguing that the appeal involves factual issues regarding FDIC-R1's "own conduct" because Debtor's statement of legal issues generically uses the words "because of its own conduct."  (Obj. ¶ 31 (citing Motion ¶ 50).)  Putting aside FDIC-Rs' mischaracterization of Debtor's argument, they also ignore the remainder of that sentence—"or by operation of the Bankruptcy Code," which even FDIC-Rs do not contend involves a mixed question of fact and law.

22.     And FDIC-Rs do not even respond to Debtor's argument that certification is appropriate because "answering the questions presented by this appeal may involve addressing the intersection between the Bankruptcy Code and FIRREA."  (*Id.* ¶ 52 (citing *In re Extraction Oil & Gas, Inc.*, 2021 WL 3722229, at *6 (D. Del. Aug. 23, 2021)).)

23.    **Second**, FDIC-Rs also suggest that preserving their setoff rights would be "[c]onsistent with the policy expressed in section 553(a)," which is to "avoid[] 'the absurdity of making A pay B when B owes A.'"  (Obj. ¶ 32.)  Accepting FDIC-Rs' argument as true, the fact that the appeal also implicates this public policy counsels in favor certification, not against it.  Section 158(d)(2)(A)(i)'s inquiry is not whether appellant's *argument* raises a matter of public importance, but whether the subject "*judgment, order, or decree* . . . involves a matter of public importance."  (emphasis added).

24.    **Finally**, FDIC-Rs contend that Debtor's argument based on the fundamental bankruptcy protection of discharge "is grossly exaggerated" because Debtor "ignores that it has obtained the full benefit of its discharge."  (Obj. ¶ 33.)  Whether "the full benefit of its discharge" includes the discharge of defensive setoff rights is precisely an issue on appeal.  If it does, then under the Order, Debtor has not received the full benefits of the Bankruptcy Code's "'fresh start' to permit [its] continued operation free of pre-bankruptcy debts."  *DPWN Holdings (USA), Inc.* v. *United Air Lines, Inc.*, 747 F.3d 145, 150 (2d Cir. 2014).

25.    Because this appeal involves matters that transcend the parties, concerns fundamental bankruptcy protections, and implicates the interplay between federal bankruptcy law and federal banking law, the Court should certify the Order under section 158(d)(2)(A)(i).

## CONCLUSION

26.    For the foregoing reasons, as well as those stated in the Motion, Debtor respectfully requests that the Court certify the Order for direct appeal to the United States Court of Appeals for the Second Circuit on or before September 9, 2024.

Dated:  September 5, 2024
        New York, New York

*/s/ Robert A. Sacks*

James L. Bromley
Robert A. Sacks
Adam S. Paris
Christian P. Jensen
**SULLIVAN & CROMWELL LLP**
125 Broad Street, New York, NY 10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588
E-mail:       bromleyj@sullcrom.com
                sacksr@sullcrom.com
                parisa@sullcrom.com
                jensenc@sullcrom.com

Diane L. McGimsey (admitted *pro hac vice*)
**SULLIVAN & CROMWELL LLP**
1888 Century Park East, Los Angeles, CA 90067
Telephone:    (310) 712-6600
Facsimile:    (310) 712-8800
E-mail:       mcgimseyd@sullcrom.com

*Counsel for Debtor SVB Financial Group*

9

A185

## EXHIBIT D

**Proposed Order**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____ x
                                   :
In re                           :
                                     :
SVB FINANCIAL GROUP,[1]        :     Case No. 24-CV-6484 (JGLC)
                                     :
            Debtor.             :
                                     :
_____ x

### ORDER CERTIFYING DIRECT APPEAL TO THE UNITED STATES
### COURT OF APPEALS FOR THE SECOND CIRCUIT UNDER 28 U.S.C. § 158(D)(2)

        Upon the motion (the "Motion")[2] of SVB Financial Group ("Debtor") for entry of

an order (this "Order"), pursuant to 28 U.S.C. § 158(d)(2) and Bankruptcy Rule 8006, certifying

the Court's _Memorandum Opinion and Order Sustaining the Objection of the Federal Deposit_

_Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A._

_to the Second Amended Chapter 11 Plan of Reorganization Under Chapter 11 of the Bankruptcy_

_Code_ (the "Setoff Order") (Bankr. Dkt. No. 1380) for direct appeal to the United States Court of

Appeals for the Second Circuit; and this Court having jurisdiction over this matter pursuant to 28

U.S.C. § 1334 and Bankruptcy Rule 8006(b); and the response deadlines to the Motion having

expired; and the objections (if any) to the Motion having been withdrawn, resolved, or overruled;

and this Court finding that proper and adequate notice of the Motion and the relief requested therein

has been provided and that no other or further notice is necessary; and this Court having found and

determined that the relief sought in the Motion is in the best interests of Debtor, its estate, its

---

[1]      The last four digits of SVB Financial Group's tax identification number are 2278.

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them
         in the Motion.

creditors, and all other parties-in-interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, the Court hereby finds as follows:

    a.    The Setoff Order involves questions of law for which there is no controlling decision from the Supreme Court of the United States or the United States Court of Appeals for the Second Circuit;

    b.    The Setoff Order involves questions of law requiring resolution of conflicting decisions within the Second Circuit; and

    c.    The Setoff Order involves matters of public importance.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

    1.    The Motion is GRANTED.

    2.    Pursuant to 28 U.S.C. § 158(d)(2)(A) and Bankruptcy Rule 8006, the Court's Setoff Order (Bankr. Dkt. No. 1380) is hereby certified for direct appeal to the United States Court of Appeals for the Second Circuit.

Dated: _____

      New York, New York

_____

The Honorable Jessica G. L. Clarke
United States District Judge

-2-

A188

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SVB FINANCIAL GROUP, | ) | Case No. 23-10367 (MG) |
|  | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

_____

## ORDER DEFERRING FOR DECISION BY THE DISTRICT COURT DEBTOR'S MOTION TO CERTIFY DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT UNDER 28 U.S.C. § 158(d)(2)

On August 2, 2024, this Court entered the *Memorandum Opinion and Order Sustaining the Objection of the Federal Deposit Insurance Corporation[1], as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A. to the Second Amended Chapter 11 Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Memorandum Opinion," ECF Doc. # 1380).

On August 9, 2024, the Debtor filed the *Notice of Appeal and Statement of Election* (the "Notice of Appeal," ECF Doc. # 1389), taking an appeal from the Memorandum Opinion. Later, on August 21, 2024, the Debtor filed the *Motion to Certify Direct Appeal to the United States Court of Appeals for the Second Circuit Under 28 U.S.C. § 158(d)(2)* (the "Certification Motion," ECF Doc. # 1406). The FDIC-Rs filed an objection (the "Objection," ECF Doc. # 1446.) to the Certification Motion on September 4, 2024. Thereafter, the Debtor filed a reply in support of the Certification Motion and in response to the Objection on September 5, 2024. (*See* ECF Doc. # 1453.)

_____

[1]      Hereafter, the Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Silicon Valley Bank ("FDIC-R1") and Silicon Valley Bridge Bank, N.A. ("FDIC-R2," and together with FDIC-R1, "FDIC-Rs").

A189

The certification of a judgment, order, or decree of a bankruptcy court for direct review in a court of appeals is governed by Rule 8006 of the Federal Rules of Bankruptcy Procedure. *See* FED. R. BANKR. P. 8006.  Rule 8006(b) states that:

> The certification must be filed with the clerk of the court where the matter is pending.  For purposes of [Rule 8006], a matter remains pending in the bankruptcy court for 30 days after the effective date under Rule 8002 of the first notice of appeal from the judgment, order, or decree for which direct review is sought.  A matter is pending in the district court or BAP thereafter.

FED. R. BANKR. P. 8006(b).  Importantly, under Rule 8006(d), "[o]nly the court where the matter is pending, as provided in subdivision (b), may certify a direct review on request of parties or on its own motion."  FED. R. BANKR. P. 8006(d).

Here, the Debtor filed the Notice of Appeal on August 9, 2024.  As a result, the matter was *pending before* the Court until September 9, 2024.  On that date, jurisdiction over this matter shifted to the United States District Court for the Southern District of New York, along with the exclusive authority to make the certification.  *See* FED. R. BANKR. P. 8006.  Accordingly, the Court finds that it is appropriate and necessary to transfer the Certification Motion to the district court for the district court to rule on the same.

With respect to the Certification Motion, 28 U.S.C. § 158(d)(2)(A) provides the relevant statutory requirements for direct appeal to the court of appeals.  Specifically, the court of appeals has jurisdiction of direct appeals if that court authorizes the direct appeal after certification by the district or bankruptcy court that the relevant judgment, order, or decree: "(1) involves a question of law 'as to which there is no controlling decision' by the relevant court of appeals or the Supreme Court; (2) involves a 'matter of public importance'; (3) involves a question of law 'requiring resolution of conflicting decisions;' or if (4) direct appeal 'may materially advance the progress'

A190

of the case."[2]  *In re Bernard L. Madoff Inv. Sec. LLC*, No. 23-CV-0294 (VEC), 2023 WL 3317926,

at *3 (S.D.N.Y. May 9, 2023) (citing 28 U.S.C. § 158(d)(2)(A)).  Once a certification is made, the

court of appeals has discretion to permit or reject a direct appeal.  *See Weber v. United States*, 484

F.3d 154, 161 (2d Cir. 2007) (declining to "exercise . . . discretion to hear th[e] appeal" and noting

there was "no compelling reason for [United States Court of Appeals, Second Circuit] to address

the issue in the first instance.").

In the Certification Motion, the Debtor asserts that there are "at least three important

questions of law that remain unsettled by the Supreme Court or the Second Circuit, each of which

is potentially dispositive of this case."  (Certification Motion ¶ 1.)  In the Memorandum Opinion,

this Court also noted the unsettled legal issues and interpretative splits among courts with respect

to matters that are material to the decision.  (*See* Memorandum Opinion at 20-21; *see also id.* at

28-29.)  The decision whether to certify a direct appeal to the court of appeals rests, in the first

instance, on a ruling by the district court.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the ruling on the Certification

Motion is deferred to the decision of the district court, given that the matter on appeal (*i.e.*, the

Memorandum Opinion) is currently pending in the district court under Bankruptcy Rule 8006.

**IT IS SO ORDERED.**

Dated:  September 20, 2024
         New York, New York

                                        **/s/ Martin Glenn**
                                        MARTIN GLENN
                                        Chief United States Bankruptcy Judge

---

[2]      28 U.S.C. § 158(d)(2)(A) contains three subparts; however, courts have found that there are four
disjunctive bases to grant certification because subpart (i) contains two separate grounds.  *See, e.g.*, *In re Millennium
Lab Holdings II, LLC*, 543 B.R. 703, 708 (Bankr. D. Del. 2016) ("While [28 U.S.C. § 158(d)(2)(A)] contains three
subparts, there are actually four disjunctive criteria as subpart (i) sets forth two separate benchmarks for
certification."); *Whittaker, Clark & Daniels, Inc.*, No. 23-13575 (MBK), 2023 WL 4875915, at *1 (Bankr. D.N.J.
July 31, 2023) (same).

A191

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re SVB FINANCIAL GROUP,

                      Debtor.

---

SVB FINANCIAL GROUP and OFFICIAL
COMMITTEE OF UNSECURED
CREDITORS,

                      Appellants,

          -against-

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for Silicon
Valley Bank and Silicon Valley Bridge Bank,
N.A.,

                      Appellee.

24-CV-6484 (JGLC)

**OPINION AND ORDER**

---

JESSICA G. L. CLARKE, United States District Judge:

       Silicon Valley Bank Financial Group ("SVB") seeks to appeal the decision of the

Bankruptcy Court for the Southern District of New York, which sustained a creditor's objections

to a provision of its bankruptcy plan discharging the creditor's setoff rights. SVB moves for this

Court to certify a direct appeal to the United States Court of Appeals for the Second Circuit

pursuant to 28 U.S.C. § 158(d)(2)(A). Creditor Federal Deposit Insurance Corporation opposes

the motion. The Court finds that the matter raises unsettled questions of law that warrant direct

appeal: whether a creditor who has provided general notice to a debtor of the intent to assert

defensive setoff rights waives those rights when the creditor fails to file a proof of claim, and

whether a creditor's setoff rights under 11 U.S.C. § 553 survive the discharge of all debts under

11 U.S.C. § 1141.

A192

# BACKGROUND

SVB, Debtor-Appellant, filed for Chapter 11 bankruptcy on March 17, 2023. ECF No. 4, Ex. 1 ("Mot.") ¶ 10. Shortly after, the Bankruptcy Court established September 14, 2023, as the deadline for any governmental unit to file a proof of claim against SVB (the "Bar Date"). *Id.* ¶ 11. The Federal Deposit Insurance Corporation as receiver for SVB ("FDIC-R1"), Appellee, asserts defensive setoff rights against SVB. *Id.* ¶ 13. FDIC-R1 did not file proofs of claim for those defensive setoff rights before the Bar Date. *Id.*

On July 8, 2024, FDIC-R1 filed objections to the confirmation of SVB's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan"). *Id.* ¶ 14. At issue is FDIC-R1's objection (the "Objection") that the Plan improperly extinguishes FDIC-R1's defensive setoff rights because it provides the following:

> In no event will any Person or Entity be entitled to set off any Claim or Interest against any Claim or Interest, right, or Cause of Action and Defense of the Debtor, the Liquidating Trust or NewCo, as applicable, in any judicial or administrative proceeding, unless such Person or Entity has filed a Proof of Claim in this Chapter 11 Case preserving such setoff and a Final Order of the Bankruptcy Court has been entered, authorizing and approving such setoff.

ECF No. 1, Ex. 2 ("Order") at 9 (quoting Plan § 10.7). The Bankruptcy Court sustained FDIC-R1's Objection on three grounds relevant to this motion. First, the Bankruptcy Court found that FDIC-R1's defensive setoff rights are not "claims" under 11 U.S.C. § 101(5), so they are not extinguished by the passing of the Bar Date. *Id.* at 20–21. Second, the Bankruptcy Court found that FDIC-R1 meets the requirements of 11 U.S.C. § 553, which preserves setoff rights in bankruptcy, and that failure to file a proof of claim did not constitute a waiver of those rights. *Id.* at 21–31. Third, the Bankruptcy Court found that 11 U.S.C. § 1141 does not discharge those setoff rights. *Id.* at 31–33.

A193

SVB now moves for certification of the Order for direct appeal to the Second Circuit, to which FDIC-R1 objects.

## LEGAL STANDARD

Section 158(d)(2)(A) provides for the certification of an order for direct appeal to the court of appeals when:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance; (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. § 158(d)(2)(A). Certification is warranted if any one of the three factors is established. *In re Sabine Oil & Gas Corp.,* 551 B.R. 132, 138 (Bankr. S.D.N.Y. 2016) (citing *In re General Motors Corp.*, 409 B.R. 24, 27 (Bankr. S.D.N.Y. 2009)).

The Second Circuit has explained that it "will be most likely to exercise [its] discretion to permit a direct appeal where there is uncertainty in the bankruptcy courts (either due to the absence of a controlling legal decision or because conflicting decisions have created confusion) . . . ." *Weber v. United States,* 484 F.3d 154, 161 (2d. Cir. 2007). But the Second Circuit will be reluctant to accept cases for direct appeal when the questions of law are "heavily dependent on the particular facts of a case" and "percolation through the district court would cast more light on the issue and facilitate a wise and well-informed decision." *Id*. at 158, 161.

## DISCUSSION

SVB contends that certification for direct appeal is proper under Section 158(d)(2) because the Order raises three questions of law that the Second Circuit has yet to settle, lower courts in this circuit are split on these questions of law, and the issue involves a matter of public importance. Mot. ¶ 1–6.

3

Because a district court must certify an order for direct appeal if any one of the conditions in Section 158(d)(2) is met, this discussion solely addresses whether a decision on appeal calls for the resolution of a question of law that the Second Circuit has yet to settle. SVB enunciates three questions of law that it argues meets this condition. This discussion examines each question in turn and finds that two questions meet the condition set by Section 158(d)(2)(i).

**I.    Whether a Defensive Setoff Right Is a Claim Under 11 U.S.C. § 101(5)**

The first question of law that SVB proposes is "[w]hether a 'defensive' setoff right is a 'claim' under 11 U.S.C. § 101(5)." Mot. ¶ 1. In a deferral order on the instant motion, the Bankruptcy Court agrees that this is an "unsettled legal issue[]" on a matter that is "material to the decision." ECF No. 6, Ex. A ("Deferral Order") at 3; *see also* Order at 20–21. In the appealed Order, the Bankruptcy Court explicitly notes that there is disagreement among the courts on this question. Order at 20–21. And FDIC-R1 does not argue to the contrary.

Instead, FDIC-R1 contends that because this question is not a controlling legal issue, it does not create a qualifying condition under Section 158(d)(2). The Court agrees. Upon inspecting the legislative history of Section 1233 of the Bankruptcy Abuse Prevention and Consumer Protection Act, which amended Section 158(d)(2) as applied to bankruptcy appeals, the Supreme Court determined that certifications of direct appeal are intended for cases that "raise controlling questions of law." *Weber,* 484 U.S. at 158. Here, determining whether a defensive setoff right is a claim is not controlling. The Order itself acknowledges that regardless of whether a defensive setoff right is a claim, "there is material difference between a defensive claim for setoff and a claim that seeks similar relief on an affirmative basis against a debtor or its estate." Order at 21. In other words, if a defensive setoff right is a claim under 11 U.S.C. § 101(5), the terms of 11 U.S.C. § 553 may still preserve the right through bankruptcy. If a

A195

defensive setoff right is not a claim, that right may still be extinguished by 11 U.S.C. § 1141.

Accordingly, this is not a question upon which the Court can certify the Order for direct appeal.

## II.    Whether a Creditor Waives its Defensive Setoff Rights by Failing to File a Proof of Claim

The second question of law that SVB proposes is "[w]hether a creditor that was aware of the subject matter for which it claims defensive setoff rights prior to the bar date waives its defensive setoff rights by failing to file a proof of claim before the bar date." Mot. ¶ 1. In its Deferral Order, the Bankruptcy Court agrees that this is an "unsettled legal issue[]" on a matter that is "material to the decision." Deferral Order at 3; *see also* Order at 28–29. In the appealed Order, the Bankruptcy Court notes that there is disagreement among the courts on this question. Order at 28–29.

FDIC-R1 argues that this question does not meet the Section 158(d)(2) requirements because it involves a mixed question of fact and law inappropriate for certification. Section 158(d)(2) requires a question of law that is not "fact intensive" nor "heavily dependent on the particular facts of the case." *See Weber,* 484 F.3d at 158. The Court agrees that the question as framed by SVB cannot be dispositive on the issue without further consideration of relevant facts. But the Court finds that the Bankruptcy Court's determination of the issue implicates a pure question of law that is neither "fact intensive" nor "heavily dependent on the particular facts of the case."

First, the Bankruptcy Court's determination was not "fact intensive." Although the Bankruptcy Court's determination of the issue does involve some consideration of factual issues, *see* Order at 30, these facts are not in dispute, *see id*.; ECF No. 4, Ex. 3 at 4.

Neither is the issue "heavily dependent on the particular facts of the case." The Bankruptcy Court did discuss the relevance of facts showing that FDIC-R1 gave notice to SVB

A196

of its intent to assert defensive set-off rights. Order at 30. But the Bankruptcy Court did so in order to address the existence of potentially conflicting case law in this Circuit. Although the majority of judges in this Circuit conclude that failure to file a proof of claim does not waive defensive setoff rights, *see* Order at 28–29, one case has named an exception for when the failure to file a proof of claim may waive setoff rights, *see* Order at 29–30 (discussing *Daewoo Int'l (Am.) Corp. Creditor Tr. v. SSTS Am. Corp.*, No. 02-CV-9629 (NRB), 2003 WL 21355214, at *4 (S.D.N.Y. June 11, 2003)). This case, *Daewoo*, involved a creditor who failed to provide the debtor with any notice of intent to assert their setoff rights. *Id.* Although the Court agrees with FDIC-R1 that *Daewoo* does not necessarily conflict with the other cases in the Circuit, the Bankruptcy Court's analysis of the case does help frame a legal question that the Second Circuit has yet to address: When a creditor has provided general notice to a debtor of the intent to assert defensive setoff rights, does the failure to file a proof of claim waive their setoff rights?

Resolution of this legal question will not be fact intensive or fact dependent. Moreover, the Court considers this to be a controlling question of law for the instant case. Accordingly, the Court finds this to be a question upon which certification of the Order for direct appeal is proper.

### III.    Whether a Creditor's Setoff Rights Under 11 U.S.C. § 553 Can Be Discharged by 11 U.S.C. § 1141

The final question of law that SVB proposes is "[w]hether a creditor's setoff rights under 11 U.S.C. § 553 are discharged by the confirmation of a chapter 11 plan under 11 U.S.C. § 1141, where the creditor intentionally did not file a proof of claim before the bar date." Mot. at 1. The Order did not discuss this question in depth and dismissed SVB's 11 U.S.C. § 1141 argument on other grounds. *See* Order at 31–33. FDIC-R1 argues that the Bankruptcy Court resolved this question in reliance on important factual findings, rendering it a mixed question of fact and law not appropriate for certification. The Court disagrees.

Whether Section 1141 overrides Section 553 is a controlling question of law that the Second Circuit has yet to issue an opinion on. Section 553 provides that setoff rights are preserved in bankruptcy (with exceptions outlined in the provision that do not apply to the instant case). *See* 11 U.S.C. § 553(a); *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995). Meanwhile, Section 1141(d)(1) states that "the confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1). Courts outside of this Circuit have found that Section 553's preservation of defensive setoff rights survive the discharge provision of Section 1141. *See In re Laurentiis Entertainment Grp. Inc.*, 963 F.2d 1269, 1276–77 (9th Cir. 1992), *cert. denied*, 506 U.S. 918 (1992) (finding that Section 553 "must take precedence" over Section 1141); *In re Bare*, 284 B.R. 870, 874 (Bankr. N.D. Ill. 2002) (finding that Section 1141 is "restrained from facilitating the elimination of setoff rights"). But some circuits, as well as judges in this District, have found that Section 1141 may override Section 553 in certain circumstances. *See In re Cont'l Airlines*, 134 F.3d 536, 541 (3d Cir. 1998), *as amended* (Mar. 23, 1998); *Daewoo*, 2003 WL 21355214, at *5.

The Court recognizes that whether Section 1141 can discharge the setoff rights preserved in Section 553 has the potential to involve some factual considerations. For example, *Daewoo* took into account the failure of creditors to object to the plan of reorganization prior to confirmation. *Daewoo,* 2003 WL 21355214, at *5. Nonetheless, the Court finds that this is fundamentally a question of law. Moreover, the Court finds that resolution of this question can be dispositive in this case. If the Second Circuit concludes that Section 1141 does override Section 553, then it appears the defensive setoff rights must be extinguished. The same is not true if the Second Circuit determines otherwise. And the lower courts would benefit from clarity on the interaction between these two provisions. Accordingly, the Court finds that "whether Section

7

A198

1141 can discharge the setoff rights preserved in Section 553" is an unsettled question of law that warrants certification of the Order for direct appeal to the Second Circuit.

## CONCLUSION

For the reasons stated above, SVB's motion to certify direct appeal to the United States Court of Appeals for the Second Circuit is GRANTED. This Court CERTIFIES that the Order meets the condition set by 28 U.S.C. § 158(d)(2)(A)(i). The Clerk of Court is directed to terminate ECF No. 4, transmit a copy of this Order to the Second Circuit, and close the case. Should the Court of Appeals decline to accept the appeal, the parties may move to reopen the case in this Court.

Dated: September 30, 2024
       New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge

A199